# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

GARY T. WINNETT,                 )
FREDA JACKSON-CHITTUM,     )
and CASPER R. HARRIS on behalf of  )
themselves and others similarly situated  )
                           )
      Plaintiffs,            )      **Case No. 3:06-cv-00235**
                           )      **Judge Trauger**
      v.                  )
                           )
CATERPILLAR INC.,          )
                           )
      Defendant.           )

## MEMORANDUM

This matter comes before the court on a Motion for Change of Venue filed by the defendant (Docket No. 13), to which the plaintiffs have responded (Docket No. 35), the defendant has replied (Docket No. 37), and the plaintiffs have sur-replied (Docket No. 42). For the reasons discussed herein, the defendant's motion will be denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs filed their complaint in this court on March 28, 2006, alleging that they were denied retiree medical benefits by the defendant, Caterpillar Inc. ("Caterpillar"), in violation of the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act of 1974 ("ERISA"). (Docket No. 1.) The plaintiffs seek to represent a class of former employees who retired after the expiration of a collective bargaining agreement between the United Auto Workers ("UAW") and Caterpillar in October 1991, and before a new collective bargaining agreement was ratified in March 1998. At some point in 1992, during the

1

early stages of a contentious labor dispute, Caterpillar announced that it would cap retiree medical costs, and the current suit arises in part from its first steps taken in furtherance of that goal on October 1, 2004. In addition, the plaintiffs seek to prevent Caterpillar from charging surviving spouses of its former employees a healthcare premium, an intention it announced in 2005. The plaintiffs allege that their medical benefits are governed by the agreement that expired in October 1991 and earlier agreements, under which they are entitled to lifetime no-cost healthcare.

On April 19, 2006, the defendant filed a motion requesting that venue be transferred to the United States District Court for the Central District of Illinois, pursuant to 28 U.S.C. § 1404(a). (Docket No. 13.) According to the defendant, the Central District of Illinois will better serve the convenience of the parties, the defendant being located in that district, in Peoria, Illinois, and most of the documents and witnesses being found in that district. The defendant argues that the Central District is also more appropriate because the courts in the Seventh Circuit are familiar with legal issues arising from the dispute between Caterpillar and the UAW in the 1990's.

The plaintiffs contend that, under ERISA, their choice of venue should be given great deference and that the witnesses they plan to call prefer this district to the Central District of Illinois. (Docket No. 35.) In addition, the plaintiffs argue that neither the location of documents nor the prior Seventh Circuit cases should be afforded much weight in this analysis, change of venue being "but a change of courtrooms." (*Id*.) On those bases, the plaintiffs contend that the defendant has not established that the relevant factors weigh in favor of transfer.

## <u>ANALYSIS</u>

**I.      Standard**

Transfer of venue is governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Section 1404(a) is a discretionary provision, the purpose of which is to "prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Forward Air, Inc. v. Dedicated Xpress Services, Inc.*, No. 2:01-CV-48, 2001 WL 3407936 at *3 (E.D. Tenn. Dec. 31, 2001) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)); *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26-27 (1960)).  The burden rests with the moving party—in this case, the defendant—to establish that venue should be transferred.  *Blane v. American Investors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996).  In order to meet that burden, the moving party must show that the relevant factors weigh strongly in favor of transfer.  *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."); *see also Southern Elec. Health Fund v. Bedrock Services*, No. 3:02-00309, 2003 WL 24272405 at *5 (M.D. Tenn. Jul. 23, 2003).  The court should not transfer venue, "[u]nless the balance is strongly in favor of the defendant."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  With this standard in mind, the court turns to an analysis of the defendant's motion.

3

## II.     Balancing the Factors

Because neither party disputes that venue is proper both in this court and in the Central District of Illinois, we need only address whether or not the defendant has shown that the Central District of Illinois is a more convenient forum than this one.  *Van Dusen*, 376 U.S. at 645-46.  In order to make that determination, we must consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Southern Elec. Health Fund*, 2003 WL 24272405 at *5 (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)).

Factors that district courts typically balance are: "(1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) relative advantages and obstacles to a fair trial; (4) the possibility of the existence of questions arising in the conflicts of laws; (5) the advantage of having a local court determine questions of local law; (6) all other considerations of a practical nature that make a trial easy, expeditious, and economical." *Id*. at *5 (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)); *Texas Bulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1961).  A consideration of those factors, though not weighing universally in one direction or the other, leads the court to conclude that venue in the present action should not be changed.

### A.     The Degree of Deference Owed to the Plaintiff's Choice of Forum

The parties disagree strongly as to the amount of deference that must be afforded the

plaintiffs' choice of forum in this case. Generally, in § 1404(a) analysis, the plaintiffs' choice of venue is examined with deference. *Blane v. American Investors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996) ("Unless the balance is strongly in favor of the defendant, the plaintiffs' choice of forum should rarely be disturbed."). The defendant argues that, because the plaintiffs have brought a putative class action, the significance of the plaintiffs' choice of forum is significantly diminished. The plaintiffs counter that, in ERISA cases, courts give special deference to the plaintiffs' choice of forum, regardless of whether or not the plaintiffs have brought a putative class action. In fact, the plaintiffs argue that their choice is owed an especially high level of deference because they have filed an ERISA action, and because they reside in their chosen district.

The defendant, in turn, argues that the extra deference often afforded plaintiffs in ERISA cases does not apply in the present action. The defendant maintains that the heightened deference only applies in cases where the pension fund has filed suit, and not where the plaintiffs are composed solely of participants and beneficiaries. The heightened deference is limited to those cases because—according to the defendant—its sole purpose is to reduce litigation costs for pension funds by allowing those funds to sue in their home districts, and not "in the numerous and remote locations where employers reside." *Central States, Southeast & Southwest Areas Pension Fund v. White*, No. 99 C 1049, 1999 WL 447059 at *3 (N.D. Ill. June 25, 1999). According to the defendant, that rationale applies only to fund-litigation cases, and not cases where individual participants and beneficiaries bear the costs of litigation.

The court disagrees with the defendant's characterization of the ERISA venue provision and finds that whatever extra deference is afforded to the plaintiffs' choice of venue in other

5

ERISA cases must also be afforded here. The defendant cites several cases—cases in which the plaintiffs were, in fact, pension funds—in which courts explain the rule requiring heightened deference for ERISA plaintiffs as a means to reduce litigation costs for those funds. *See, e.g., Central States, Southeast & Southwest Areas Pension Fund v. White*, 1999 WL 447059 at *3 (N.D. Ill. June 25, 1999); *Accord Int'l Painters & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 56 (D. D.C. 2004).

But that is not the only rationale for ERISA's venue provision that courts have articulated. *See, e.g., Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1257 n.12 (E.D. Va. 1988). The defendants cite no cases limiting ERISA's expansive venue provision to situations where pension funds, rather than employees, are plaintiffs. Instead, the defendants have merely cited cases where pension funds were afforded a high level of deference, and the court sought to explain why Congress may have intended that deference. *See, e.g., Central States, Southeast & Southwest Areas Pension Fund*, 1999 WL 447059 at *3. Neither has this court found any precedent in which the cost-cutting rationale has been used to afford less deference to a plaintiff's choice of venue.

 Nor does ERISA itself or any section of ERISA's legislative history limit its venue provisions by type of plaintiff. In fact, ERISA's legislative history indicates that all plaintiffs were intended to benefit from its venue provision. In its report governing ERISA, the House Committee on Education and Labor stated:

> "The enforcement provisions have been designed specifically to provide both the Secretary and **participants and beneficiaries** with broad remedies for redressing or preventing violations of the Act. The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under

6

state law for the recovery of benefits due to participants." H.R. Rep. No. 93-533, at 17 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4655 (emphasis added).

That passage indicates that Congress did not intend to restrict venue for the benefit solely of pension funds, but to expand venue choices for all plaintiffs, including participants and beneficiaries. *Id.* If anything, the passage singles out participants and beneficiaries, and not the pension funds themselves, for preferential treatment.

In fact, in cases where participants and beneficiaries sued the pension funds themselves, federal courts of appeal have continued to afford those plaintiffs' choice of forum the same high level of deference as afforded pension fund plaintiffs in other cases. *See, e.g., Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804, 809 (7th Cir. 2002); *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245, 247-48 (9th Cir. 1979). In *Varsic*, the Ninth Circuit Court of Appeals explicitly rejected the defendant's argument that ERISA's expansive venue provision benefitted only pension funds. *Id.* at 248-49. The defendant, a pension fund, "urge[d] that Congress intended to prevent the drain on pension funds which could result from subjecting them to suits in any district in which covered work is performed," and therefore, that ERISA's venue provision could not be interpreted in favor of the participant-plaintiffs. *Id* at 248. The Ninth Circuit rejected that argument, stating, "[w]e cannot agree with the Fund's contention that the congressional purpose of this section was to restrict venue," rather, Congress "clearly struck the balance in favor of liberal venue." *Id., see also Cross v. Fleet Reserve Association Pension Plan*, 383 F. Supp. 852, 856-57 (D. Md. 2005) (according a participant-plaintiff's choice of venue "somewhat greater weight than would typically be the case" in an ERISA suit filed against a pension fund); *Palka v. Theodore*, No. 85-2480, 1986 WL 22380 at *3-4 (D. Kan. Sept. 3, 1986) (applying the heightened level of deference in an ERISA case filed

7

by a plan participant); *Foltz v. U.S. News & World Report, Inc.*, 613 F. Supp. 634, 639 (D. D.C. 1985) ("[T]he avenues of relief and the right of action afforded pension plan participants should be generously construed.").

In *Sheet Metal Workers Nat'l Fund*, 702 F. Supp. at 1256-57, an ERISA case filed by a pension fund against an employer, the court explored several different rationales for the extra deference afforded the plaintiff's choice of venue. Primarily, the court relied on the "special goal" articulated by Congress that ERISA should provide "participants and beneficiaries with broad remedies for redressing or preventing violations of the Act." *Id.* at 1256. However, the court also mentioned "[a]nother ERISA policy rationale," namely, "that the Act depends, in large part, on private parties for enforcement of its substantive provisions."[1] *Id.* at 1257, n.12. The court noted that the private-enforcement rationale applied only "to pension fund participants and beneficiaries, not the funds themselves." *Id.* That is, it applies to the plaintiffs in this case, though it did not apply in *Sheet Metal Workers*. Notably, the court in *Sheet Metal Workers* did not even mention Caterpillar's preferred cost-cutting rationale. *Id.*

If Congress had only intended to lower litigation costs by allowing pension funds to file ERISA suits in their home districts, it could have limited venue to those districts or, at the very least, articulated that intention. Instead, Congress articulated a broader concern, stating, "it is . . . . the policy of [ERISA] to protect interstate commerce **and the interests of participants in**

---

[1]The court cited ERISA's legislative history at H.R.Rep. No. 533, 93d Cong., 1st Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 4649: "At the same time, the safeguarding effect of the fiduciary responsibility section will operate efficiently only if fiduciaries are aware that the details of their dealings will be open to inspection, and that individual participants and beneficiaries will be armed with enough information to enforce their own rights as well as the obligations owed by the fiduciary to the plan in general."

**employee benefit plans and their beneficiaries**, . . . by providing for . . . ready access to the Federal courts." 29 U.S.C. § 1001(b) (emphasis added). In light of the intent expressed in the congressional record, as interpreted uniformly in the federal courts, in favor of broad choice of venue for all ERISA plaintiffs, the plaintiff's choice of venue in this case must be afforded a heightened level of deference, beyond the usual deference afforded plaintiffs under § 1404(a) analysis.

### B.     The Remaining Factors for Transfer of Venue

The plaintiffs have chosen venue in this jurisdiction, and we must accord that selection a high level of deference. However, that deference does not end our analysis; we must yet consider

"the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"

*Southern Elec. Health Fund*, 2003 WL 24272405 at *5.

With regard to the interests of the parties, the plaintiffs, being Tennessee residents, have an interest in venue remaining in this district, whereas the defendant, who is located in Peoria, Illinois, has an interest in venue being transferred closer to home. Those interests are, more or less, a wash. The defendant has identified witnesses it plans to call who, being Illinois residents, prefer that the case be transferred. The plaintiffs have identified a number of witnesses who reside in or around Detroit, Michigan, and prefer this district because it affords them a direct flight, rather than a lay-over. Neither the plaintiffs nor the defendants have shown that their proffered witnesses would be unwilling to offer testimony in either forum, but each merely assert

that one location or the other would be preferable. The accessibility to witnesses, therefore, does not weigh in favor of one location or the other.

The defendant points to the fact that collective bargaining records are located in Peoria, Illinois, and not in this district. On that basis, the access to written records probably weighs in favor of transfer. However, as the plaintiffs point out, courts often do not give the location of documents, alone, substantial weight, since "records can be shipped . . . for trial with minor inconvenience and cost." *Boilermaker-Blacksmith Nat. Pension Fund v. Gendron*, 67 F. Supp. 2d 1250, 1257 (D. Kan. 1999); *see also Board of Trustees, Sheet Metal Workers National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Rapid transmission of documents . . . make[s] it easy . . . for cases to be litigated with little extra burden in any of the metropolitan areas.").

Additionally, the defendant argues that the Central District of Illinois is less congested than this district and, therefore, will be able to handle this case with more speed. And in fact, "the public interest in prompt resolution of cases is a consideration" in any venue-transfer analysis. *Steelcase, Inc. v. Mar-Mol Co.*, 210 F. Supp. 2d 920, 941 (W.D. Mich 2002). However, this court "should not . . . look to docket conditions in order simply to serve the court's own convenience." *Id.* (quoting *Fannin v. Jones*, 229 F. 2d 368, 369 (6th Cir. 1956) (per curiam). Moreover, "raw figures comparing caseloads are entitled to little weight." *Steelcase*, 210 F. Supp. 2d at 941. Considering the time that would be lost while transferring this case, and the fact that the defendant has itself already requested a stay pending this decision to transfer, the court finds the defendant's argument based on prompt resolution unpersuasive.

As the defendant points out, several courts in the Seventh Circuit have decided cases

10

arising from the labor dispute between UAW and Caterpillar. One such case, *McNealy v. Caterpillar, Inc.*, 139 F.3d 1113, 1119 (7th Cir. 1998), touched on similar legal issues arising under ERISA. If a case like *McNealy* were currently pending in the Central District of Illinois, that would weigh in favor of transfer; however, *McNealy* and the other cases cited by the defendants have already been decided. Therefore, *McNealy* may only be cited for the proposition that the Seventh Circuit is familiar with some legal issues that might come into play in this case. However, as the plaintiffs point out, familiarity with legal issues is not a strong factor in § 1404(a) analysis, because change of venue is "but a change of courtrooms." *Central States, Southeast & Southwest Areas Pension Fund v. Mississippi Warehouse Corp.*, No. 91 C 1332, 1991 WL 211291 at *3 (N.D. Ill. Oct. 10, 1991). Neither forum is likely to be unfamiliar with ERISA or LMRA actions in general. Nevertheless, the fact that, in *McNealy*, the Seventh Circuit Court of Appeals addressed some similar legal issues weighs slightly, but not heavily, in favor of transfer.

The defendant points to two other cases that are both currently pending and related to the current action— *Kerns v. Caterpillar, Inc.*, Case No. 2:06-CV-02213 (W.D. Tenn.) (filed April 13, 2006)[2], and *Finn v. Caterpillar, Inc.*, Case No. 06-CV-2704 (N.D. Ill.) (filed May 16, 2006)[3]. Though the cases were not filed in this court, neither are they pending in the Central District of

---

[2]In their sur-reply, the plaintiffs submitted evidence showing that the counsel in *Kerns* and the plaintiffs' counsel in this case are willing to coordinate discovery to avoid duplication of effort and to conserve resources. (Docket No. 42.)

[3]The plaintiffs have recently brought to the court's attention that *Finn v. Caterpillar*, Case No. 06-CV-2704 (N.D. Ill.), was voluntarily dismissed pursuant to Rule 41(a) of the Federal Rules of Civil Procedure on June 14, 2006. (Docket No. 44.) Therefore, even if *Finn* had some bearing on the venue issue in this case—which it did not, for the reasons outlined below—it can have no bearing any longer.

11

Illinois. Therefore they can have no bearing on the issue of whether or not to transfer this case to the Central District of Illinois. Moreover, under the customary first-to-file rule, the "entire action should be decided by the court in which an action was first filed," *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997) (en banc). Because this case was filed before *Kerns* or *Finn*, on March 28, 2006, it assumes priority, and if the proceedings are to be transferred to a single court, the presumption under *Smith* would be for the cases to be transferred here. *Id.*

Finally, the defendant asserts that, because the labor dispute between UAW and Caterpillar was particularly intense, the interests of local citizens weighs in favor of transfer to the Central District of Illinois. The record indicates that the labor dispute was, in fact, long and contentious. However, courts typically consider the local interest in a dispute an important factor in diversity cases, where issues of local state or foreign law are at issue. *See, e.g., Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir. 1984); *Michell v. General Motors Corp.*, 439 F. Supp. 24, 16 (N.D. Ohio 1977). The present action arises only under federal law, and the Central District of Illinois is no more suited to determine issues of federal law than is this forum. Moreover, the litigants do not dispute the propriety of the UAW strike, but rather, whether or not their benefits under earlier agreements were vested when they retired. The plaintiffs' claims do not arise from a localized set of facts emanating from the strike itself, but from a set of negotiations that occurred in several different states, over a course of several years. Certainly, the labor strikes are very relevant to this dispute, and the importance of those strikes to the local community during the 1990's must not be ignored. However, the plaintiffs are currently residents in this district, and it must be noted that there exists a local interest in this district in each citizen's pursuit of federal causes of action. Although, in weighing these local

interests, the balance probably favors the Central District of Illinois, this factor does not overwhelmingly support one location or the other.

In summary, the location of documents in the Central District of Illinois, the familiarity of the courts of the Seventh Circuit with some legal issues that may arise, and the local interest in the underlying labor dispute between UAW and Caterpillar each weigh slightly in favor of the defendant. However, the factors, viewed cumulatively, cannot overcome the heightened level of deference that must be accorded the plaintiffs' choice of their home district in this ERISA action.

## **CONCLUSION**

For the reasons stated herein, defendant Caterpillar's Motion for Change of Venue will be denied.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

13