**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GARY T. WINNETT, FREDA JACKSON-CHITTUM, CASPER R. HARRIS, WILLIAM H. DAILEY, CALVIN E. GROGAN, KENNETH C. HAMMER, and CHARLES A. WATERFIELD, on behalf of themselves and others similarly situated,** | ) ) ) ) ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:06-cv-00235** |
| | ) | **District Judge Trauger** |
| **v.** | ) | **Magistrate Judge Brown** |
| | ) | |
| **CATERPILLAR, INC.,** | ) | **Class Action** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

Currently pending before the court is a motion for class certification filed by the plaintiffs (Docket No. 103), the defendant's response thereto (Docket No. 112), and the plaintiffs' reply (Docket No. 113). For the reasons explained herein, the plaintiffs' motion will be granted.

I.    Introduction

This is an action for retiree health insurance benefits. The plaintiffs are eight former employees of the defendant Caterpillar, Inc. ("Caterpillar") and one surviving spouse. Caterpillar provided healthcare benefits for the plaintiffs pursuant to successive collective bargaining agreements ("CBA's") with the United Auto Workers ("UAW"). According to the plaintiffs, their rights to these benefits vested because they or their spouses worked for decades under the contracts, and these rights were repeated in ERISA-mandated Summary Plan

1

Descriptions[1] ("SPD's") promulgated by Caterpillar.   The plaintiffs claim that Caterpillar breached its promise to pay lifetime retiree health benefits at no cost when, in 2004, without the retirees' consent, it began charging retirees and their surviving spouses for a portion of their medical care.  The plaintiffs also complain they were charged increased co-payments for prescription drugs and other out-of-pocket expenses.

The plaintiffs claim that Caterpillar's actions violated § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.  The plaintiffs seek an order declaring that they are vested in lifetime medical benefits under the 1988 labor contracts at no cost to themselves, an injunction requiring Caterpillar to restore all affected class members to the positions in which they would have been but for Caterpillar's actions, compensatory and punitive damages, attorneys' fees, and costs.

II.    Procedural History

On March 28, 2006, Plaintiffs Winnett, Jackson-Chittum, and Harris originally filed this action.  (Docket No. 1).  Caterpillar then filed a motion to transfer the case to the Central District of Illinois (Docket No. 13), which the court denied by order entered June 20, 2006 (Docket No. 46).  On September 5, 2006, the plaintiffs filed a First Amended Complaint in which they added named Plaintiffs Dailey, Hammer, Grogan, and Waterfield.  (Docket No. 61).  On that same day,

_____

[1]A summary plan description is a publication explaining the benefits of a particular welfare benefit plan.  ERISA requires employers to distribute the descriptions to employees.  29 U.S.C. § 1022.

2

the court consolidated this case with *Finn v. Caterpillar Inc.*, Civil No. 3:06-0802.[2]  (Docket No. 62).

On September 25, 2006, Caterpillar filed a motion to dismiss (Docket No. 74), contending that this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) or dismissed with prejudice under Rule 12(b)(6).   The court denied Caterpillar's motion, finding that the court had subject matter jurisdiction over this suit; the plaintiffs' right to lifetime, no-cost health benefits vested under the 1988 CLA and previous contracts;  retirees were not required to allege breach of the duty of fair representation against UAW;  this action is timely brought, under either the applicable six- or ten-year statute of limitation; and the plaintiffs' allegations based on the SPD's state a claim.  (Docket Nos. 120, 121).

The plaintiffs now seek to represent a putative class of retirees and surviving spouses under Federal Rule of Civil Procedure 23 (1) who are or were participants or beneficiaries in Caterpillar's plan that provided for retiree medical insurance benefits; (2) for whom the UAW had been the employees' collective bargaining representative at the time of their retirement from Caterpillar, Inc.; and (3) who began working for Caterpillar prior to the expiration of the 1988 labor agreement and who retired on or after January 1, 1992, and before March 16, 1998, and became eligible for the immediate commencement of a monthly pension (with at least five years of credited service) under the Non-Contributory Pension Plan upon retirement; and, in the case of beneficiaries of such retirees, who is a surviving participant spouse whose employee spouse

---

[2]A related case, *Kerns v. Caterpillar, Inc.*, 3:06-cv-0113, is also pending before this court. The *Kerns* case has not been consolidated with the instant case.

fulfilled the conditions above leaving a spouse with a survivor pension. (Am. Compl. ¶ 35, Docket No. 61; Docket No. 103).

The plaintiffs also move to certify three subclasses, whose circumstances allegedly give rise to additional grounds. (*Id.*) According to the plaintiffs, the first subclass' rights vested when the group became eligible to retire prior to January 1, 1992; the second subclass' rights vested when they retired under the 1988 CLA which was extended for Caterpillar Logistics Services ("CLS") employees; and the third subclass' rights vested by contract language directed specifically to surviving spouses. (Am. Compl. ¶¶ 36-38, Docket No. 61; Docket No. 103).

Caterpillar opposes the plaintiffs' motion. (Docket No. 112). Caterpillar contends that, as a threshold matter, the court lacks subject matter over the plaintiffs' claims. Second, Caterpillar contends that the plaintiffs' claims are time-barred, and therefore, they cannot meet Rule 23(a)'s prerequisites as their claims are not typical of the claims of others who may have timely claims; alternatively, the plaintiffs are not adequate class representatives of such persons. Third, Caterpillar contends that the plaintiffs' surviving spouse claims are moot, and therefore fail to satisfy the requirements of Rule 23. Fourth, Caterpillar contends that the plaintiffs lack Article III standing to assert certain claims and to seek certain relief for themselves or the putative class or subclasses. (*Id.* at 3-4.)

III. <u>Facts</u>

The relevant facts of this case are set forth in the court's memorandum opinion entered on May 16, 2007, and are incorporated herein by reference. (Docket No. 120 at pp. 4-14).

4

IV.    Preliminary Matters

In response to the plaintiffs' motion for class certification, Caterpillar attacks the court's subject matter jurisdiction over the plaintiffs' claims and argues that the plaintiffs' claims are time-barred.  Caterpillar raised these same arguments in its motion to dismiss, and the court rejected them.  (See Docket No. 120 at 16-21 (jurisdiction) and 33-40 (statute of limitations)). There is no basis for the court to revisit those decisions at this time.

Caterpillar also argues that plaintiff Jackson-Chittum cannot represent a subclass of surviving spouses because her own claims are moot.   Caterpillar briefly raised this argument in its motion to dismiss, but the court did not address it at that time.  (*See id.* at 3 n.3)("In a one-sentence footnote, the defendant also contends that  the plaintiffs' surviving spouses' claims are moot.  This issue is addressed in more detail by both parties in connection with the plaintiffs' pending motion for class certification.  The court therefore will address the issue of mootness in a forthcoming order and memorandum resolving the certification motion.").

Caterpillar argues in its most recent submission to the court that, although it notified Ms. Jackson-Chittum in 2005 that she would be charged a premium for medical benefits, in April 2006 Caterpillar notified her that she would not be so charged.  To date, neither Jackson-Chittum nor any surviving spouse has ever been charged a premium for healthcare.  As a result, Caterpillar urges, Jackson-Chittum's claims are moot and she cannot represent a subclass of surviving spouses.

Jackson-Chittum alleges that shortly after the death of her husband on June 3, 2002, Caterpillar confirmed that she would "continue to have retired survivor coverage for [her] lifetime, at no cost [f]or [her] and [her] covered dependents."  (Docket No. 113 at 6).  On

5

September 2, 2003, she was informed that the VEBA trust was running out and that she would be required to pay premiums beginning January 1, 2004. (*Id.* at 6-7). Two days later, Caterpillar revoked the letter of September 2, 2003, and sent her another letter saying that premiums would be covered until an undetermined date in mid-2004. (*Id.* at 7).

On October 10, 2005, Caterpillar sent Jackson-Chittum another letter which stated that, according to the 2005 bargaining agreement, as the surviving spouse of someone who retired after January 1, 1992, she would be required to pay a healthcare premium in order to maintain her coverage, effective January 1, 2006. (*Id.*) One day after Jackson-Chittum filed this lawsuit, Caterpillar sent her yet another letter. This letter delayed the date that the healthcare premium would be deducted from her pension from January 1, 2006 until May 1, 2006. (*Id.*)

Jackson-Chittum contends that, even though Caterpillar elected to waive the healthcare premiums for her and for other surviving spouses, Caterpillar could impose monthly healthcare premium sharing co-payments on her or them at any time, should it change its mind. She also contends that, beyond the concern that Caterpillar may decide again to institute charges for premiums at any time, surviving spouses have additional claims of current harm. They seek to end and recoup the charges they have already incurred for higher prescription drug co-pays, deductibles, and out-of-pocket expenses which were not part of the healthcare plan at the time of their employee spouses' retirements. The deductibles and co-pays for medical procedures began in 2006; discovery is pending as to the prescription drug plan.

"Under Article III of the Constitution, [a federal court's] jurisdiction extends only to actual cases and controversies. [A federal court] has no power to adjudicate disputes which are moot." *McPherson v. Mich. High. Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 458 (6th Cir. 1997)

(internal quotation omitted). In general, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways." *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000) (internal quotation omitted). A defendant's voluntary conduct may moot a case only if "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *id.,* and if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Ammex, Inc. v. Cox,* 351 F.3d 697, 705 (6th Cir. 2003) (citing *County of Los Angeles v. Davis,* 440 U.S. 625, 631(1979)). The "heavy burden" of demonstrating that the challenged conduct will not resume rests on the party claiming mootness. *Friends of the Earth,* 528 U.S. at 189; *Ammex, Inc.,* 351 F.3d at 705.

On this record, viewed in the light most favorable to Jackson-Chittum, the court cannot find that Caterpillar has met this burden. Although Caterpillar represented to Jackson-Chittum by letter in 2006 that it would not impose premiums on her, Caterpillar consistently has maintained the position in this lawsuit that surviving spouses' benefits are not vested and that Caterpillar has a legal right to modify or terminate benefits at any time. Caterpillar, in its own interrogatories, stated that it was a "business decision" not to charge the surviving spouses the premiums and that it "has no *present* intention" to modify its position in this regard. (Ex. 8 to Docket No. 114, Interrog. Resp. No. 4)(emphasis added). Caterpillar has threatened numerous times over a period of three years to impose the premiums. Caterpillar's voluntary decision to waive the premiums *for now*, in light of its position that the benefits are not vested and are

7

subject to change, does not "make it absolutely clear that the allegedly wrongful behavior could

not reasonably be expected to recur."

Moreover, Section 502(a)(1)(B) of ERISA specifically allows plan participants and/or

beneficiaries to bring an action for a declaratory judgment to clarify their rights to future benefits

under an ERISA plan.

> If a plan participant or beneficiary believes that benefits promised
> to him under the terms of the plan are not provided, he can bring a
> suit seeking provision of those benefits. A participant or
> beneficiary can also bring suit generically to "enforce his rights"
> under the plan, or to clarify any of his rights to future benefits.
> Any dispute over the precise terms of the plan is resolved by a
> court under the de novo review standard.

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). Here, Jackson-Chittum is a beneficiary

of a negotiated ERISA benefit plan. She brought this lawsuit in part to clarify her rights to

future benefits under the plan and to challenge the benefit modifications Caterpillar already has

made, such as higher prescription drug co-payments, new deductibles, new out-of-pocket

maximums, and related charges. Jackson-Chittum and other surviving spouses are entitled to

have those issues resolved now, and they should not have to wait until Caterpillar changes its

mind and later elects to require them to pay healthcare premiums or implements the additional

changes to their benefits. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004); *Pilot Life*

*Ins. Co. v. Dedeaux*, 481 U.S. 51, 53 (1987)("Under the civil enforcement provisions of § 502(a),

a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the

participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form

of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction

against a plan administrator's improper refusal to pay benefits.").

8

The court finds that Caterpillar's actions have raised a definite and concrete controversy regarding the surviving spouses' rights to benefits under the plan and, therefore, they may bring this action to clarify their rights to future benefits under the plan. The surviving spouses' claims are not moot.

V.    Class Certification Analysis

The principal purpose of class actions is to achieve efficiency and economy of litigation, both with respect to the parties and the courts. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159, 102 S. Ct. 2364, 72 L.Ed.2d 740 (1982). The Supreme Court has observed that, as an exception to the usual rule that litigation is conducted by and on behalf of individual named parties, "[c]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Id.* at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 61 L.Ed.2d 176 (1979)). The Court directs that, before certifying a class, district courts must conduct a "rigorous analysis" of the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *See Falcon*, 457 U.S. at 161. The Sixth Circuit has stated that district courts have broad discretion in deciding whether to certify a class, but that courts must exercise that discretion within the framework of Rule 23. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Although a court considering class certification may not inquire into the merits of the underlying claim, a class action may not be certified merely on the basis of its designation as such in the pleadings. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L.Ed.2d 732 (1974); *In re Am. Med. Sys., Inc*, 75 F.3d at 1079. In evaluating whether class certification is

9

appropriate, "it may be necessary for the court to probe behind the pleadings...." *Falcon*, 457 U.S. at 160; *see also In re Am. Med. Sys., Inc.*, 75 F.3d at 1079; *Weathers v. Peters Realty* Corp., 499 F.2d 1197, 1200 (6th Cir. 1974). Moreover, the party seeking class certification bears the burden of establishing its right to it. *See Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976).

      A.    *The plaintiffs have demonstrated that they meet the requirements of Rule 23(a).*

      Any party seeking class certification must meet all four prerequisites of Rule 23(a)-- numerosity, commonality, typicality, and adequacy of representation--before a class can be certified. *See Fed. R. Civ. P.* 23(a); *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079. The court will discuss each of these prerequisites in turn.

          1.    *The plaintiffs have demonstrated numerosity.*

      Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Fed. R. Civ. P.* 23(a)(1). In *Sente*r, the Sixth Circuit explained that there is "no specific number below which class action relief is automatically precluded" and that it is the circumstances of the case, not a strict numerical test, that determines impracticability of joinder. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976). When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

      Apart from class size, factors that courts should consider in determining whether joinder is impracticable include the geographical dispersion of class members, the injunctive nature of the action, how easily class members can be identified, judicial efficiency, fear of harassment, and the relatively small size of individual claims. *See* Alba Conte & Herbert Newberg, 1 *Newberg on Class*

*Actions* § 3:6 (4th ed. 2003) (hereinafter "*Newberg*"); *see also Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 286 (W.D. Mich. 2001).

To date, Caterpillar has identified 4480 Caterpillar retirees and their spouses who fall within the class definition. (Docket No. 104 at 11). Among the proposed subclasses, the subclass of employees who were eligible to retire prior to January 1, 1992 has 1187 potential class members; the subclass of CLS employees has at least 275 class members; and the subclass of surviving spouses has over 500 members. (*Id.*) The court finds that the size of the proposed class and subclasses fulfills the numerosity requirement. *See e.g., Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884-85 (6th Cir. 1997)(affirming district court's certification of class, agreeing that the joinder of 1100 retirees and surviving spouses would be impracticable and finding it "obvious" that the class met the numerosity requirement); *Reese v. CNH Am., LLC*, 227 F.R.D. 483, (E.D. Mich. 2005)(citing *Bittinger* and finding that joinder of approximately 1450 retirees and surviving spouses was impracticable, thus the numerosity requirement was fulfilled).

2.       *The plaintiffs have demonstrated commonality.*

In order to establish commonality, the plaintiffs must demonstrate that "there are questions of law or fact common to the class" under Rule 23(a)(2). *See Fed. R. Civ. P.* 23(a)(2). One leading treatise characterizes the commonality prerequisite as interdependent with the numerosity prerequisite. *See Newberg* § 3:10. It notes that these two factors form the conceptual basis for determining whether a class action is the appropriate vehicle for the resolution of a particular matter. *See id.*

The Sixth Circuit has characterized the commonality requirement as "qualitative rather than quantitative" and has observed that "[v]ariations in the circumstances of class members are

11

acceptable, as long as they have at least one issue in common." *See Bacon,* 370 F.3d at 570; *In re Am. Med. Sys., Inc.,* 75 F.3d at 1080. It has also noted that not every common issue will satisfy this requirement but rather that "[w]hat we are looking for is a common issue the resolution of which will advance the litigation." *See Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998).

Here, the class members and the proposed class members share the common legal question of whether Caterpillar's modifications of retiree medical benefits are actionable under the LMRA and ERISA. The plaintiffs, on behalf of themselves and of the proposed class, contend that their right to retiree healthcare benefits vested in the same set of agreements and SPD's which the plaintiffs contend barred Caterpillar from charging retirees for benefits. (Am. Compl. ¶ 42; Docket No. 104 at 12). While there may be some distinctions in the facts supporting class members' claims, the commonality requirement of Rule 23(a)(2) does not require that *all* questions of law or fact be common. The issue of whether Caterpillar violated vested rights under either the LMRA or ERISA would resolve a common issue for the entire group. In *Bittinger*, the Sixth Circuit held that the common question of whether a collective bargaining agreement guaranteed lifetime, fully-funded benefits was sufficient to establish commonality. 123 F.3d 877, 884; *see also Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 661 (E.D. Mich. 1995) (finding that commonality was present where all proposed class members sought the same continuing lifetime healthcare benefits allegedly promised to them in collective bargaining and insurance agreements, even though there may have been distinct oral and written representations on which the plaintiffs relied). The court finds that the plaintiffs in the instant case have established the necessary commonality under Rule 23(a).

12

3.    *The plaintiffs have demonstrated typicality*.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Fed. R. Civ. P.* 23(a)(3).  Typicality requires the representative to be a member of the class and share at least a common element of fact or law with the class.  *Senter v. Gen. Motors Corp*., 532 F.2d 511, 525 (6th Cir. 1976).  "Like the test for commonality, the test for typicality is not demanding and the interests and claims of the various plaintiffs need not be identical."  *Reese v. CNH Am., LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005)(citing *Bittinger*, 123 F.3d at 884)); *see also Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998)(recognizing that the commonality and typicality requirements "tend to merge," and that "[b]oth serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class members are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.")).

Together with Rule 23(a)(4)'s requirement that the representative party adequately protect the interests of the class, the typicality requirement focuses on the characteristics of the class representatives.  *See Newberg* § 3:13. The Sixth Circuit has adopted Newberg's characterization of the typicality requirement. As depicted in this characterization, "[t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, such that the court may properly attribute a collective nature to the challenged conduct.  In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong done to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or

13

course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1082 (citing 1 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:13 (3d ed. 1992)). A representative's claim may be considered typical, despite the fact that evidence relevant to his or her claim varies from other class members, some class members would be subject to different defenses, and the members may have suffered varying levels of injury. *See Bittinger*, 123 F.3d at 884-885.

In the instant case, Caterpillar argues that the named plaintiffs cannot satisfy Rule 23's typicality requirement because their own claims are time-barred and moot. As discussed earlier, the court has found otherwise. Here, the named representatives, like the proposed class members, contend that Caterpillar is wrongfully threatening to modify, or already has modified, the level of health insurance benefits to which they and/or their beneficiaries allegedly are entitled under the governing CBA and plans. Their claims are based on the same legal theory-- that the relevant agreements provides retirees and surviving spouses of retirees fully-paid lifetime healthcare benefits without cost. This common legal theory is sufficient to establish typicality. *Senter*, 532 F.2d at 525.

4.    *The plaintiffs have demonstrated adequate representation.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *Fed. R. Civ. P.* 23(a)(4). The Sixth Circuit has recognized that this adequacy of representation requirement encompasses two criteria: (1) the representative plaintiffs must have common interests with unnamed members of the class; and (2) it must appear that the representative plaintiffs will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525. The first criterion, that of common interest,

14

essentially requires that there be no antagonism or conflict of interest between the representative plaintiffs and the other members of the class that they seek to represent. *See In re Am. Med. Sys.*, 75 F.3d at 1083. The second criterion inquires into the competency of counsel. *See id.* The Sixth Circuit has observed that the adequacy of representation prerequisite overlaps with the typicality requirement because, "in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id.* That court has also noted that this prerequisite is essential to due process because a final judgment in a class action is binding on all class members. *Id.*

As to the first criterion, that of common interest, Caterpillar specifically challenges whether CLS retirees are appropriate representatives for CLS surviving spouses. (Docket No. 112 at 16-17). Caterpillar points out that neither Winnett nor Dailey are surviving spouses of Caterpillar retirees. However, the plaintiffs contend that CLS employees have standing to represent their spouses' rights. While active employees, CLS employees Winnett and Dailey negotiated for healthcare benefits for their families. The court finds that they have an interest in seeing that their spouses, who are third party beneficiaries of their contracts, are secure in receiving the benefits for which they bargained if they should predecease their spouses. *See United Steelworkers of Am., AFL-CIO v. Cooper Tire and Rubber Co.*, 474 F.3d 271 (6th Cir. 2007)(finding that the union had standing to represent the interests of retirees and surviving spouses because they were third party beneficiaries to the union contract and union had interest in maintaining rights under the CBA).

Caterpillar further notes that Winnett does not even allege that he has a spouse. However, the court finds that, even where CLS retirees do not have spouses who may receive the

15

benefit, they are still appropriate representatives because their claims under the CLS contract are co-extensive with the claims of surviving spouses of CLS retirees. Typicality does not require identical claims. Under the facts alleged by the plaintiffs, retirees may represent the rights of surviving spouses. Both the CLS retirees and surviving spouses of CLS retirees argue that they are entitled to the retiree healthcare benefits under an extension of the 1988 contract. This theory makes the retirees' claims typical of the surviving spouses' claims: if the CLS retirees prevail on this issue, the CLS surviving spouses do as well. This common reliance on the extension of the 1988 contract creates "a nexus between the class representatives' claims or defenses and the common questions of law or fact which unite the class." *In re Direct Gen. Corp.*, 2006 WL 2265472, at *3 (M.D. Tenn. Aug. 8, 2006)(Campbell, J.)(finding typicality and granting class certification). The CLS retirees share an interest with surviving spouses of CLS retirees in ensuring their benefits under the 1988 contract and are appropriate representatives of their claims. *See Reese*, 2006 WL 2540952 (granting class certification to a class of surviving spouses and retirees where retirees were the only named representatives).

The court finds that the named plaintiffs share a keen interest in declaring the rights of the *entire* class to vested, lifetime healthcare benefits under the 1988 agreements and plans without any premium-sharing payment by them and without the modifications that have reduced their benefits and imposed new out-of-pocket costs since January 1, 2006. Caterpillar's actions have been directed at the entire proposed class, and the class members have been affected in the same way (i.e., by Caterpillar's alleged unlawful withdrawal or modification of their healthcare insurance benefits). Caterpillar has not demonstrated that any antagonism exists among or between the named plaintiffs and the proposed class members. Thus, the court finds that the

16

named plaintiffs will fairly and adequately protect the interests of the class.

As to the second criterion, the plaintiffs assert that their counsel will vigorously prosecute the class claims.  In its order appointing Michael M. Mulder and Meites, Mulder, Mollica & Glink as lead counsel, the court found that the plaintiffs' counsel met the requirements of Rule 23(g)(1)(B) and (C).  (Docket No. 79).  The court noted that the plaintiffs' counsel had made "substantial efforts . . . to identify and investigate potential claims for this case."  (*Id.* at 3).  The court also found that the plaintiffs' counsel has allocated sufficient resources to the case, particularly noting the presence of Lieff, Cabraser, Heimann & Bernstein LLP on Mr. Mulder's team and its nationally-known experience, as well as the AARP Foundation's "extensive and relevant ERISA experience."  (*Id.* at 4).  Counsel has pursued discovery, successfully opposed Caterpillar's motion to dismiss, and has prepared the class certification motion.  The defendant does not contest the competency of plaintiffs' counsel. Accordingly, the court finds that the plaintiffs satisfy the second criterion of adequate representation and have, therefore, demonstrated that adequate representation exists in this case.

B.     *The proposed class meets the requirements of Rule 23(b)(1) and (b)(2), and the court declines to certify the class under Rule 23(b)(3).*

Having found that the plaintiffs have demonstrated the existence of each Rule 23(a) prerequisite,[3] the court now must determine whether the plaintiffs' case also falls within at least one of the subcategories of Rule 23(b).  *See In re Am. Med. Sys.*, 75 F.3d at 1079.  The plaintiffs contend that the facts here mandate class certification under subsections (b)(1), (b)(2), or (b)(3).

---

[3]Indeed, Caterpillar does not dispute numerosity, commonality, the adequacy of class counsel, or the fulfillment of Rule 23(b)(2).  (Docket No. 112).

Caterpillar opposes class certification, but asserts that, if the court decides to certify any class or

subclass in this matter, the plaintiffs' claims should be certified only pursuant to Rule 23(b)(2)

because the plaintiffs seek injunctive and declaratory relief applicable to the class as a whole.

(Docket No. 112 at 4).

        1.     *Rule 23(b)(1)*

Rule 23(b)(1) authorizes "mandatory" class actions under which potential class members

do not have an automatic right to notice or a right to opt out of the class. *See Reeb v. Ohio Dep't*

*of Rehab. & Corr.*, 435 F.3d 639, 645 (6th Cir. 2006). Rule 23(b)(1) provides that an action may

be maintained as a class action if the above four requirements of Rule 23(a) are met and if "the

prosecution of separate actions by or against individual members of the class would create a risk

of" either one of the following:

> (A)    inconsistent or varying adjudications with respect to
> individual members of the class which would establish
> incompatible standards of conduct for the party opposing the class,
> or
> (B)    adjudications with respect to individual members of the
> class which would as a practical matter be dispositive of the
> interests of the other members not parties to the adjudications or
> substantially impair or impede their ability to protect their
> interests[.]

*Fed. R. Civ. P.* 23(b)(1).

In the instant case, the plaintiffs assert that, if this action does not proceed as a class

action, the surviving spouses could file a multitude of individual lawsuits in numerous

jurisdictions challenging Caterpillar's actions. Varying decisions, at odds with one another,

could result. Caterpillar could then be required to continue to pay the full cost of insurance for

18

some and not others. This result is the very result Rule 23(b)(1) is intended to avoid. *See Fox v. Massey-Ferguson*, 172 F.R.D. 653, 665 (E.D. Mich. 1995)(where the prosecution of separate actions could lead to inconsistent adjudications which would fail to establish congruous standards of conduct for Massey-Ferguson, certification under Rule 23(b)(1) was appropriate). As explained by the court in *Massey-Ferguson*:

> If each retiree [or surviving spouse] separately adjudicated his or her claim, different results are inevitable, especially considering the fact that the retirees reside in different states. This would lead to the obvious conclusion that [the defendant] could prevail in some cases and lose in others which, in turn, would lead to inconsistent and, perhaps, inequitable results. Moreover, adjudications with respect to individual members could substantially impair the interests of those persons who are not parties to this lawsuit.

172 F.R.D. at 665. The court agrees with the plaintiffs. Absent class certification, if over 4000 persons file individual lawsuits to challenge Caterpillar's modifications to their health insurance benefits, Caterpillar likely would face "incompatible standards of conduct paying the full-costs of benefits for some but not others." *Reese*, 227 F.R.D. 483, 489 (certifying class under Rule 23(b)(1) where retirees claimed the defendant violated ERISA and LMRA in denying retirement healthcare benefits). The court finds that, because of the risk of inconsistent judgments, certification is appropriate under Rule 23(b)(1).

2.      *Rule 23(b)(2)*

Like Rule 23(b)(1), Rule 23(b)(2) authorizes "mandatory" class actions under which

19

potential class members do not have an automatic right to notice or a right to opt out of the class. *See Reeb*, 435 F.3d at 645. Certification under this rule is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Fed. R .Civ. P.* 23(b)(2). In other words, class actions may be maintained under this rule when the primary relief sought is injunctive or declaratory. *See id.* advisory committee's note (noting that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages").

Here, the plaintiffs seek injunctive and declaratory relief to end Caterpillar's modifications to their healthcare benefits. Caterpillar's actions in this regard "affected the entire proposed class," making equitable relief appropriate. *See Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. at 665 (granting certification under Rule 23(b)(1) and (b)(2)). The plaintiffs' request for declaratory and injunctive relief predominates over any monetary relief which may also be available.

Caterpillar concedes that the court could certify a class under Rule 23(b)(2) because the plaintiffs' "primary request for relief is injunctive and declaratory in nature--they ask the Court to declare that their rights to free lifetime retiree medical benefits were 'vested' and could not be changed, and restoration to that status." (Docket No. 112 at 18). Accordingly, the court finds that certification under Rule 23(b)(2) as well as (b)(1) is appropriate. *See e.g., Reese v. CNH Am., LLC*, 227 F.R.D. 483 (E.D. Mich. 2005)(finding that class certification is appropriate under either Rule 23(b)(1) or (2)).

        3.      *Rule 23(b)(3)*

Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification of a class action where such treatment may nevertheless be convenient and desirable. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotations omitted). To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: (1) common questions must "predominate over any questions affecting only individual members"; and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Id*. (quoting Fed. R. Civ. P. 23(b)(3)).

Rule 23(b)(3) includes a non-exhaustive list of factors that are pertinent to a court's examination of the predominance and superiority prerequisites: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc*., 521 U.S. at 615-16. "Rule 23(b)(3), designed to accommodate claims for money damages, requires notice to the class members, including the member's right to opt out of the class, *see Fed. R. Civ. P*. 23(c)(2)(B)." *Reeb*, 435 F.3d at 645-46.

Because the court already has determined that certification under Rule 23(b)(1) or (b)(2) is appropriate, and because the plaintiffs primarily seek declaratory and injunctive relief in this case, as opposed to claims for money damages, the court declines to certify the class under (b)(3). *See Fed. R. Civ. P*. 23(b)(3) advisory committee's note (indicating that (b)(3) is to be

used in situations where class action treatment "is not as clearly called for" as in (b)(1) and (b)(2) situations).

C.      *Three subclasses are appropriate at this time.*

The plaintiffs also ask the court to certify three subclasses who, according to the plaintiffs, have the same rights under the governing documents as the main class and advance three additional grounds for enjoining Caterpillar's revocation of their healthcare benefits.  In response, Caterpillar contends that, if the court decides to certify a class or subclass in this matter, the plaintiffs' proposed class and subclass definitions are confusing or redundant and should be clarified.  (Docket No. 112 at 18).   To address Caterpillar's concerns, the plaintiffs refined their requested subclasses, clarifying that the date range applicable to the main class should apply to them as well.  (Docket No. 113 at 16).

Federal Rule of Civil Procedure 23(c)(4)(B) provides that "[w]hen appropriate ... a class may be divided into subclasses and each subclass treated as a class...." *Fed. R. Civ. P.* 23(c)(4)(B). The court has the discretion to break up a proposed class into subclasses, provided that the each subclass meets the requirements of Rule 23. *Bert v. AK Steel Corp.,* 2006 U.S. Dist. LEXIS 22904, at *22 (S.D. Ohio 2006). District courts commonly certify subclasses in retiree benefit cases where the rights of the various proposed class members might differ depending upon their circumstances, but where the members of the subclasses otherwise satisfy Rule 23 requirements. *See, e.g., Rose v. Volvo Const. Equipment N. Am., Inc., 2007 WL 893049,* at *4 (*N.D. Ohio Mar. 21, 2007)* (certifying subclass of retirees based upon the plant at which they worked and subclass of surviving spouses and dependants of those retirees); *Rexam Inc. v. United Steel Workers of America,* 2005 U.S. Dist. LEXIS 24132 (D. Minn.2005) (certifying subclasses of

22

retirees based upon the plant at which they worked). The court also retains the discretion to "alter or decertify [the] subclasses, if further discovery and developments should warrant." *Bert,* 2006 U.S. Dist. LEXIS 22904, at *22.

The court finds that the creation of three subclasses is appropriate at this stage: (1) members of the main class who were eligible to retire prior to January 1, 1992; (2) members of the main class who worked (or whose employee spouses worked) under the CLS Agreement; and (3) members of the main class who are surviving spouses of Caterpillar retirees.

Rule 23(c)(1)(B) provides that, once a class is certified, the court must enter an order that "define[s] the class." Rule 23(c)(1)(C) further provides that an order defining the class may be thereafter further refined, altered, or amended. If necessary, the court can alter, amend, or further refine the class and/or subclasses at a later time.

VI.     Conclusion

For the reasons explained herein, the plaintiffs' motion for class certification (Docket No. 103) will be GRANTED.

An appropriate order will enter.

                                                  _____
                                                  ALETA A. TRAUGER
                                                  United States District Judge