**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GARY T. WINNETT, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:06-cv-00235** |
| | ) | **District Judge Trauger** |
| **v.** | ) | **Magistrate Judge Brown** |
| | ) | |
| **CATERPILLAR, INC.,** | ) | |
| | ) | |
| **Defendant/Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INTERNATIONAL UNION, UAW, et al.,** | ) | |
| | ) | |
| **Third-Party Defendants.** | ) | |

### MEMORANDUM

Currently pending before the court is defendant Caterpillar's motion to stay the court's September 16, 2008 preliminary injunction pending appeal (Docket No. 312), the plaintiffs' opposition thereto (Docket No. 314), and the defendant's reply (Docket No. 318). For the reasons explained herein, the defendant's motion will be denied.

**I.      Introduction**

This is an action for retiree health benefits brought by former employees of the defendant Caterpillar, Inc. ("Caterpillar") and one surviving spouse.[1]  On September 16, 2008, the court granted the motion for preliminary injunction (Docket No. 200) filed by plaintiffs Gary T.

---

[1]The court presumes the reader's familiarity with the Caterpillar-UAW bargaining relationship and the general background of this case, as set forth in the court's prior Memorandum Opinion entered on May 16, 2007. (Docket No. 120 at 4-14).

1

Winnett, et al. and the subclass of retirees from Caterpillar Logistics Services ("CLS") division and surviving spouses of CLS retirees ("the CLS subclass"). (Docket No. 307). In so doing, the court ordered Caterpillar to provide the CLS subclass with the same level of retiree healthcare currently provided to Caterpillar retirees for whom the UAW had been the employees' collective bargaining representative at the time of their retirement from Caterpillar and who retired before January 1, 1992. (*Id.*) The court enjoined Caterpillar from deducting premium charges for the CLS subclass' retiree healthcare coverage and from charging the CLS subclass the following specific charges, which are not part of the 1998 "Caterpillar Hourly Retirees Central Agreement Covered under the NetWork" Plan: premiums to maintain their retiree healthcare benefit; deductibles of $300 (individual) or $600 (family) before the health insurance applies; the retiree's share of a 90/10 split and maximum out-of-pocket payments, which require the CLS subclass to pay 10% of the costs of their post-deductible health care until the amount reaches the out-of-pocket maximums of $750 (individual) or $1500 (family); and individual and family deductibles for dental services and new costs for their vision plan. (*Id.*)

Caterpillar filed its notice of appeal of the court's preliminary injunction order on October 16, 2008. (Docket No. 310). Caterpillar now asks the court to stay enforcement of its preliminary injunction pending Caterpillar's appeal thereof. (Docket No. 312). Caterpillar contends that it can show a likelihood of success on the merits of its appeal because its arguments largely involve legal issues which will be subject to *de novo* review, the court's interpretation of the CLS Agreement improperly renders nugatory the Agreement's "automatically applicable" provision, the court's statute of limitations analysis purports to establish a subjective framework that finds no support in Sixth Circuit jurisprudence, and

irreparable harm cannot be presumed to the entire subclass based on evidence of a few individual circumstances. Caterpillar further contends that a balancing of hardships and the public interest favor staying the injunction pending appeal.

In response, the plaintiffs maintain that Caterpillar's motion presents no reason to believe that the court's decision to issue an injunction will be overturned, especially considering the highly deferential abuse of discretion standard utilized by the Sixth Circuit on appeal. According to the plaintiffs, Caterpillar has not shown a strong or substantial likelihood of success on the merits to obtain a stay, and the balancing of hardship in this case favors the plaintiffs.

## II.    **Applicable Law**

Caterpillar's motion to stay is filed pursuant to Federal Rule of Civil Procedure 62(c), which provides:    "When an appeal is taken from an interlocutory or final judgment granting . . . an injunction, the court in its discretion may suspend, modify, restore or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."  Fed. R. Civ. P. 62(c).

The decision to stay an injunction pending appeal is evaluated under the same factors that regulate the issuance of a preliminary injunction.  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Specifically, the court considers: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting a stay." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  No single factor is dispositive; instead, the factors are interrelated and

3

must be considered and balanced together.  *Id.*

With these standards in mind, the court turns to the instant case.

III.  <u>Analysis</u>

A.  **Likelihood of success on the merits**

Caterpillar contends that it can show a likelihood of success on the merits of its appeal regarding (1) the court's interpretation of the CLS Agreement, (2) the court's statute of limitations analysis, and (3) the court's finding of class-wide irreparable harm.

According to Caterpillar, it need not establish a high probability of success on the merits to justify the granting of a stay.  (Docket No. 313 at 2).  However, in explaining what a movant must establish to justify the granting of a stay, the Sixth Circuit has said that "[t]he probability of success that must be demonstrated is inversely  proportional to the amount of irreparable injury plaintiffs will suffer absent the stay."  *Griepentrog*, 945 F.2d at 153.  "Simply stated," said the Court, "more of one excuses less of the other."  *Id.*

Here, the plaintiffs urge that the balance of hardship in this case demonstrates that Caterpillar must show a high probability of success on the merits of its appeal.  In evaluating the harm that will occur depending upon whether the stay is granted, courts generally look to three factors:  "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof involved."  *Id.* at 154.  The court's finding on the balancing of hardship to the parties is essentially a factual issue, not a legal one that would result in a *de novo* review.  *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross and Blue Shield Ass'n*, 110 F.3d 318, 333 (6th Cir. 1997).

After a three-day evidentiary hearing, the court previously found that, in weighing the hardship between the instant parties, "an injunction will have a relatively small impact on

4

Caterpillar, given its financial security, and a tremendous positive impact on the class members, who are of limited means, lack negotiating power, and suffer from declining health." (Docket No. 306, Mem. Op. at p. 49). Caterpillar brings forth no new evidence to overturn this factual finding regarding the balance of hardship.

While Caterpillar's counsel now argues that "all parties will be burdened in the short term as a result of the time and effort involved in making the administrative changes to the benefits package and educating [the] subclass on the parameters of the new benefits policy[]", (Docket No. 313 at 9), Caterpillar presents no evidence in support of its late and new claim of administrative hardship. Undisputed proof submitted at the evidentiary hearing showed that Caterpillar *already* administers a benefits plan for retirees who left Caterpillar prior to January 1, 1992 in a manner consistent with the injunction that the plaintiffs sought for the CLS subclass. (Docket No. 306, Mem. Op. at p. 28). Therefore, Caterpillar would not be in a situation like in *Grutter v. Bollinger*, 247 F.3d 631 (6th Cir. 2001), cited by Caterpillar, where the University of Michigan had to create a new admissions policy to comply with the injunction. *Id.* at 633. Here, all Caterpillar must do is administer its plan for the CLS subclass like it already administers the plan for the pre-1992 retirees.

While the court may reasonably assume there likely would be some costs and administrative burdens associated with the addition of new members to the pre-1992 plan, the court finds that these would be outweighed by the irreparable harm that will be imposed on the subclass if a stay were to issue. Subclass members have testified that they have foregone necessary medical treatment in an effort to "manage their increasingly unmanageable medical costs." They described the financial burdens and emotional anxiety they were experiencing due to premium, co-pay, and deductible

5

expenses. (Docket No. 306, Mem. Op. at pp. 42-43). Based on this undisputed and credible testimony, the court found that the plaintiffs had demonstrated irreparable harm, as they "are suffering from physical, emotional, and financial harm." (*Id.*, Mem. Op. at p. 44, pp. 47-48). This factual finding remains unchallenged. The court finds that the balance of hardship in this case demonstrates that Caterpillar must show a high probability of success on the merits of its appeal.

### 1. Caterpillar's appeal of the court's contract interpretation

First, Caterpillar contends that the court improperly interpreted the CLS Agreement so as to render nugatory the "automatically applicable" provision of Section 5(a) of the Agreement. (Docket No. 313 at 3-5). According to Caterpillar, the court gave meaning to one provision (the first paragraph of Section 5(a), providing for the continued application of the otherwise expired 1988 labor contract), while failing to give meaning to another provision in the same section (the second paragraph of Section 5(a), providing for the "automatic application" of the successor labor contract). (*Id.*)

In Section II.A.1. of the court's Memorandum Opinion entered contemporaneously with its September 16, 2008 Order, the court set forth the governing law as well as the parties' competing readings of the CLS Agreement. (Docket No. 306, Mem. Op. at pp. 19-22). Then, the court identified and explained its interpretation of the unambiguous language of the CLS Agreement, specifically addressing both paragraphs of Section 5(a). (*Id.* at pp. 22-25). The court also explained how the extrinsic evidence of the parties' intent and interpretation of the CLS Agreement adduced at the evidentiary hearing supported the court's reading of the CLS Agreement, which the court found extended the 1988 labor contract beyond its expiration for the CLS subclass such that they retired under that contract. (*Id.* at pp. 26-27).

6

Clearly, Caterpillar disagrees with the court's interpretation of the CLS Agreement. As a finding of law, that interpretation will be subject to *de novo* review by the Sixth Circuit. However, considering that the court specifically addressed the interplay of both paragraphs of Section 5(a) including the "automatically applicable" language, the court finds that Caterpillar has not shown a high probability of success on the merits of its appeal that the court's interpretation renders the provision nugatory.

### 2. Caterpillar's appeal of the court's statute of limitations analysis

Next, Caterpillar contends that it is entitled to a stay of the injunction because it is likely to succeed on the merits of its statute of limitations argument. The court previously found that Caterpillar did not meet its burden of proof on this affirmative defense. (Docket No. 306, Mem. Op. at pp. 50-57).

According to Caterpillar, "[t]he record evidence is undisputed" as to whether and when the CLS subclass knew that Caterpillar had repudiated its obligation to provide retiree health benefits. (Docket No. 313 at 5). However, as the court pointed out in its previous Memorandum Opinion, the parties have long disputed this evidence and the legal effect of it. (*Id.*) When considering and denying Caterpillar's motion to dismiss, the court first reviewed certain Caterpillar "notices" and proposed changes to premiums, co-pays, and deductibles and found that, "because the wording of Caterpillar's communications regarding retiree benefits beginning in 1992 was so indefinite and contingent on future events, it could hardly have been clear to the plaintiffs that, years before the defendant actually began to make the challenged deductions, the plaintiffs had suffered an injury and that the statute of limitations on their claims had begun to run." (Docket No. 120 at 40).

More recently, in reevaluating Caterpillar's statute of limitations defense on the plaintiffs'

Case 3:06-cv-00235   Document 321   Filed 11/20/08   Page 7 of 12 PageID #: 8938

motion for preliminary injunction, the court determined: "The evidence adduced during the evidentiary hearing does not change, and, in fact, bolsters the court's prior ruling. From 1992 until late 2004, retirees had every reason to believe that future negotiations between UAW and Caterpillar would prevent Caterpillar from implementing the caps. From the very beginning, Caterpillar described the caps as a possibility dependent and contingent on future events. This indefinite and uncertain language continued until October 10, 2004 . . . ." (Docket No. 306, Mem. Op. at p. 53).

Caterpillar's real disagreement with the court's statute of limitations ruling concerns what Caterpillar calls "the plaintiffs' subjective determination" of when they viewed changes to benefits severe enough to cause them to object. (Docket No. 313 at 5-6; 316 at 1-2). According to Caterpillar, "[t]his is the point on which . . . it is likely the Sixth Circuit will reverse, as no existing precedent supports the subjective inquiry upon which Plaintiffs' [sic] ground their theory concerning claims accrual." (Docket No. 316 at 2).

To the contrary, as cited by the court previously, at least two district courts from within the Sixth Circuit, as well as the Seventh Circuit, have adopted such a framework for claims accrual. (Docket No. 306, Mem. Op. at pp. 55-56 ). The court found the reasoning of these courts persuasive and appropriate, given the circumstances of those cases, and applied that reasoning to the facts of this case. As the court explained: "[T]hat the plaintiffs may have accepted the rules of the Network and some other *de minimus* changes to their retiree health care package did not put them on notice that Caterpillar was clearly and unequivocally repudiating their vested right to lifetime no-cost retiree health care. The court finds that Caterpillar has not shown that the plaintiffs' Section 301 LMRA or ERISA claims are time-barred." (*Id*. at p. 56). Considering the burden of proof, the court's factual findings, and the precedent on which the court relied for its legal determination, the

court finds it unlikely that Caterpillar will succeed on this issue on appeal.

### 3. Caterpillar's appeal of the court's finding of class-wide irreparable harm

Caterpillar contends that irreparable harm cannot be presumed for the entire subclass from the testimony of the witnesses at the evidentiary hearing. Caterpillar advanced this same argument in opposition to the plaintiffs' motion for preliminary injunction. The court considered and rejected Caterpillar's argument, distinguishing the Third Circuit *Adams* case on which Caterpillar relies and citing several cases wherein courts found class-wide irreparable harm based on the testimony of a representative group of plaintiffs. (Docket No. 306, Mem. Op. at pp. 46-47 citing *Golden v. Kelsey-Hayes*, 73 F.3d 648 (6th Cir. 1996), *Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571 (6th Cir. 2006), *Bailey v. AK Steel Corp.*, 2006 WL 2727732 (S.D. Ohio Sept. 22, 2006)). The court concluded that, based on the undisputed testimony of the four individuals who testified at the evidentiary hearing, the fixed income status of the retirees and the substantial charges on the subclass members being assessed by Caterpillar, as well as the average ages of the retirees and surviving spouses, the court could surmise, as did the *Golden, Yolton,* and *Bailey* courts, that the putative class members overall cannot afford to contribute such amounts until this case is resolved. (Docket No. 306, Mem. Op. at 47).

Because the high degree of irreparable injury to the class outweighs any injury to Caterpillar, it must show a strong or substantial likelihood of success on the merits to obtain a stay. The court finds that Caterpillar has not met its burden with respect to this issue.

### B. The likelihood that the moving party will be irreparably harmed absent a stay

The court addressed Caterpillar's claim that it will suffer administrative burdens "in the short

9

term" in Section A above.  Had Caterpillar provided the court with evidence documenting the extent of this claimed  burden, the court would have considered Caterpillar's claim more seriously.

### C.  The prospect that other parties will be harmed if the court grants the stay

If the court grants Caterpillar's motion and stays the injunction, then during the pendency of the appeal, CLS subclass members will continue to incur premium charges and bear responsibility for other co-payments on an ongoing basis as they incur health care costs.  The court has found that this scenario exposes these subclass members to irreparable financial, physical, and emotional harm.

Caterpillar asserts, however, that the vast majority of the class is Medicare eligible, making Caterpillar's coverage secondary.  According to Caterpillar:  "Medicare eligible retirees will have less need to utilize their Caterpillar coverage, and correspondingly less need to incur co-pays or deductibles associated with their secondary coverage."  (Docket No. 313 at 8 n.2).  However, Caterpillar provides no evidence in support of this assertion and fails to explain how Medicare eligible retirees' costs for Caterpillar health benefits will decrease or somehow become  more manageable.  Indeed, the court previously considered this same argument and found:  "[B]ased on the current record, retirees and/or surviving spouses in the subclass – having already depleted their savings and foregone necessary medical treatment prior to eligibility for Medicare coverage – could be financially and emotionally devastated absent the issuance of the requested injunction."  (Docket No. 306, Mem. Op. at p. 45).  The record on which the court made its decision contained evidence that the premiums Caterpillar charges Medicare eligible retirees are the same that it charges other retirees.  (Docket No. 202, Exh. 13).  Further, Caterpillar charges these retirees, although they are Medicare eligible, deductibles, co-pays, and out-of-pocket expenses.  These are the very expenses the subclass claims  are causing them severe financial and emotional anxiety.

10

Caterpillar also maintains that, even with respect to charges the subclass members will incur that are attributable to their Caterpillar benefits, those charges are capped on an annual basis. Thus, says Caterpillar, whatever the costs to the subclass members for benefits under the plan, the out-of-pocket maximum limits those costs from overwhelming them. The evidence adduced at the evidentiary hearing, however, reveals otherwise. Even with the maximum out-of-pocket limits, these plaintiffs are financially and emotionally overwhelmed by, and unable to bear the burden of, Caterpillar's costs for retiree health care.

Caterpillar argues that, if the injunction is not stayed pending appeal, and the Sixth Circuit ultimately vacates the injunction, the CLS subclass could be forced to pay large arrearages of missed premiums and co-payments that accrued during the period in which the injunction was in place. Caterpillar maintains that this scenario would impose a greater hardship on subclass members than the limited responsibility to make contributions to their health care on an ongoing basis. (Docket No. 313 at 8). Fortunately, the subclass members have the benefit of the advice and assistance of counsel on this and other matters. The plaintiffs' attorneys can advise the subclass members as to the possibility of various outcomes of this litigation and counsel them to conduct themselves and their affairs accordingly.

Finally, Caterpillar points out that, if the injunction is not stayed pending appeal, the CLS subclass will see changes to their current levels of medical coverage that not inure to their benefit. (Docket No. 313 at 8-9). This may or may not be true, as witnesses testified that it was difficult and entirely subjective to determine how, on balance, the advantages and disadvantages of a particular contract "net out" for a particular individual or a particular group. (*See, e.g.*, testimony of James Atwood, Evid. H'rg Tr. 163). In any event, the plaintiffs clearly have made the decision to seek

benefits under the previous plan, in which they claim they were vested. Even though that plan may afford them different or less favorable coverage in some aspects, under the plan in which they claim vested benefits, they will not bear responsibility for premiums, co-pays, or other out-of-pocket expenses – which is what they say they want. The court will not second-guess the decisions of the subclass members.

### D. The public interest in granting a stay

Courts have found that enforcing benefits under ERISA and the LMRA is in the public interest. *See Bailey*, 2006 WL 2727732, at *12 ("The public interest lies in protecting the legitimate expectations of retirees that their health insurance will be provided for the rest of their lives.")(quoting *Helwig*, 857 F. Supp. 1168, 1181). The court has determined that the 1988 GIP provided for a vested right to lifetime retiree health benefits. The public interest lies in the plaintiffs' favor. Caterpillar's motion for a stay will be denied.

## IV. <u>Conclusion</u>

For the reasons explained herein, the defendant's motion to stay (Docket No. 312) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

12