IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GARY T. WINNETT, *et al.*, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:06-0235 |
| | ) | Judge Trauger |
| CATERPILLAR INC., | ) | |
| | ) | |
|     Defendant, | ) | |

___

| | | |
|---|---|---|
| JUDITH K. KERNS, *et al.*, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:06-1113 |
| | ) | Judge Trauger |
| CATERPILLAR INC., | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

## MEMORANDUM

These are two related, but not consolidated, cases. As with the court's March 26, 2010 ruling on the cross-motions for summary judgment in these cases, it is in the interest of judicial economy to address the pending motions in these two cases in one opinion. In each case, pending before the court is a Motion for Reconsideration filed by the defendant Caterpillar, Inc. (*Winnett* Docket No. 475; *Kerns* Docket No. 266). These motions have been fully briefed. For the reasons discussed herein, Caterpillar's motion will be granted in *Winnett* but denied in *Kerns*.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The court has recounted the factual and procedural history of these cases numerous times – most recently in the March 26, 2010 Memorandum that ruled on the parties' cross-motions for summary judgment – and, therefore, some familiarity with the facts will be assumed. (*See Winnett* Docket No. 463.)

Again, in these class actions the plaintiffs claim that Caterpillar – as their (or their spouse's) former employer – breached its promise (embodied in collective bargaining agreements and related documents) to provide "lifetime cost-free retiree health care." (Docket No. 470 at 2.) Through a series of decisions from this court and the Sixth Circuit, the number of plaintiffs and claims have been whittled down and substantial conclusions regarding Caterpillar's liability have been reached.

Indeed, following the court's March 26, 2010 opinion, three groups of plaintiffs remained, all of whom, the court concluded, had established that Caterpillar had violated (or would violate) federal law in charging them premiums for their health care:

(1) in *Winnett*, the Caterpillar Logistics Services, or "CLS," subclass. These employees, who retired from Caterpillar between January 1, 1992 and March 16, 1998, provided distinct "warehousing and product distribution services to third parties" and, pursuant to a distinct "CLS" Agreement, retired under the extended terms of the 1988 CBA and related documents, which guaranteed retiree health care "without cost." (*Id.* at 2-3.)

(2) in *Winnett*, the surviving spouses of Caterpillar employees who retired between

2

January 1, 1992 and March 16, 1998. In the summary judgment Memorandum, the court concluded that, at the time of their spouses' retirement, this subclass acquired a vested right to "no cost," or premium-free, health coverage (Docket No. 463 at 16, 33); and

(3) in *Kerns*, the surviving spouses of Caterpillar employees who retired between March 16, 1998 and January 10, 2005. (*Id.* at 19.) Again, in the summary judgment Memorandum, the court concluded that, at the time of their spouses' retirement, this class acquired a vested right to "no cost," or premium-free, health coverage. (*Id.* at 40-41.)

Indeed, the court concluded the March 26, 2010 Memorandum as follows:

All liability issues between the parties (other than the UAW's counterclaims against Caterpillar) are resolved by this opinion.

The *Winnett* plaintiffs are entitled to judgment as a matter of law on their remaining ERISA and LMRA claims as to the CLS subclass and the "surviving spouse" subclass, with potential damages having been incurred as to both of those subclasses due to Caterpillar's charging of premiums (but only premiums) to those subclasses as described above. Caterpillar is entitled to summary judgment on the other remaining claims in *Winnett*, and the court, through the attached Order, will amend the preliminary injunction entered earlier to reflect this.

The *Kerns* plaintiffs are entitled to judgment as a matter of law on their remaining ERISA and LMRA claims, as the court finds that it was and would be improper for Caterpillar to charge premiums (but only premiums) to this class as described above, and potential damages have been incurred by this class to the extent that Caterpillar has charged premiums to certain members of this class, that is, those whose spouses died after the ratification of the 2004 Labor Agreement. Caterpillar is entitled to summary judgment on the other aspects of the plaintiffs' claims in *Kerns*. (*Id.* at 47-48.)

Still pending at the time of the court's March 26, 2010 Memorandum was the defendant's October 16, 2008 appeal of the court's Order granting the CLS subclass's Motion for Preliminary Injunction in *Winnett*. (Docket No. 310.) On June 22, 2010, while the parties were engaged in seemingly productive damages discovery following the court's March 26, 2010

3

opinion (*Winnett* Docket No. 469), the Sixth Circuit ruled on Caterpillar's appeal. (*Winnett* Docket No. 470.)

In that opinion, the Sixth Circuit concluded that the claims of the CLS subclass should be dismissed because they are barred by the statute of limitations. (*Id.* at 2.) It has been well-settled in this litigation that, if the plaintiffs had sufficient notice of their claims six years prior to the date of filing suit (*Winnett* March 28, 2006 and *Kerns* April 13, 2006), their claims are time-barred.

This court repeatedly rejected Caterpillar's arguments that the claims in these cases were barred by the six-year statute of limitations, most recently in the March 26, 2010 Memorandum. (*Winnett* Docket No. 463 at 25.) In ruling on the issue at the preliminary injunction stage in *Winnett*, the court focused on when health care for CLS retirees ceased to be "no cost," with an eye toward Caterpillar's threatened imposition of caps on the retiree healthcare premiums that it would pay. 579 F. Supp.2d at 1040. That is, while, in 1992, Caterpillar began raising the notion that caps on coverage might be imposed at some future time, Caterpillar's language was "indefinite and uncertain" until October 2004, when it started directly deducting health care premium charges from CLS retirees' pensions. *Id.*

As to the CLS subclass, while the court recognized that class members, as early as the 1998 CBA, had been subject to (and accepted) the imposition of a managed care Network and certain other medical costs, the court viewed these changes as "minor" and insufficient to "start the clock" on the plaintiff's claims that Caterpillar was breaching its promise – embodied in the 1988 CBA – to lifetime cost-free health care. (*Id.* at 1041; *see also Winnett* Docket No. 470 at

5.)  In ruling on the cross motions for summary judgment, the court viewed the statute of limitations issue – in both *Winnett* and *Kerns* – as largely resolved by the court's previous rulings and noted a lack of new evidence or authority suggesting that the court should depart from its settled conclusion on the statute of limitations issue.  (Docket No. 463 at 25, 37.)

The Sixth Circuit viewed the statute of limitations issue from a somewhat different perspective than this court.  The Sixth Circuit started from the basic premise that, "in the context of this contractual claim – the refusal to honor a promise of free, unalterable, lifetime healthcare benefits – the parties agree the clock starts when the breach becomes 'clear and unequivocal.'" (Docket No. 470 at 6 quoting *Morrison v. Marsh & McLennan Co.*, 439 F.3d 295, 302 (6th Cir. 2006)).  And, if the CLS retirees "discovered or reasonably should have discovered Caterpillar no longer was willing to provide free, unalterable, lifetime healthcare benefits under the 1988 CBA at least six years . . . before March 28, 200[6], the claim must be dismissed as time barred." (*Id.*)

The Sixth Circuit found that, by 1998, "when the UAW and Caterpillar reached a new labor agreement that altered the healthcare benefits to retirees and for the first time announced new costs for obtaining them, and Caterpillar applied the new agreement to the CLS retirees," the CLS subclass had at least constructive knowledge that Caterpillar was repudiating any promise – provided under the 1988 CBA – to provide free, lifetime health care coverage, and, therefore, the clock started running "at least by 1998," rendering the claims time barred.  (*Id.* at 7.)

By 1998, not only was the 1988 CBA no longer applied to the CLS subclass, but, the

appellate court found, Caterpillar "no longer honored the alleged promise of free, lifetime, unalterable healthcare benefits associated with the 1988 CBA." (*Id.*) Indeed, under the 1998 CBA, while the CLS subclass was still not directly charged premiums, Caterpillar (1) increased prescription drug co-pays, (2) placed limits on new dependants that could be added to a plan, (3) established the managed care Network, which only reimbursed 70 percent of expenses charged by non-network providers, and (4) added new limits to vision and dental care. (*Id.*)

The appellate court also found that, with the 1998 CBA, "Caterpillar announced two other significant changes: (1) it capped the amount it would contribute to each retiree's healthcare plan, and (2) it added a broader reservation-of-rights clause, giving the company an unfettered right 'to terminate the plan . . . subject to applicable collective bargaining agreements.'" (*Id.*) As to the caps, while the Sixth Circuit recognized that, under the 1998 agreements, the newly established VEBA Trust would "cover" the above-the-cap contributions for a time, the CLS subclass was – prior to 2000 – notified that the VEBA Trust would eventually be "depleted," as occurred in 2004. (*Id.* at 7-8.)

The court concluded that "all of these notices of the various 1998 changes – especially the [summary] notice provided by the [November 1999 Summary Plan Description (SPD)] . . . provided the 'clear repudiation' necessary for the subclass's claims to accrue." (*Id.* at 8.) That is, the summary notice of "managed care, increased prescription drug co-pays, a limit on the number of dependents eligible to be in a plan, new limits on vision and dental care, and a 'limit' on 'company contributions'" all clearly disclaimed any promise of free, lifetime, health-care benefits, more than six years prior to the filing of *Winnett*. (*Id.*)

6

Further, the Sixth Circuit reiterated that the claims accrued when Caterpillar "announced the changes, not when the retirees first felt the changes." (*Id.* at 9.) And, while "notice is the touchstone of accrual," the plaintiffs still felt the effects of the changes prior to March 28, 2000, in the "increased charges for drug prescription co-pays, deductibles, and other out-of-pocket expenses," as alleged in the *Winnett* Complaint and confirmed by the testimony of certain subclass members during the preliminary injunction hearing. (*Id.* at 9-10.)

The court "complet[ed] the picture," by noting that, " if a company announces new authority to terminate or modify healthcare benefits," the employee's union must "grieve the change at that point or be precluded from later claiming that benefits had vested." (*Id.* at 10.) Using this analogy, the court concluded, again, that the plaintiffs' claims accrued not when they felt the changes but when "the company notified the retirees of many changes – not just of an unfettered right to terminate healthcare benefits . . . but also of new co-pays, managed care, caps on company contributions to premiums, and changes to dental and vision benefits." (*Id.*)

The Sixth Circuit went on to reject the arguments advanced by the CLS subclass, namely that, until the VEBA Trust ran out and premiums were directly charged in 2004, the 1998 and 1999 notices of changes were too "indefinite and uncertain" for the CLS subclass to know of the alleged breach. (*Id.* at 11.) The Sixth Circuit found that the notices regarding the VEBA Trust left no doubt that, eventually, direct premium charges would be assessed against retirees and that the "other changes," that is, "managed care, increases in drug costs, changed eligibility criteria and new restrictions on adding dependants," left "even less doubt" that Caterpillar was repudiating any alleged promise of free, lifetime health care embodied in the 1988 CBA. (*Id.*)

7

Refuting that these "other changes" were "minor," the Sixth Circuit noted that the managed care Network "on its own marked a significant change from the health care the retirees enjoyed under the 1988 contract," imposing substantial costs if the retiree chose out-of-network care. (*Id.* at 12.) Acting as a "very real limitation on their benefit program," the court concluded that this change alone "should have put the subclass on notice that Caterpillar had altered their benefits." (*Id.* citing *Reese v. CNH Am. LLC*, 574 F.3d 315, 325 (6th Cir. 2009)). And, "once we add raised co-pays, limits on dental and vision care and new eligibility criteria to the mix, not to mention Caterpillar's unfettered right to cancel benefits at any time, it is difficult to shrug off the 1998 changes as irrelevant to the accrual question." (*Id.*)

The court concluded by (1) clarifying that the key issue here was accrual, not the vesting of benefits or other issues, (2) rejecting the plaintiffs' "ripeness" argument, because, by 1998, it was clear that the benefits were "no longer unalterable" in light of the Network and other changes, no longer free, and no longer necessarily for life, in light of the reservation-of-rights clause, and (3) rejecting the plaintiffs' argument that Caterpillar had asserted untenable, "inconsistent" positions throughout this litigation and that Caterpillar's 1998-1999 conduct should be considered an "anticipatory breach." (*Id.* at 13-14.)

Following the Sixth Circuit's opinion, Caterpillar moved for reconsideration of the March 26, 2010 Memorandum in *Winnett* and *Kerns*, maintaining that the Sixth Circuit's rationale as to the CLS subclass applies equally to the remaining surviving spouse classes in those cases.

## **ANALYSIS**

## I. Motion for Reconsideration Standard

The Court of Appeals for the Sixth Circuit has observed that the "Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders" but has provided that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). While district courts have "significant discretion" in deciding motions for reconsideration, "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 Fed. Appx. at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). The Sixth Circuit's decision, which directly bears upon arguments made by the parties in these cases, provides sufficient ground for these Motions to Reconsider.

## II. *Winnett*

There is no dispute that, in light of the Sixth Circuit's opinion, only the surviving spouse subclass has even arguably viable claims.[1]

---

[1] The parties agree that the claims of the CLS subclass must be dismissed in light of the Sixth Circuit's opinion, and the defendant argues that the previously dismissed claims of the "main class" should also be found to be time barred under the Sixth Circuit's decision. (Docket No. 476 at 8-9.) While the plaintiffs do not challenge this proposition, the claims of the "main class" have already been dismissed and, therefore, there is no basis for reconsideration. (Docket No. 490.) Moreover, the defendant, in both *Winnett* and *Kerns*, maintains that the Sixth Circuit's June 3, 2010 *Wood v. Detroit Diesel* decision, 607 F.3d 427, dictates reconsideration of the

9

The defendant argues that the surviving spouse subclass's claims should be dismissed because: (1) the surviving spouses, like the CLS subclass, seek relief under the 1988 CBA and (2) Caterpillar made the same repudiations of "any supposed promise to provide [free, lifetime] benefits under the 1988 contract" to the surviving spouse subclass as it did to the CLS subclass. (Docket No. 476 at 10.) Indeed, because the surviving spouses were dependents of non-CLS employees, they were subject to changes such as the Network and increased prescription drug co-pays in 1992, not 1998, strengthening the statute of limitations argument as to this subclass. (*Id.*) Indeed, while there is some dispute as to which Caterpillar employees and dependents received notice of what changes and when, there is no dispute that, in 1992, all plan participants received notice of the Network.[2] (*Id.*)

Moreover, Caterpillar argues, just as with the CLS subclass, "Caterpillar [] communicated these repudiations . . . in both 1998 (in the form of benefit summaries) and 1999 (through the issuance of a [] SPD that also included an 'unfettered right to terminate the plan')." (*Id.* at 11.) Therefore, the "Sixth Circuit's definitive ruling that these communications

---

merits of the remaining plaintiffs' claims. (*See Winnett* Docket No. 476 at 14-17.) As the court finds that the surviving spouse subclass's claims are time barred, it is not necessary to reach this argument here – although the court will address *Wood* below, in the *Kerns* discussion.

[2]Without an eye toward claim accrual, in the summary judgment Memorandum, the court made the factually accurate statement that the "surviving spouse subclass . . . retired under the 1992 unilateral implementation," that is, this subclass's spouses all retired during the seven-year period of labor unrest in which Caterpillar unilaterally imposed terms of its final contract offer. (Docket No. 465 at 5, 30.) The plaintiffs argue here that the court, having made this statement, should view claim accrual based upon when the promises made in the 1992 unilateral implementation were repudiated. (Docket No. 490 at 5.) The Sixth Circuit's opinion, however, makes it clear that the contractual theory of liability stated in the Complaint – that is, a breach of the promises made in the 1988 CBA – governs for claim accrual purposes.

repudiated any alleged promise to provide unalterable benefits under the 1988 contract must also govern this court's summary judgment ruling on the spouse subclass." (*Id.*)

In response, the plaintiffs argue that there are key distinctions between the surviving spouse subclass and the CLS subclass that the Sixth Circuit would not have considered in its narrowly focused opinion. (Docket No. 490 at 4.) Most notably, as discussed in the March 26, 2010 Memorandum, the relevant plan documents, from 1988 to 2005, stated that surviving spouses, specifically and distinct from others covered by the plan, would receive health insurance "for life without cost" upon the death of their retiree spouse. (*Id.* at 2-3.)

Indeed, the plaintiffs point out that the relevant plan documents, from 1988 until 2005 (including the 1999 SPD heavily relied upon by the Sixth Circuit), consistently discussed impending caps on "retiree" health benefits, but, just as consistently, stated that surviving spouses would receive health care "without cost" upon the death of the spouse.[3] (*Id.* at 5-7.) The plaintiffs also point to letters (discussed in the summary judgment Memorandum) to surviving spouses following the death of their spouse in which Caterpillar stated that health benefits would be "without cost." (*Id.* at 8.)

Moreover, the summary judgment record indicated that Caterpillar did not charge the VEBA Trust for premiums for surviving spouses – as it did for the CLS subclass, for instance –

---

[3]As discussed in the summary judgment Memorandum, the parties (in both cases) continue to dispute whether this "without cost" language remained in the plan documents "in error," and the defendant maintains that other language stating that caps would be imposed "per covered individual" dictate that surviving spouses were to be subject to the caps. (*See* Docket No. 476 at 11-12.) The court found in favor of the surviving spouse subclass on this issue in the summary judgment Memorandum, and there is no apparent reason to reconsider that conclusion now. (Docket No. 463 at 31-32.)

11

but rather directly paid the premiums for surviving spouses until 2005. (*Id.*) To the plaintiffs, "this confirms the fact that the surviving spouse benefit was never intended by Caterpillar to be limited by the premium cap imposed on retirees." (*Id.*) Therefore, "the claim asserted by the surviving spouse subclass for a vested, no-cost health insurance benefit did not accrue until December 2002 at the earliest," when Caterpillar notified them that they would be responsible for paying health care premiums once the VEBA Trust was exhausted. (*Id.* at 1-2.)

Moreover, the plaintiffs argue, because the Sixth Circuit's ruling was "principally based on the major changes announced by Caterpillar in 1998 and 1999 regarding the imposition of a cap on benefits and the introduction of the VEBA," the assorted other changes (the "shift to network, the managed care opinion, and additional costs") announced (at the latest) in 1998 and 1999 cannot be seen as triggering accrual for this subclass. (*Id.* at 17.)

That is, while recognizing that the subclass was subject to these changes, the plaintiffs maintain that "there is no indication" from the Sixth Circuit's opinion that these moves "alone would have been sufficient to put them on notice that [they] would be subject to above-cap premium costs," particularly because, as discussed in the summary judgment Memorandum, some costs had always been imposed on surviving spouses and retirees, even those who indisputably retired with "no cost" benefits under the 1988 CBA. (*Id.* at 17-19.)[4]

---

[4]The plaintiffs (both here and in *Kerns*) also argue that the "unfettered" reservation-of-rights clause was not notice of repudiation. (*Id.* at 13-17; *See also Kerns* Docket No. 276 at 6-7, 17-20.) This lengthy argument is largely premised on the Sixth Circuit's line of case law holding that "a reservation of rights clause cannot be imposed retroactively to take away vested benefits." (*Id.* citing *e.g. Sprague v. GM*, 133 F.3d 388, 400 (6th Cir. 1998)). Because, the plaintiffs argue, the rights of the surviving spouse subclass had vested before the reservation-of-rights clause was introduced (in the November 1999 SPD), the clause could not affect those

12

Under the logic of the Sixth Circuit decision, there is no substantive distinction between the position of the CLS subclass and the surviving spouse subclass, and, therefore, the claims of the surviving spouse subclass are time-barred. The plaintiffs' argument that the Sixth Circuit focused on the impending imposition of the caps and the VEBA Trust as being key accrual triggers simply misreads the opinion.

Over and over again, the Sixth Circuit deemed the assorted changes (the Network, increased drug costs, limits on dependants, increased dental and vision, etc.) announced in the 1998 CBA and further explained in the 1999 SPD as "major changes" to the plan benefits that should have alerted the CLS subclass that the promise of "free lifetime health care" under the 1988 CBA was repudiated. There is no dispute that all plan recipients – surviving spouses, dependents, etc. – were subject to these conditions and that these conditions were announced more than six years prior to the filing of this case. Additionally, the 1999 SPD contained the

---

rights, and, therefore, the clause "had no relevance to spouses of persons who had already retired, and so its inclusion could not possibly have put the surviving spouse subclass on notice of anything." (*Id.* at 13.) This argument misses the point of the Sixth Circuit opinion, which explored the record for conduct on Caterpillar's part indicating that it was not intending to abide by promises previously made. Clearly, the reservation-of-rights clause, from this perspective, is such evidence, no matter the Sixth Circuit's vesting rules. Additionally, the plaintiffs argue that the 1999 SPD contained additional language – not discussed in the Sixth Circuit opinion – further indicating that the reservation of rights was not truly "unfettered," but was "subject to the terms and conditions of the applicable documents." (*Id.* at 15-16.) The plaintiffs note that there were actually two 1999 SPDs – one that went to retirees covered by the Network and one that went to all other retirees – and that this later SPD (the "indemnity" SPD) contained this further limiting language. (*Id.*) The plaintiffs speculate that the Sixth Circuit may not have analyzed the "full record" on the issue, as it quoted only "limited portions" of the "network" SPD. (*Id.* at 16.) This court, however, cannot ignore the holding of the Sixth Circuit, which, as noted above, recognized that there was "subject to" language in the 1999 SPD but still concluded that, even in light of such language, the 1999 reservation of rights was unfettered and relevant for accrual purposes.

reservation-of-rights clause, which the Sixth Circuit concluded gave Caterpillar an "unfettered" right to terminate the plan. This notice was given to subclass members more than six years prior to the filing of this case as well. If these notifications were sufficient to start the clock for the CLS subclass, then they are sufficient to start the clock for the surviving spouse subclass as well.

From the perspective of the Sixth Circuit's opinion, the fact that Caterpillar repeatedly stated that surviving spouses were entitled to "without cost" health coverage is of little moment. Again, as explained in the Sixth Circuit's opinion, the plaintiffs' theory is that the defendant breached its promise – made in the 1988 CBA – to provide "no cost" health insurance. (Docket No. 470 at 3.) While Caterpillar repeated the promise in various plan documents, it was also clear, under the Sixth Circuit's reasoning, that the promise was broken more than six years prior to the suit being filed – specifically through the charges and costs imposed in the 1998 CBA and the 1999 SPD.

Simply, the same actions that the Sixth Circuit focused upon as triggering accrual for the CLS subclass affected the surviving spouse subclass, and, therefore, the claims of the surviving spouse subclass must be considered time-barred as well. Under the logic of that opinion, the surviving spouse subclass knew no later than 1999 that Caterpillar was no longer providing no cost, unalterable benefits, just as the CLS subclass did. As the surviving spouse subclass seeks these same benefits, their claims must be dismissed in light of the Sixth Circuit's opinion.

**III.** *Kerns*

As noted above, the class in *Kerns* consists of surviving spouses whose spouse retired from Caterpillar between March 16, 1998 and January 10, 2005. These plaintiffs claim their

right to unalterable, lifetime benefits under the 1998 CBA. (Docket No. 40 Ex. 1 at 6.)

The defendant argues that, despite these factual distinctions, the result compelled by the Sixth Circuit's opinion is the same. That is, "by 1998, and at the very latest by 1999 (when Caterpillar issued a new SPD)," the plaintiffs knew that Caterpillar was "not applying the 1998 contract in such a manner as to provide unalterable, cost-free surviving spouse benefits," in spite of the "no cost" language that remained in the SPD and other plan documents. (Docket No. 267 at 7.) That is, following the 1998 CBA, the plaintiffs (as dependents or surviving spouses) were subject to the Network, "with all of its associated co-pays and deductibles," increased co-pays for prescription drugs and new limits on vision and dental care, and, under the 1999 SPD, the "unfettered" reservation of rights. (*Id.* at 8-9.) Consistent with the Sixth Circuit opinion, the defendant argues, these changes marked a clear repudiation of any promise (contained elsewhere in the 1998 CBA) to provide "no cost" health care. (*Id.*)

In response, the *Kerns* plaintiffs make similar arguments to those advanced by the surviving spouse subclass in *Winnett*. (Docket No. 276 at 4, 14-15.) That is, they argue that the caps discussed in the 1998 plan documents apply only to "retirees" and surviving spouses are repeatedly distinguished as being entitled to "no cost" health benefits. (*Id.*) They point to numerous letters in the record from Caterpillar to surviving spouses, asserting that health care benefits would be "no cost," and to the fact that the VEBA Trust was only charged for retirees' premiums, not surviving spouse's premiums (issues not before the Sixth Circuit in its most recent opinion). (*Id.* at 7-10.) The plaintiffs maintain that Caterpillar's representations that their health benefits would be "no cost" were so strong that, when Caterpillar attempted to charge

15

premiums to this group in 2005, it (and the union) received a flood of complaints, and Caterpillar was forced to announce that it would "waive" premiums for surviving spouses whose spouse retired and died under the 1998 CBA. (*Id.* at 12-13.)

The plaintiffs also focus on the fact that they are suing under the 1998 CBA and not the 1988 CBA that the Sixth Circuit determined was the source of the plaintiffs' claims in *Winnett*. (*Id.* at 22.) Therefore, to the extent that the plaintiffs would be put on notice that the defendant was not providing "lifetime no cost health care benefits," such notice had to come after the 1998 CBA was instituted in March 1998. (*Id.* at 21.) And "the lifetime no cost" promise here must be viewed in the context of the limitations of the 1998 CBA. That is, "lifetime no cost" allowed for the associated charges that were contained in the 1998 CBA, including the Network, but it forbade premiums from being imposed on the *Kerns* plaintiffs – premiums that were not assessed until well within the filing window. (*Id.* at 22.)

While most of the plaintiffs' briefing is a re-assertion of the unsuccessful arguments discussed above in *Winnett*, this final point is persuasive. While the plaintiffs in *Kerns* also claim entitlement to "lifetime no cost" health care benefits, the Complaint explicitly seeks "vested lifetime retiree healthcare benefits to the members of the Class *as set forth in the 1998 CBA* at no cost . . ." and the Complaint requests relief in the form of an injunction "to maintain the level of retiree health care benefits . . . as required by the terms of the 1998 CBA." (Docket No. 40 Ex. 1 at 5.)

That is, unlike the plaintiffs in *Winnett* – who explicitly sought to maintain the level of benefits under the 1988 CBA (*Winnett* Docket No. 61 at 10), that is, no Network or other

16

assorted costs and restrictions, the plaintiffs in *Kerns* seek restoration of the benefits afforded by the 1998 CBA, which already included those limitations. Therefore, institution of programs such as the Network and increased co-pays under the 1998 CBA would not – unlike in *Winnett* – trigger accrual of the plaintiffs' claims here.

The only action by Caterpillar that arguably could have alerted the plaintiffs to the fact that the "no cost" benefits under the 1998 CBA might be restricted came in the 1999 SPD – specifically the reservation-of-rights clause therein. Even though the Sixth Circuit concluded that the 1999 SPD purported to give Caterpillar an "unfettered" right to terminate the benefits of the 1998 plan, the court concludes that the reservation of rights, standing alone, is not sufficient to trigger the accrual of the claims of the *Kerns* class.

That is, while the Sixth Circuit referred to the "unfettered" reservation of rights as a "significant" element supporting the defendant's argument in *Winnett*, that opinion makes clear that it was the confluence of many repudiations that resulted in the *Winnett* plaintiffs' claims accruing prior to 2000. The court repeatedly focused on the imposition of the Network under the 1998 CBA, the increased prescription drug costs, the restrictions on dependents, and the increased vision costs, along with the impending caps and the reservation-of-rights clause, as, taken together, sufficient to trigger pre-2000 claim accrual for the CLS subclass. (Docket No. 470 at 7.)

Not only was the reservation-of-rights clause only one of these many elements, it, unlike the other elements, did not give notice that Caterpillar was actually reducing the scope of benefits provided under the relevant collective bargain agreement. Rather, it merely indicated

17

that Caterpillar could, if it wanted to, take away benefits in the future.[5] Even viewing the reservation-of-rights clause as "unfettered" and "significant" to the claims accrual issue, it is too much to say that that clause – alone – should have put the plaintiffs on notice that Caterpillar was, in a "clear and unequivocal" manner, repudiating its promise to provide the benefits afforded by the 1998 CBA. Therefore, the defendants' Motion to Reconsider in *Kerns* will be denied.[6]

## CONCLUSION

The defendant's Motion to Reconsider in *Winnett* will be granted. It appears that the only claims still pending in that case are counterclaims asserted by former third-party counter-

---

[5]The plaintiffs claim that it is unclear how many of the *Kerns* class actually received the 1999 SPD, which contained the reservation-of-rights clause. (Docket No. 276 at 5.) The court's decision need not rest on this argument. Even if it were clear that all of the *Kerns* plaintiffs received the 1999 SPD prior to April 13, 2000, the court, again, does not view the reservation-of-rights clause therein as sufficient to trigger claim accrual.

[6]As noted above, the defendant argues that the Sixth Circuit's decision in *Wood* justifies reconsideration of the court's determination in the summary judgment Memorandum that the plaintiffs have a vested right to lifetime, premium-free health care under the 1998 CBA. (Docket No. 267 at 10-13.) In *Wood*, the Sixth Circuit determined that a CBA promise of "fully funded, lifetime health care benefits" must be read along with a series of "Cap Agreements" between the plaintiff's union and the employer, which limited the employer's yearly per-retiree expenditures. 607 F.3d at 428-31. Taking all of the agreements together, the "only coherent reading" was that the plaintiffs "are entitled to lifetime, capped health care benefits." *Id.* at 431. Caterpillar maintains that the court should perform a similar analysis here; that is, read the "per covered individual" language in the 1998 CBA as applying caps to all plan participants and blending that with the "for life without cost" language directly applicable to surviving spouses to find that the surviving spouses are entitled to "for life capped benefits." (Docket No. 267 at 13.) In the summary judgment Memorandum, the court – rejecting the "per covered individual" argument – found that the language in the 1998 CBA (and the multitude of subsequent documents) promising "for life without cost" benefits meant what it said and, applying other relevant Sixth Circuit law, concluded that the plaintiffs were entitled to premium-free health care for life. (Docket No. 262 at 36.) Unlike in *Wood*, there is no clearly conflicting language for the court to blend together, and, therefore, there is no basis for the court to reconsider its earlier ruling.

18

plaintiff UAW against Caterpillar, which have been severed for separate trial following the conclusion of *Winnett* and *Kerns*. (*Winnett* Docket No. 428.) In *Kerns*, the Motion to Reconsider will be denied. However, the status of any damages discovery prompted by the March 26, 2010 Memorandum is unclear. (*Winnett* Docket No. 474.) Therefore, in the accompanying Order, the court will set a telephone conference to discuss how to proceed.

    An appropriate order will enter.

                                        ALETA A. TRAUGER
                                        United States District Judge