# Exhibit A



282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

**C**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Sixth Circuit Rule 28. (Find CTA6 Rule 28)

United States Court of Appeals,
Sixth Circuit.
Lucille PITTMAN, by and through her next friend and Attorney-in-Fact Viola P. SYKES, Plaintiff,
v.
Karen FRANKLIN, L.P.N., Defendant-Appellant,
and
Kathy Wessels, R.N., et al., Defendant-Appellee.

No. 07-5376.
June 24, 2008.

**Background:** Patient brought medical malpractice action against licensed practical nurse (LPN) and registered nurse (RN), alleging that defendants' negligence resulted in amputation of her right arm. The United States District Court for the Western District of Tennessee, Bernice B. Donald, J., denied LPN's motion to amend her answer to allege comparative negligence and her motion to set aside entry of final judgment in an order granting summary judgment in favor of RN. LPN appealed.

**Holdings:** The Court of Appeals, Clay, Circuit Judge, held that:
(1) LPN properly raised on appeal her challenge to order denying her motion for reconsideration;
(2) LPN's challenge to non-final order denying her motion to amend was subsumed in final, appealable order granting summary judgment;
(3) District Court was within its discretion in denying LPN's motion to amend;
(4) defense counsel's inability to contact LPN to obtain authorization to amend her answer did not amount to excusable neglect warranting reconsideration of order denying her motion to amend;
(5) equitable considerations did not weigh in favor of

granting LPN's motion for reconsideration; and
(6) District Court was within its discretion in designating its order granting summary judgment in favor of RN as an appealable final judgment.

Affirmed.

West Headnotes

**[1] Federal Courts 170B 666**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(E) Proceedings for Transfer of Case
        170Bk665 Notice, Writ of Error or Citation
            170Bk666 k. Requisites and Sufficiency; Defects. Most Cited Cases

Following denial of her motion for reconsideration, defendant filed a notice of appeal designating order denying her motion for reconsideration of grant of summary judgment in favor of co-defendant as the order being appealed, and, thus, the issue was properly raised on appeal. F.R.A.P.Rule 3(c)(1)(B), 28 U.S.C.A.

**[2] Federal Courts 170B 666**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(E) Proceedings for Transfer of Case
        170Bk665 Notice, Writ of Error or Citation
            170Bk666 k. Requisites and Sufficiency; Defects. Most Cited Cases

Defendant preserved her challenge to District Court's non-final order denying her motion to amend her answer to allege comparative negligence on appeal, although she did not specifically reference it in her notice to appeal, where she gave proper notice of her intent to appeal from District Court's final order granting summary judgment to co-defendant, and generally non-final order denying her motion to amend was subsumed in final, appealable order granting summary judgment in favor of co-defendant. F.R.A.P.Rule 3(c)(1)(B), 28 U.S.C.A.; 28 U.S.C.A. § 1291.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

**[3] Federal Civil Procedure 170A** 🔑**845**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(E) Amendments
     170Ak844 Answer
      170Ak845 k. Time for Amendment.
Most Cited Cases

District Court was within its discretion in denying defendant's motion to amend her answer to plaintiff's second amended complaint in medical malpractice action to allege comparative negligence, where defendant waited more than 17 months after initiation of the action before filing a motion to amend her answer and six months after deadline to amend pleadings, she did not allege comparative fault despite having two opportunities to do so prior to her belated motion to amend, she offered no justification for her failure to timely amend, and her proposed amendment would prejudice plaintiff. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A** 🔑**928**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(I) Motions in General
     170Ak928 k. Determination. Most Cited Cases

Defense counsel's inability to contact defendant to obtain authorization to amend her answer to plaintiff's second amended complaint in medical malpractice action to allege comparative negligence did not amount to excusable neglect warranting reconsideration of District Court's order denying her motion to amend, where defendant was available at outset of litigation and was on notice of plaintiff's negligence theory as to all defendants, and she failed to allege comparative fault despite having two opportunities to do so prior to her belated motion to amend. Fed.Rules Civ.Proc.Rule 60(b)(1), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A** 🔑**928**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(I) Motions in General

     170Ak928 k. Determination. Most Cited Cases

Defendant's failure to develop evidence that could support a theory of comparative negligence in medical malpractice action did not amount to excusable neglect warranting reconsideration of District Court's order denying her motion to amend her answer to allege comparative negligence, where defendant had an opportunity to develop factual basis for comparative fault with two expert witnesses retained to aid in her defense, and yet failed to do so. Fed.Rules Civ.Proc.Rule 60(b)(1), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A** 🔑**928**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(I) Motions in General
     170Ak928 k. Determination. Most Cited Cases

Whether District Court allowed parties to amend scheduling order when presented with timely requests had no bearing on its denial of defendant's untimely request to amend her answer to allege comparative negligence in medical malpractice action, and, thus, equitable considerations did not weigh in favor of granting defendant's motion for reconsideration of order denying her motion to amend. Fed.Rules Civ.Proc.Rule 60(b), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A** 🔑**928**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(I) Motions in General
     170Ak928 k. Determination. Most Cited Cases

Addition of comparative fault defense to defendant's answer in medical malpractice action would have prejudiced plaintiff, weighing against reconsideration of District Court's order denying her motion to amend, where plaintiff's expert did not find that co-defendant was the actual or proximate cause of plaintiff's injury as required by Tennessee law, and because plaintiff could not identify co-defendant as proximate cause of her injury, she filed a notice of non-opposition to co-defendant's motion for summary

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

judgment. Fed.Rules Civ.Proc.Rule 60(b), 28 U.S.C.A.; West's T.C.A. § 29-26-115.

**[8] Federal Courts 170B ⬅️660.25**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(E) Proceedings for Transfer of Case
        170Bk660 Certification and Leave to Appeal
           170Bk660.25 k. Summary Judgments.
Most Cited Cases

    District Court was within its discretion in certifying its order granting summary judgment in favor of co-defendant as an appealable final judgment in medical malpractice case, although it did not recite its reasons for determining that entry of a final judgment was proper, where medical malpractice claim against co-defendant was separate and distinct from claims against remaining defendants, since grant of summary judgment was affirmed on appeal, there was no danger that the issue would be brought on appeal a second time, and there were no pending claims which could result in set-off against judgment sought to be made final. 28 U.S.C.A. § 1291; Fed.Rules Civ.Proc.Rule 54(b), 28 U.S.C.A.

**\*420** On Appeal from the United States District Court for the Western District of Tennessee.Thomas M. Pinckney, Jr., Howell & Fisher, Nashville, TN, for Defendant-Appellant.

Charles F. Morrow, Butler, Snow, O'Mara, Stevens & Cannada, Memphis, TN, for Defendant-Appellee.

BEFORE: MOORE and CLAY, Circuit Judges; and SCHWARZER, District Judge.[FN*]

      FN* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

CLAY, Circuit Judge.
  **\*\*1** Karen L. Franklin, L.P.N. and Kathy Wessels, R.N. are codefendants in a diversity suit initiated by Lucille Pittman alleging medical malpractice in violation of Tenn.Code Ann. § 29-26-115. Defendant Franklin appeals from orders entered by the United States District Court for the Western District of Tennessee denying her motion to amend her answer to allege comparative negligence and her motion to set aside the district court's entry of final judgment in an order granting summary judgment in favor of co-Defendant Wessels. For the reasons that follow, we **AFFIRM** the judgment of the district court.

**BACKGROUND**
**A. Factual Background**
    The district court described the factual background of this case as follows:

    Plaintiff[, Lucille Pittman,] a 59-year-old mentally retarded African-American female, is a former patient at Delta Medical Center ("Delta"). Defendant [Karen] Franklin is a licensed practical nurse (L.P.N.) who was responsible for providing nursing care and treatment to Plaintiff at Delta from January 7, 2004 (beginning at 7:00 p.m.), to January 8, 2004 (ending at 7:00 a.m.).

    Plaintiff was scheduled for gallbladder surgery and a liver biopsy on January 8, 2004. In preparation for surgery, Plaintiff was given one gram of IV Dilantin. Because the nurses had experienced problems with Plaintiff pulling IVs out of her arm, Nurse Sarah Griffin, R.N. ("Nurse Griffin"), asked Defendant Franklin to console and comfort Plaintiff so that Plaintiff would not pull at the IV access site while Nurse Griffin prepared **\*421** to administer the IV Dilantin. Nurse Griffin administered the IV Dilantin push at 9:50 p.m. on January 7, 2004.

    Extravasation [FN2] of the parenterally [FN3] administered Dilantin into surrounding tissue can result in severe tissue damage. Therefore, the nursing staff (including Defendant Franklin) is required to closely monitor a patient's IV site during and after the infusion of Dilantin to identify potential risks and prevent injury. The number of times Defendant Franklin checked on Plaintiff's IV site during the night of January 7 and the morning of January 8, along with the extent and sufficiency of Defendant Franklin's observations remains in dispute among the parties. Defendant Franklin testified that she did not perform any substantial assessment or detailed evaluation of Plaintiff's right arm because she saw 'no point' in doing so. Also, Defendant Franklin had very little light during the times that she touched Plaintiff's arm during the night, and she saw no need

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

to 'reassess [Plaintiff's] upper extremities' after Plaintiff went to bed.

> FN2. Extravasation is the passing of fluid (as in bodily fluids or liquid medications) out of a vessel and into the tissues. (J.A. at 190)

> FN3. To administer the Dilantin parenterally is to administer it in some way other than via the digestive tract, such as by intravenous or intramuscular injection. (J.A. at 190)

Defendant Franklin's care for Plaintiff ended when she went off duty on the morning of January 8, 2004. Nurse Kathy Wessels, R.N. ("Nurse Wessels"), took over Plaintiff's care on the morning of January 8, 2004 at approximately 7:00 a.m. Plaintiff complained of right arm pain on that morning. Nurse Wessels noted that Plaintiff's right arm was swollen and discolored. She further noted that it 'looked like cottage cheese,' and that the pulse in Plaintiff's right arm was 'very weak.'

**\*\*2** Plaintiff developed dry gangrene of the first through third digits of the right hand on or about January 13, 2004. She had to undergo a partial amputation of her right arm. Plaintiff's treating physician, Dr. Gregory Vandeven, determined that the Dilantin extravasated into the soft tissues of Plaintiff's right arm, causing vasospasms and ultimately, dry gangrene which necessitated the amputation of Plaintiff's right arm.

(J.A. at 189-91) (internal citations omitted)

**B. Procedural Background**
On December 10, 2004, Pittman, by and through her next friend and power of attorney Viola Sykes, filed a complaint alleging medical malpractice pursuant to Tenn.Code Ann. § 29-26-115 in the United States District Court for the Western District of Tennessee. The complaint named Griffin, Franklin, Wessels and Delta Medical Center, a Tennessee Corporation, as defendants. Pittman sought damages for pain and suffering, medical expenses, loss of capacity for enjoyment of life, and permanent disfigurement. In response, each defendant filed answers contesting liability. None of the defendants, however, asserted an affirmative defense of comparative fault. In an amended complaint, Pittman joined Dr. Mohamad Akbik, Mohamad Akbik, P.C., and Dr. Eugene

Vandeven as defendants.

On April 1, 2005, the district court entered a scheduling order establishing the deadline to file amended pleadings on June 30, 2005, expert disclosures on September 1, 2005 and supplemental disclosures on January 11, 2006. At various points, the district court amended the pre-trial scheduling**\*422** order upon timely motions from the parties.

After proceeding with initial discovery, Defendants Vandeven, Akbik and Wessels filed motions for summary judgment. On September 23, 2004, Pittman filed a notice of no opposition to Defendant Akbik's motion for summary judgment. As part of this notice, Pittman requested that the order granting summary judgment preclude the remaining Defendants from asserting comparative fault against Akbik. Inasmuch as Defendant Akbik's motion for summary judgment was uncontested, the district court granted Akbik's motion for summary judgment.

On December 2, 2005, two days prior to the deadline to amend pleadings, Pittman filed a motion to amend her complaint, which was granted by the district court. At some point during 2005, Franklin's counsel was unable to contact Franklin regarding developments in the litigation. Nevertheless, the litigation proceeded and on January 4, 2006, Pittman filed a second amended complaint which added a count of negligent hiring and supervision and alleged that Pittman was entitled to punitive damages. Once again, all Defendants filed answers to Pittman's second amended complaint which did not include affirmative defenses of comparative fault. Franklin did, however, move for summary judgment with respect to Pittman's claim for punitive damages, which was denied.<sup>FN4</sup>

> FN4. Pittman alleged that she was entitled to punitive damages in part because Franklin intentionally neglected her during her treatment at Delta. Pittman based this assertion on the testimony of Franklin's former roommate, Betty King ("King"). King testified that she recalled Franklin "coming in and out talking about having to fight with a woman and reinsert her IV while she was working at Delta." (J.A. at 191) King stated that Franklin "had a problem with blacks," that "she hated them," and that "[Franklin] is a real racist. It's

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 C.A.6 (Tenn.)))**

very risky to be black and have [Franklin] taking care of you." *(Id.)*

On March 28, 2006, Pittman filed a notice of no opposition to the motions for summary judgment filed by Defendants Vendeven and Wessels. Once again, Pittman requested that the order granting summary judgment preclude the remaining Defendants from asserting comparative fault against either Vendeven or Wessels. Although the district court granted Defendant Vendeven's motion for summary judgment, it dismissed Wessels' motion as moot.

**\*\*3** On March 31, 2006, Pittman filed disclosures of her expert witnesses, including an expert opinion alleging that Wessels and Franklin acted below the standard of care in their treatment of Pittman. Notwithstanding this assignment of fault, Wessels again moved for summary judgment on April 13, 2006. Pittman filed a motion of no opposition and sought to estop the remaining Defendants from asserting comparative fault with respect to Wessels.

On June 16, 2006, after the expiration of the deadline to amend pleadings, Franklin filed a motion to amend her answer to Pittman's second amended complaint to add an affirmative defense of comparative fault against other Defendants, including Wessels. Pittman and Wessels opposed the motion, which was ultimately denied by the district court. Thereafter, the district court granted Wessels' motion for summary judgment and designated it as a final judgment.

On August 9, 2006, Franklin filed a motion for reconsideration regarding both her motion to amend her answer and the district court's grant of summary judgment in favor of Wessels. Once again, the district court denied the motion. Franklin now timely appeals.

**\*423 DISCUSSION**
**I. Motion to Amend Answer to Second Amended Complaint**

**A. Preservation of the Issue**

[1] Franklin alleges that the district court improperly denied her motion to amend her answer made pursuant to Federal Rule of Civil Procedure 15(a). Wessels, however, challenges the propriety of this Court's consideration of the denial of Franklin's mo-

tion to amend her answer inasmuch as it was not explicitly referenced in Franklin's notice of appeal. Moreover, Wessels contends that the denial of Franklin's motion to amend is not a final order from which appeal is proper under 28 U.S.C. § 1291. For the reasons that follow, we find that Franklin's challenge is properly raised on appeal.

Following the denial of her motion for reconsideration, Franklin filed a notice of appeal. In particular, the notice of appeal stated:

> Notice is given, pursuant to Fed. R.App. P. 3 & 4, that defendant Karen Franklin, L.P.N., appeals to the United States Circuit Court for the Sixth Circuit from the Order entered by the trial court on August 1, 2006 granting co-Defendant Kathy Wessels' motion for summary judgment, which Order was designated as a final judgment. On March 1, 2007, the trial court denied appellant's motion to reconsider its Order of August 1, 2006. The August 1, 2006 Order (Exhibit A) from which appeal is taken and the March 1, 2007 Order (Exhibit B) are attached for the Court's convenience.

(J.A. at 204)

Pursuant to Federal Rule of Appellate Procedure 3(c), a notice of appeal must "designate the judgment, order or part thereof being appealed...." Fed. R.App. P. 3(c)(1)(B). In order to raise this issue on appeal, therefore, Franklin must provide this Court and the respective parties with proper notice. In the instant case, Franklin has provided such notice.

**\*\*4** [2] As an initial matter, we have long held "that an appeal of a final judgment draws into question all prior non-final rulings and orders." *Caudill v. Hollan,* 431 F.3d 900, 904 (6th Cir.2005) (quoting *McLaurin v. Fischer,* 768 F.2d 98, 101 (6th Cir.1985)). In *McLaurin v. Fischer,* this Court held that it had jurisdiction to hear a plaintiff's challenge to a district court's dismissal of state law claims and a grant of a motion for a directed verdict despite the fact that the notice of appeal referenced only an order "which embod[ied] the jury's verdict on the federal age discrimination claim." 768 F.2d at 102. The *McLaurin* court concluded that "by appealing from the district court's final order Dr. McLaurin effectively preserved for review all of the district court's non-final rulings and orders...." *Id.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

Similarly, in the case at bar, because Franklin gave proper notice of her intent to appeal from the district court's final order granting summary judgment to Wessels, she preserved the question of the denial of her motion to amend on appeal. Although the denial of a motion to amend an answer is generally a non-final order that is not immediately appealable, it is appealable after the entry of a final order which resolves all issues between the parties. Here, the order of final judgment entered by the district court was a final order which resolved all issues of liability or comparative fault as between Wessels and Franklin. Thus, the generally non-final order of the district court denying Franklin's motion to amend was subsumed in the final, appealable, order granting summary judgment in favor of Wessels. *See Caldwell v. Moore,* 968 F.2d 595, 598 (6th Cir.1992) (exercising jurisdiction over **\*424** challenge to district court's denial of a motion to amend a complaint filed under Rule 15 because a final judgment was rendered by the district court).

Citing *United States v. Universal Management Services,* 191 F.3d 750, 756 (6th Cir.1999), Wessels argues that the jurisdictional requirements of Fed. R.App. P. 3(c) may not be waived and thus this Court is precluded from reaching the merits of Franklin's motion to amend. *Universal,* however, is inapposite. In *Universal,* the defendants appealed from an order granting summary judgment to the government and denying their motion for summary judgment. *Id.* at 756. Before this Court, however, the defendants also briefed additional issues regarding the denial of their motion for reconsideration in which they argued they were entitled to a new trial because of the malfeasance of their counsel. *Id.* The *Universal* court noted that jurisdiction was improper because "[i]f an appellant ... chooses to designate specific determinations in his notice of appeal-rather than simply appealing from the entire judgment-only the specified issues may be raised on appeal." *Id.* (quoting *McLaurin,* 768 F.2d at 102); *see also NcNew v. People's Bank of Ewing,* 1993 WL 243772, at \*5 (6th Cir.1993) (unpublished). Nevertheless, the *Universal* court went on to address the merits of the issues raised in the motion for reconsideration. *Id.* at 757.

**\*\*5** Subsequent panels interpreting *Universal* have read its holding narrowly. In *Caudill v. Hollan,* we did not read *Universal* to mean that jurisdiction was improper whenever a party fails to mention a

particular issue. 431 F.3d at 906. Rather, the *Caudill* court noted that *Universal* "stands for a related but different proposition." *Id.* In interpreting *Universal,* the *Caudill* court held that

our rule is that we will entertain arguments on all objections and asserted errors prior to the final disposition of a case if a party indicates in its notice of appeal that it appeals either the final judgment or final order in the case. We will not, however, absent specific mention in the notice of appeal, entertain issues raised in post-judgment motions if the notice of appeal states only that the appeal is from the final order or the final judgment. To the extent the post-judgment motions relate to issues raised before judgment, the appellate court will deal with them anyway, as it did in *Universal.*

*Id.* Franklin's appeal falls squarely within the parameters identified by *Caudill.* As noted above, Franklin's notice of appeal indicated that she was appealing from the district court's final order granting summary judgment in favor of Wessels. Therefore, this Court may properly exercise jurisdiction over Franklin's challenge to the district court's denial of her motion to amend at least to the extent that the motion to amend concerned issues as between Franklin and Wessels.

**B. Standard of Review**

We review a district court's denial of a motion to amend pleadings made pursuant to Federal Rule of Civil Procedure 15(a) for abuse of discretion. *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir.2000). An abuse of discretion occurs when this Court is "left with the definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where the trial court improperly applies the law or uses an erroneous legal standard." *Paschal v. Flagstar Bank,* 295 F.3d 565, 576-77 (6th Cir.2002) (citations and internal quotation marks omitted).

**\*425 C. Analysis**

[3] Franklin alleges that the district court erred when it denied her Rule 15(a) motion to amend her answer to Pittman's second amended complaint. We disagree.

Under Federal Rule of Civil Procedure 15(a), "a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

party may amend its pleading once as a matter of course." Fed.R.Civ.P. 15(a). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). In determining whether to grant a motion to amend under Rule 15(a), this Court has held that a number of factors should be considered, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment...." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir.2001); *see also Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir.1998); *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir.1989). However, "[d]elay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade, 259 F.3d at 458-59.* "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Id.* (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir.1999)).

**\*\*6** The district court did not abuse its discretion in denying Franklin's motion to amend her answer to Pittman's second amended complaint. In the instant case, Franklin waited more than seventeen months after the initiation of the malpractice suit before filing a motion to amend her answer and six months after the deadline to amend pleadings. While "undue delay," is not necessarily dispositive regarding the district court's denial of the motion to amend, there are a number of additional factors that support the district court's refusal to exercise its discretion to grant Franklin's motion to amend.

Here, Franklin was on notice regarding Pittman's theory of negligence with respect to all defendants and yet Franklin did not allege an affirmative defense of comparative fault despite having two opportunities to do so. Thus, Franklin repeatedly failed "to cure deficiencies by previous amendments" two times prior to her belated motion to amend her answer.

Moreover, Franklin failed to meet the heightened burden placed on her motion to amend because it was sought at a late stage in the litigation. In fact, in her initial Rule 15(a) motion to the district court, Franklin

offered no justification for her failure to amend her answer to include a comparative fault defense at earlier stages in the litigation. Instead, Franklin simply stated why she sought the amendment and quoted language from Rule 15(a) which states that leave to amend "shall be freely given as justice requires." (J.A. at 146) (citing Fed.R.Civ.P. 15(a)).[FN5]

> FN5. Similarly, Franklin's total failure to offer any real justification for the delay in amending her answer not only fell far short of her heightened burden but also well below her obligation to demonstrate "good cause" for failing to comply with the district court's scheduling order as required by Rule 16 of the Federal Rules of Civil Procedure. Fed. R. Civ. P 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

Lastly, Franklin's motion to amend her answer to include a comparative fault defense,**\*426** if granted, would have prejudiced Pittman. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). During the course of the litigation, several Defendants filed motions for summary judgment. In each of the motions for summary judgment, Pittman filed notices of non-opposition and a request to preclude the remaining Defendants from asserting defenses of comparative fault. Pittman's non-opposition was predicated on the fact that none of the remaining defendants, including Franklin, had pleaded comparative fault in their answers to her complaint. Based on this non-opposition, the district court granted the motions for summary judgment. To allow Franklin to assert a comparative fault defense at this stage in the litigation would limit Pittman's ability to establish the full liability of Franklin and the remaining Defendants. Because of the number of factors that militated against the granting of the motion to amend, the district court did not abuse its discretion in denying Franklin's motion to amend her answer to allege a comparative fault defense.

## II. Denial of Motion for Reconsideration

### A. Preservation of the Issue

A ruling denying or granting a motion to reconsider made pursuant to Federal Rule of Civil Proce-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

dure 60(b) is appealable under Federal Rule of Appellate Procedure 4(a). *Mallory v. Eyrich,* 922 F.2d 1273, 1277 (6th Cir.1991) ("The law is settled that a ruling on a Rule 60(b) motion may be appealed under Fed. R.App. P. 4(a)."). Franklin has preserved the issue regarding the district court's denial of her motion for reconsideration-despite not specifically referencing it in her notice to appeal-because it is related to her prior motion to amend and her prior opposition to Wessels' summary judgment motion. *See Caudill,* 431 F.3d at 906 ("To the extent that the post-judgment motions relate to the issues raised before judgment, the appellate court will deal with them anyway....").

**B. Standard of Review**

**\*\*7** We review an order denying a motion for reconsideration under Federal Rule of Civil Procedure 60(b) for abuse of discretion. *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 569 (6th Cir.2008). However, when reviewing an order denying a motion for reconsideration, this Court must "not consider the merits of the underlying judgment." *Jinks v. AlliedSignal, Inc.,* 250 F.3d 381, 385 (6th Cir.2001). Consequently, "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Id.*

**C. Analysis**

[4] Franklin alleges that the district court abused its discretion when it denied her motion for reconsideration. After the district court denied her motion to amend her answer, Franklin filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 60(b). In her motion for reconsideration, Franklin argued that the motion should be granted because counsel was unable to contact Franklin to obtain authorization to amend the answer to include an allegation of comparative fault, the disclosure of Pittman's expert reports finding that Wessels acted negligently, and that "excusable neglect" prevented her from filing a timely motion to amend. The district court, however, disagreed and refused to reconsider its prior order denying Franklin's motion to amend. Because Franklin did not satisfy the requirements for reconsideration under **\*427** Rule 60(b), we find that the district court did not abuse its discretion in denying the motion for reconsideration.

Under Rule 60(b) of the Federal Rules of Civil Procedure, a court may relieve a party from a final judgment or order where the party has adequately alleged:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b). "As a prerequisite to relief under Rule 60(b), a party must establish that the facts of its case are within one of the enumerated reasons contained in Rule 60(b) that warrant relief from judgment." *Johnson v. Unknown Dellatifa,* 357 F.3d 539, 543 (6th Cir.2004) (quoting *Lewis v. Alexander,* 987 F.2d 392, 396 (6th Cir.1993)). "[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Ford Motor Co. v. Mustangs Unlimited, Inc.,* 487 F.3d 465, 468 (6th Cir.2007) (internal citations and quotations omitted).

We find that the district court did not abuse its discretion in denying Franklin's motion for reconsideration inasmuch as Franklin did not establish that reconsideration was warranted under any of Rule 60(b)'s enumerated grounds. As an initial matter, Franklin argues that defense counsel was unable to locate her to gain her input regarding the comparative fault defense after an October 2005 deposition. Franklin argues that defense counsel's inability to contact her was out of counsel's control, and therefore the failure to amend her answer in a more timely fashion constitutes "excusable neglect." This argument is without merit. As noted above, Franklin was available at the outset of the litigation and was on

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

notice of Pittman's negligence theory as to all Defendants. Consequently, Franklin could have included an affirmative defense of comparative fault on the two occasions that she amended her answer to Pittman's complaint.[FN6] Therefore, the district court did not abuse its discretion in rejecting Franklin's unavailability as a grounds for granting her Rule 60(b) motion.

> FN6. Moreover, as Wessels notes, the decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstances in which an attorney may act without consulting his or her client, if such a decision is in the best interest of the client and the lawyer is impliedly authorized to so act. See C.I.R. v. Banks, 543 U.S. 426, 436, 125 S.Ct. 826, 160 L.Ed.2d 859 (2005) (noting that an "attorney may make tactical decisions without consulting the client" when maintaining his or her obligation to "act solely on behalf of, and for the exclusive benefit of, the client-principal ..."); ABA Model Rules of Professional Conduct, Rule 1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation."). Indeed, it appears that Franklin's counsel was aware of this limited authority when, in her absence, he entered a number of pleadings related to both liability and damages in the malpractice action. Comparative fault should have been no different.

**\*\*8** [5] Franklin also contends that the district court should have granted her **\*428** Rule 60(b) motion because she did not have the information with which to form an adequate "comparative fault" defense prior to Pittman's expert witness disclosures. Putting aside the fact that Franklin was on notice regarding Pittman's intent to allege negligence with respect to all Defendants, Franklin's argument is undermined by the fact that she had an opportunity to develop the factual basis for comparative fault with the two expert witnesses retained to aid in her defense, and yet failed to do so. One of Franklin's experts, Dr. Marc Passman, stated in an affidavit that "Franklin fulfilled [her] duties using ordinary and reasonable care" and that the

injuries sustained by Pittman "can occur in the absence of negligence...." (J.A. at 135) Another expert, Dr. Donna L. Seger, submitted an affidavit expressing similar views. Franklin's failure to develop evidence that could support a theory of comparative negligence, despite opportunities to do so, does not fall within the scope of "excusable neglect" under Rule 60(b). [FN7]

> FN7. If Franklin's counsel determined, after initial consultation with experts, that a comparative fault defense was untenable only to change his mind upon disclosure of Pittman's expert reports, such a strategic or tactical determination is outside of Rule 60(b)'s purview. See McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc., 298 F.3d 586, 593 (6th Cir.2002) (finding that Rule 60(b) relief was unwarranted where party's failure to allege wrongful death claim stemmed from counsel's "strategic miscalculation" or "misinterpretation of the law").

[6] In pressing her claim, Franklin essentially argues that equitable considerations counsel in favor of reconsideration of her motion to amend under Rule 60(b). In particular, Franklin argues that because the district court "liberally" granted other parties extensions of time to file pleadings and other motions before the court, that her motion should have been granted. Franklin, however, does not suggest that the motions for extensions filed by other parties were untimely, as was her motion to amend her answer.[FN8] Thus, whether the district court allowed parties to amend the scheduling order when presented with timely requests has no bearing on the district court's denial of Franklin's untimely request to amend. Consequently, the equities do not weigh in favor of granting Franklin's Rule 60(b) motion as she contends.

> FN8. Franklin does suggest that Wessels filed an untimely motion to amend her answer to Pittman's second amended complaint "in February 2006, after the December 2005 deadline to amend all pleadings." (Franklin Br. at 21, 24). However, it appears that docket sheet incorrectly lists Wessels' answer to Pittman's second amended complaint as a second amended answer. As Wessels points out, the docket sheet indicates that Wessels filed only one answer to Pittman's second amended complaint and thus, no leave from

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

the court would have been required.

[7] Lastly, Franklin contends that her motion to reconsider should have been granted inasmuch as the addition of a comparative fault defense to her answer would not have prejudiced Pittman. Specifically, Franklin contends that Pittman would not have been prejudiced by her addition of a comparative fault defense presumably because Pittman knew of the findings of her expert witnesses faulting Wessels for her role in Pittman's injuries. We disagree. As an initial matter, Pittman's expert, while finding that Wessels acted below the standard of care, did not find that Wessels was the actual or proximate cause of Pittman's injury as required by Tennessee law. *See* Tenn.Code Ann. § 29-26-115. Because Pittman could not identify Wessels as the proximate cause of her injury, she filed a notice of non-opposition to Wessels' motion for summary judgment. **\*429** While Pittman did not challenge Wessels' motion for summary judgment, she did seek to estop the remaining Defendants from asserting comparative fault against Wessels if they had not yet done so. To allow Franklin to amend her answer to include such a defense after Pittman acted in reliance upon the fact that it would not be asserted, would certainly prejudice Pittman and thus, the district court did not abuse its discretion in denying Franklin's Rule 60(b) motion for reconsideration.

## III. Entry of Summary Judgment as Final Order

### A. Standard of Review

**\*\*9** In her last assignment of error, Franklin challenges the district court's designation of the summary judgment order in favor of Wessels as a final judgment.[FN9] Inasmuch as Franklin is not challenging the district court's determination regarding summary judgment, but merely its entry of final judgment, this Court reviews this claim of error for abuse of discretion. *Owens Corning v. National Union Fire Ins. Co.,* 257 F.3d 484, 491 (6th Cir.2001) ("[B]ased on [an order of final judgment's] connection to the trial judge's discretion in docket management, and its relationship to the factual details of the parties' conference, abuse of discretion appears to be the appropriate standard.").

> FN9. Franklin, in a footnote, asserts that summary judgment in favor of Wessels

should not have been granted because Pittman's expert, Dorothy Cooke, alleged that Wessels violated the standard of care in her treatment of Pittman. Franklin made a similar argument before the district court in her memorandum opposing summary judgment. However, the district court properly granted summary judgment in favor of Wessels inasmuch as Pittman offered no proof that Wessels' negligence was the proximate cause of her injuries. Under Tennessee law, proximate cause is a required element in a medical malpractice cause of action. *See* Tenn.Code Ann. § 29-26-115 ("In a malpractice action, the claimant shall have the burden of proving by evidence [that] ... [a]s a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred."). Here, Franklin, as the only party opposing Wessels' motion for summary judgment, did not point to any evidence establishing that Wessels was the proximate cause of Pittman's injuries. Thus, the district court properly granted summary judgment in favor of Wessels.

### B. Analysis

[8] Franklin challenges the district court's entry of summary judgment in favor of Wessels as a final judgment. Franklin contends that the district court's entry of a final judgment constituted an abuse of discretion because the district court did not recite its reasons for determining that the entry of a final judgment was proper. Franklin alleges that, on the contrary, there were reasons for the entry of summary judgment not to become a final order, particularly her efforts to depose one of Pittman's expert witnesses to develop a comparative fault defense against Wessels. Although we agree that the district court should have set forth its rationale for determining that entry of a final judgment was appropriate, we nevertheless find that the circumstances before the district court warranted the entry of the final judgment.

Under 28 U.S.C. § 1291, this Court has jurisdiction to hear appeals of "all final decisions" rendered by district courts. *Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58, 60 (6th Cir.1986). Federal Rule of Civil Procedure 54(b) [FN10] allows a district **\*430** court to enter a final judgment "on one or more claims, or as to

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

one or more parties, in a multi-claim/multi-party action." *Id.* "Rule 54(b) was enacted as 'a response to the need created by the liberal joinder provisions of the Federal Rules of Civil Procedure to revise what should be treated as a judicial unit for purposes of appellate jurisdiction.' " *Akers v. Alvey,* 338 F.3d 491, 495 (6th Cir.2003) (quoting *Corrosioneering, Inc. v. Thyssen Envtl. Sys.,* 807 F.2d 1279, 1282 (6th Cir.1986)). "The rule attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of parties." *Solomon, 782 F.2d at 60.*

FN10. Federal Rule of Civil Procedure 54(b) provides:

(b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief-whether as a claim, counterclaim, crossclaim, or third-party claim-or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed.R.Civ.P. 54(b).

This Court "has previously indicated that in order to avoid a finding of abuse of discretion in the certification of an issue for appeal pursuant to Rule 54(b), the district court should do more than just recite the Rule 54(b) formula of 'no just reason for delay.' " *Akers,* 338 F.3d at 495 (internal quotations omitted). In *Corrosioneering, Inc. v. Thyssen Envtl. Sys.,* this Court established a number of factors that should be considered by a district court when deciding whether to designate an order a final judgment:

**10** (1) the relationship between the adjudicated claim and the unadjudicated claims; (2) the possi-

bility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending on the factors of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

807 F.2d at 1283.

In the instant case, the district court granted Wessels' motion for summary judgment based on the "absence of opposition to the motion by Plaintiff, and the entire record in this case...." (J.A. at 162) The motion for summary judgment was granted over Franklin's opposition. The district court reached this conclusion, in part, because Franklin had no basis for opposing the motion inasmuch as the district court previously determined that she could not assert a comparative fault defense against Wessels. Without discussion, the district court designated the grant of summary judgment "as [a] final judgment, there being no reason for delay." (J.A. at 163)

In entering the order granting summary judgment in favor of Wessels as a final judgment, the district court did little "more than just recite the Rule 54(b) formula of 'no just reason for delay.' " *Akers,* 338 F.3d at 495. Although such a terse recitation of the statutory language does not satisfy the district court's obligation to set forth a reasoned basis for entry of a final judgment, we believe that judicial economy would be best served by examining the considerations regarding the applicability**431 of a final judgment to Wessels' motion for summary judgment rather than remanding for further action by the district court.

Applying the *Corrosioneering* factors, we find that the order granting summary judgment in favor of Wessels was properly designated a final judgment. First, the medical malpractice claim brought against Wessels is separate and distinct from the claims against remaining defendants such as Franklin and Griffin, particularly since Franklin was denied the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)))**

opportunity to allege a comparative fault defense. Second, since we affirm the district court's grant of summary judgment and denial of Franklin's motion to amend her answer, there is no danger that this issue will be brought before this Court a second time. Third, because the district court denied Franklin's motion to amend her answer to assert an affirmative defense of comparative fault against Wessels, there are no pending claims "which could result in set-off against the judgment sought to be made final." *Corrosioneering,* 807 F.2d at 1283. Lastly, additional factors such as judicial economy and finality counsel in favor of designating the order granting summary judgment as a final judgment inasmuch as it releases Wessels from suit and allows Pittman to move forward with the claims against the remaining defendants. Thus, we affirm the final judgment designation of the district court.

### CONCLUSION

**\*\*11** For the reasons described above, we **AFFIRM** the judgment of the district court.

C.A.6 (Tenn.),2008.
Pittman ex rel. Sykes v. Franklin
282 Fed.Appx. 418, 2008 WL 2521222 (C.A.6 (Tenn.)), 70 Fed.R.Serv.3d 1427

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2010 WL 1417935 (M.D.Tenn.)
**(Cite as: 2010 WL 1417935 (M.D.Tenn.))**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff
and not assigned editorial enhancements.**

United States District Court,
M.D. Tennessee,
Nashville Division.
Bruce K. SIDDLE and Sandra K. Siddle, individually
and as trustees of the Bruce K. Siddle and Sandra K.
Siddle trusts, dated July 16, 2003, and PPCT Man-
agement Systems, Inc., Plaintiffs,
v.
Doctor R. CRANTS, Jr., Doctor R. Crants, III, Linda
Cooper, George V. Crawford, III, Lee F. Booth, and
Roy W. Oaks, Defendants.

No. 3:09-0175.
April 7, 2010.

Bruce A. Carr, Rex Carr, Rex Carr Law Firm, LLC,
East St. Louis, IL, Mary Ann Parker, Nashville, TN,
for Plaintiffs.

James N. Bowen, Steven Allen Riley, Riley, Warnock
& Jacobson, Julie Murphy Burnstein, Leader, Bulso &
Nolan, PLC, James Henry Drescher, Drescher &
Sharp, P.C., Nashville, TN, Eric P. Haas, Kenneth N.
Hickox, Jr., Michael S. Gardner, William A. Brewer,
III, William F. Large, Bickel & Brewer, Dallas, TX,
Edwin E. Wallis, III, Richard Glassman, Robert A.
Cox, Tim Edwards, Glassman, Edwards, Wade &
Wyatt, P.C., Memphis, TN, Johannes S. Kingma, John
Colquitt Rogers, Carlock, Copeland & Stair, LLP,
Atlanta, GA, John A. Day, Day & Blair, P.C.,
Brentwood, TN, Michael P. Downey, Hinshaw &
Culbertson, St. Louis, MO, for Defendants.

Lee F. Booth, Greensboro, NC, pro se.

### MEMORANDUM AND ORDER
ALETA A. TRAUGER, District Judge.

**\*1** Pending before the court is the plaintiffs'
Conditional Rule 54(b) Motion to Certify January 25,
2010 Order as Final and Appealable (Docket No.
301).[FN1] The plaintiffs' motion will be denied.

FN1. As discussed herein, other, potentially
dispositive, motions are also pending but
have not yet been fully briefed.

On January 25, 2010, this court entered an Order
granting the summary judgment motions of Doctor R.
Crants, Jr. and Doctor R. Crants, III ("the Crants de-
fendants") finding, as explained in much further detail
in the Memorandum that accompanied the Order, that
the plaintiffs' claims against the Crants defendants
failed as a matter of law due to a pair of broad release
agreements. (Docket Nos. 285 and 286.) On January
26, 2010, the court ordered this matter stayed until at
least March 1, 2010, to permit the parties in this
complicated litigation an opportunity to confer as to
how to proceed in light of the court's ruling. (Docket
No. 288.)

Without entirely lifting the stay, since that time,
the court has permitted the plaintiffs to file the pend-
ing Motion to Certify. (Docket No. 300.) The court
has also allowed the remaining defendants (Cooper,
Crawford, Booth, and Oaks) an opportunity to file
dispositive motions, as these defendants claim that,
because of the nature of the release agreements, the
court's January 25, 2010 ruling as to the Crants de-
fendants dictates that they are entitled to judgment as a
matter of law as well. (Id.) The Motion to Certify has
been fully briefed and each of the four remaining
defendants has filed a dispositive motion on the
grounds of release. (Docket Nos. 304-306, 310.) Un-
der the current briefing schedule, these dispositive
motions will be fully briefed by May 17, 2010.
(Docket No. 300.)

In the Motion to Certify, the plaintiffs request,
under Federal Rule of Civil Procedure 54(b), that the
court enter a "final judgment" as to the Crants de-
fendants and then stay this case (and a related case)
pending the appeal of that final judgment to the Sixth
Circuit. (Docket No. 301 at 1.) The plaintiffs state that
their motion is conditional on the "court certifying the
Order as ready for immediate appeal," the continued
stay, and the "Court of Appeals accepting the Plain-
tiffs' interlocutory appeal." (Id.) In the remainder of
their brief motion, the plaintiffs challenge the court's
summary judgment ruling as to the Crants defendants,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1417935 (M.D.Tenn.)
**(Cite as: 2010 WL 1417935 (M.D.Tenn.))**

arguing that issues of fact rendered summary judgment improper under Sixth Circuit law. (*Id.* at 2-3.) That is, the plaintiffs provide no authority for entering a final judgment under Rule 54(b).

The Crants defendants, Oaks, and Crawford have each responded timely in opposition to the plaintiffs' Motion to Certify. (*See* Docket Nos. 307-309, 314.) Each defendant argues that Rule 54(b) counsels against entry of a final judgment in this instance, and the defendants are clearly correct.

Rule 54(b) states that, "[w]hen an action presents more than one claim for relief ... or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if the court expressly determines that there is no just reason for delay.* Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b) (emphasis added). The Sixth Circuit has concluded that the entry of a final judgment under Rule 54(b) is appropriate only in the "infrequent harsh case" where doing so is necessary "as an instrument for the improved administration of justice." *Corrosioneering, Inc. v. Thyssen Environmental Sys., Inc.,* 807 F.2d 1279, 1282 (6th Cir.1986)* (internal quotation omitted).

**\*2** The Sixth Circuit has also articulated a non-exhaustive list of factors for the district court to consider in evaluating a Rule 54(b) motion:

(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) *the possibility that the reviewing court might be obliged to consider the same issue a second time;* (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Lowery v. Fed. Express Corp.,* 426 F.3d 817,

821-22 (6th Cir.2005) (emphasis added). Here, as the defendants point out, the relevant factors point against certifying the January 25, 2010 Order as a final, immediately appealable judgment. As Oaks states, "the[ ] [*Lowery* ] factors weigh against Plaintiffs, primarily because the remaining motions are identical to the ones on which the Court has already ruled, and a Rule 54(b) certification will therefore almost certainly obligate the Sixth Circuit to consider the release defense at least twice (or more)." (Docket No. 308 at 3.) That is, because Oaks, Cooper, Crawford and Booth move for summary judgment on the same grounds as the Crants defendants, it would be inefficient and not in the interests of judicial economy to have an appeal of the January 25, 2010 Order proceed to the Sixth Circuit while these other defendants' motions, raising the same issues, are pending.

Clearly, with the additional round of summary judgment briefing on the release agreements set to be concluded by May 17, 2010, the interests of judicial economy and the desire to avoid piecemeal litigation dictate that the best course is for the remaining parties to finish briefing the summary judgment motions and for the court to resolve those motions. As Crawford cogently summarizes, "[t]here is simply no need to certify the January 25, 2010 ruling for immediate appeal when the Court is about to consider exactly the same issue in several additional motions for summary judgment and/or motions to dismiss." (Docket No. 307 at 4.) Consistent with all of this, the plaintiffs' Conditional Rule 54(b) Motion to Certify January 25, 2010 Order as Final and Appealable (Docket No. 301) is **DENIED.**[FN2]

> [FN2.] As a housekeeping matter, the plaintiffs' Motion for Relief From Stay (Docket No. 292), which was filed for the sole purpose of allowing the plaintiffs to file the Motion to Certify, was essentially granted by the court's March 22, 2010 Order (Docket No. 300) and should no longer be considered pending.

It is so Ordered.

M.D.Tenn.,2010.
Siddle v. Crants
Not Reported in F.Supp.2d, 2010 WL 1417935 (M.D.Tenn.)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1417935 (M.D.Tenn.)
**(Cite as: 2010 WL 1417935 (M.D.Tenn.))**

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2007 WL 987318 (N.D.Ohio)
**(Cite as: 2007 WL 987318 (N.D.Ohio))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Ohio,
Eastern Division.
ELLIOTT COMPANY, Plaintiff,
v.
LIBERTY MUTUAL INSURANCE COMPANY,
Defendant/Third Party Plaintiff,
v.
United Technologies Corporation, et al., Third Party
Defendants.

No. 1:05 CV 1387.
April 2, 2007.

Michael H. Ginsberg, Laura A. Meaden, Jones Day,
Pittsburgh, PA, Erin L. Dickinson, Mark B. Carson,
Paula Gallito Shakelton, Jones Day, Cleveland, OH,
for Plaintiff.

Brad A. Rimmel, Susan Squire Box, Roetzel & An-
dress, Akron, OH, for Defendant/Third Party Plaintiff.

John C. Sullivan, Post & Schell, Philadelphia, PA.

William H. Falin, Moscarino & Treu, Cleveland, OH,
Carolyn M. Branthoover, Julie S. Greenberg, Kirkpa-
trick & LockhartNicholson Graham, Pittsburgh, PA,
for Third Party Defendants.

*Memorandum Opinion and Order*
PATRICIA A. GAUGHAN, United States District
Judge.
### INTRODUCTION
**\*1** Currently before the Court is Defendant/Third
Party Plaintiff Liberty Mutual Insurance Company's
Motion for Reconsideration Under Rule 59 of the
Federal Rules of Civil Procedure or, in the Alternative,
to Direct the Entry of a Final Judgment Pursuant to
Rule 54(b) or to Amend the January 30, 2007 Order
Pursuant to 28 U.S .C. § 1292(b). (Doc. 84). Liberty
Mutual Insurance Company ("Liberty") seeks recon-
sideration of the Court's January 30, 2007 decision
that United Technologies Corporation and related
companies (collectively "UTC") are not required to

indemnify Liberty under certain insurance policies
referred to as the "Carrier Policies." For the following
reasons, the Court DENIES the motions.

### DISCUSSION
Liberty asks the Court to reconsider its January 30
Opinion and Order (the "Order"). "[S]uch motions, if
served within ten days of entry of judgment, are con-
sidered motions to alter or amend judgments pursuant
to ... Rule 59(e)." *Stubblefield v. Skelton,* unreported,
117 F.3d 1421 (6th Cir. July 10, 1997) (citing *Huff v.
Metropolitan Life Ins. Co.,* 675 F.2d 119, 122 (6th
Cir.1982)). "Generally, there are three major situa-
tions which justify a court reconsidering one of its
orders: 1) to accommodate an intervening change in
controlling law; 2) to account for new evidence not
available at trial; or 3) to correct a clear error of law or
to prevent a manifest injustice." *Hancor, Inc. v. Inter
American Builders Agencies,* 1998 WL 239231
(N.D.Ohio March 19, 1998), *citing In re Continental
Holdings, Inc.,* 170 B.R. 919, 939 (Bankr.N.D.Ohio
1994). Liberty relies on the third basis, that the Court
made a clear error of law and its decision has resulted
in manifest injustice.

The Court will assume familiarity with the Order,
wherein the Court discussed a 1994 Settlement
Agreement between the "UTC Companies" [FN1] and
Liberty in some detail. That Agreement is relevant to
this lawsuit because plaintiff the Elliott Company
("Elliott"), a former UTC subsidiary, has sued Liberty
seeking coverage under the Carrier Policies. Liberty
claims that Paragraph 12 of the Agreement requires
UTC to indemnify Liberty as to these claims. The
relevant language of Paragraph 12 states the follow-
ing:

> FN1. This was a defined term in the Agree-
> ment. Because the Elliott Company is neither
> a UTC Company under the Agreement nor
> within the UTC group that is a third party
> defendant in this case, the Court may refer to
> the UTC Companies as UTC, recognizing
> that any differences in the entities comprising
> the two groups of entities is not relevant to
> this motion.

[T]he UTC Companies shall defend and indemnify

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 987318 (N.D.Ohio)
**(Cite as: 2007 WL 987318 (N.D.Ohio))**

Liberty with respect to any action against Liberty by former subsidiaries of the UTC Companies alleging that Liberty should provide coverage that, absent this Agreement, may be owed to them solely under one or more of the Subject Insurance Policies for Environmental Claims.
(¶ 12). The Court held that Paragraph 12 did not apply to Elliott's claims under the Carrier Policies, because such coverage was not "coverage that, absent this Agreement, may be owed to [Elliott, the former subsidiary,] solely under one or more of the Subject Insurance Policies for Environmental Claims."

Liberty argues at length that the Court's reading of Paragraph 12 runs afoul of the contract principle that the same words which concern the same subject matter are presumed to have the same meaning. Liberty points to Paragraph 11 (regarding indemnity in actions by other insurers) of the Agreement, which reads in relevant part as follows:

**\*2** The UTC Companies shall defend and indemnify Liberty with respect to any Action ... by any other insurers of the UTC Companies ... against Liberty alleging that Liberty should provide coverage that, absent this Agreement, allegedly may be owed to the UTC Companies under the Subject Insurance Policies for Environmental Claims.

(¶ 11).

Liberty notes that both Paragraphs include the same language that Liberty "should provide coverage that, absent this Agreement, ... may be owed ... under ... [one or more of] [FN2] the Subject Insurance Policies for Environmental Claims." It argues that the Court erred by finding that Paragraphs 11 and 12 had a different scope in light of this identical language. The Court does not disagree that this limited excerpt from the two paragraphs should have and in fact does have the same meaning. The indemnity obligation does not apply under either paragraph unless the underlying claim is for an Environmental Claim under one or more of the Subject Insurance Policies. The problem with Liberty's argument is that it ignores other crucial differences between the two paragraphs that further limit the scope of UTC's indemnity obligation. As the Court previously explained, "when the two provisions are compared side by side it becomes apparent that the 'coverage' that would exist 'absent this Agreement' is

with respect to different entities:

FN2. The parties did not discuss the "one or more of" language that is present in Paragraph 12 but not Paragraph 11 in the original motions. If anything, this language would appear to support the position that the inclusion of the limiting term Subject Insurance Policies does not require the indemnity obligation of Paragraph 12 to reach all Environmental Claims under all Subject Insurance Policies.

Paragraph 11: The UTC Companies shall defend and indemnify Liberty with

respect to any Action ... by any other insurers of the UTC Companies ... against Liberty alleging that Liberty should provide *coverage that,* absent this Agreement, *allegedly may be owed to the UTC Companies* under the Subject Insurance Policies for Environmental Claims.

Paragraph 12:[T]he UTC Companies shall defend and indemnify Liberty with

respect to any Action against Liberty *by former subsidiaries of the UTC Companies* alleging that Liberty should provide *coverage that,* absent this Agreement, *may be owed to them* under one or more of the Subject Insurance Policies for Environmental Claims."

(Doc. 82) (emphasis in opinion).

The italicized and underlined language from the Court's earlier opinion is the same language Liberty has omitted from its "same meaning rule" analysis. That language has the effect of providing a more limited indemnity obligation under Paragraph 12, since the Agreement had a much greater impact on coverage that may be owed to UTC (the Agreement signatory) as opposed to its former subsidiaries such as Elliott. At the end of the day, Liberty has merely found another way to restate its original argument, rejected by the Court, that the inclusion of the defined term "Subject Insurance Policies" requires that the indemnity obligation reach all Environmental Claim under one of those policies. If the parties had written their contract as Liberty has modified it, the Court might agree.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 987318 (N.D.Ohio)
**(Cite as: 2007 WL 987318 (N.D.Ohio))**

However, the parties chose to insert other limiting language in Paragraphs 11 and 12 which the Court cannot ignore.

**\*3** Liberty makes a number of other arguments which the Court will address in turn. First, Liberty points out that both parties advocated a position that Paragraphs 11 and 12 had the same scope. It notes that contracts should be construed in a manner that is consistent with the parties' intent. However, the intent of the parties at the time of contracting is determined from the unambiguous language of the contract, not the arguments of the parties' lawyers 13 years after the contract was signed. It is often the case in the adversary process that litigants will advocate far-reaching positions while the answer lies somewhere between. Such is the case here. Liberty advocated that both Paragraphs have an extremely broad scope while UTC sought to narrow both paragraphs. The Court reached a different conclusion based on the unambiguous language of the Agreement.

Liberty also argues that the Court improperly focused on prejudice to other parties in interpreting Paragraphs 11 and 12. It notes that in Paragraph 17 the parties to the Agreement "specifically disavow[ed] any intention to create rights in third parties under or in relation to this Agreement." Liberty claims that the indemnity provisions were intended to protect Liberty Mutual, not third parties to the contract. However, the Court's ruling did not create any rights in third parties. Instead, it recognized that the Agreement potentially prejudiced the rights of third parties and that those third parties might then wish to sue Liberty. The Court's discussion of the reasons why third parties might wish to sue Liberty, and hence the reason the parties might have included indemnity provisions in the Agreement, was not akin to creating right in third parties.

Liberty also faults the Court's interpretation of Paragraph 13, relating to claims by former subsidiaries for "Pollution Claims" (a subset of "Environmental Claims") under "the 1985-86 Policy" (one of the "Subject Insurance Policies"). The Court noted that this obligation would be redundant if Paragraph 12 covered all Environmental Claims under all Subject Insurance Policies. Liberty argues generally that the 1985-86 Policy received separate treatment elsewhere in the Agreement and that the specific reference to Pollution Claims in Paragraph 13 was meant to "sub-

tract from" the expansive coverage it believes was afforded under Paragraph 12. However, the simple fact is that Paragraph 12, as Liberty wishes it to be interpreted, would cover all Environmental Claims under the 1985-86 Policy, rendering Paragraph 13 superfluous.[FN3] In addition, Paragraph 13 uses language that creates an indemnity obligation. Liberty's "subtraction" argument is without any basis in the text.

> FN3. In this regard, it is notable that the 1985-86 policy did not receive separate treatment with respect to indemnity for claims by other insureds under Paragraph 11.

Finally, Liberty argues that the Court erred by relying on the cost-sharing provisions of Paragraphs 12 and 14. However, the Court did not rely on those provisions. It merely rejected Liberty's arguments that those provisions supported its interpretation of Paragraph 12.

**\*4** Accordingly, the Court denies Liberty's motion for reconsideration. Liberty moves in the alternative for the Court to direct the entry of final judgment as to Liberty's indemnification claims under Rule 54(b):

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed.R.Civ.P. 54(b).

Rule 54(b) certification is reserved for the "infrequent harsh cases." *Gen. Acquisition, Inc. v. Gencor, Inc.,* 23 F.3d 1022, 1027 (6th Cir.1994); *Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58, 62 (6th Cir.1986). Rule 54(b) certification involves a two-step inquiry. First, the Court's decision must dispose "of one or more but fewer than all of the claims or parties in a multi-claim/multi-party action." *Gencor,* 23 F.3d at 1027. The parties do not dispute, and the Court agrees, that this factor is met. The Order resolved Liberty's indemnity claim against UTC. The second

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 987318 (N.D.Ohio)
**(Cite as: 2007 WL 987318 (N.D.Ohio))**

step for Rule 54(b) certification requires the Court to find that there is no just reason to delay appellate review. *Id.* The following nonexhaustive list of factors aids the Court's decision:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Id.* at 1030 (quoting *Corrosioneering, Inc. v. The Continental Ins. Co., 807 F.2d 1279, 1283 (6th Cir.1986); see also Lowery v. Fed. Express Co., 426 F.3d 817, 822 (6th Cir.2005).*

The Court finds that the claims Liberty seeks to appeal are closely related to the claims that are set for trial on June 5, 2007, less than three months from now. *See Lowery, 426 F.3d at 822* (explaining that "the interrelationship of the claims themselves weighs heavily against certification"). Elliott seeks insurance coverage from Liberty for certain asbestos-related claims. Liberty has sued UTC for indemnity should Elliott succeed on its claims. Thus, there is a possibility that the need for review may be mooted by future developments.

In *Corrosioneering,* the Sixth Circuit vacated a district court's 54(b) certification on a similar indemnity/coverage situation:

> [J]uridical concerns counsel against the immediate appeal of a question of indemnity apart from or, at least, prior to the consideration on appeal of the question of whether any liability exists. Although indemnity and liability issues are in some sense "separate and distinct," they are nevertheless "related." Indeed, by its very nature indemnity is collateral to and dependent upon a finding of liability.

**\*5** *Corrosioneering, 807 F.2d at 1284.*

Moreover, in light of the fast-approaching trial date the "miscellaneous factors" such as delay and expense strongly favor denying Liberty's motion. The only expense Liberty complains of is the "tremendous expense for Liberty Mutual if the Court determines that Liberty Mutual must provide coverage for the underlying claims against Elliott." Not only is this an admission that the upcoming trial may moot the issues Liberty seeks to appeal, but it also demonstrates that Liberty is not facing any present injury. *Id.* Accordingly, the Court denies Liberty's request for Rule 54(b) certification.

The final issue is Liberty's request to certify the case for interlocutory appeal under 28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "Review under § 1292(b) should be sparingly granted and then only in exceptional cases." *Vitols v. Citizens Banking Co., 984 F.2d 168, 170 (6th Cir.1993).*

The statute breaks down into three requirements: "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *In re Memphis, 293 F.3d 345, 350 (6th Cir.2002).* Liberty's request fails on all three grounds.

First, a controlling question of law must be a legal issue. The parties do not dispute the applicable rules of contract construction under Massachusetts law. Instead, they dispute the meaning of the terms of a particular contract. *See Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris, Inc., 29 F.Supp.2d 825, 833 (N.D .Ohio 1998)* (finding no controlling issue of law where "[i]nstead of raising an issue of controlling law, it appears that the defendants seek interim review of how this Court applied established law to the somewhat novel, factual circumstances of this case.").

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 987318 (N.D.Ohio)
**(Cite as: 2007 WL 987318 (N.D.Ohio))**

Second, the fact that the disputed legal issue is the meaning of a unique contract term renders it unlikely there is differing law on the issue. *See White v. Nix, 43 F.3d 374, 378 (8th Cir.1994)* (explaining that "substantial ground for difference of opinion does not exist merely because there is a dearth of cases"). Although the interpretation of this particular contract is, in a sense, an issue of first impression, this does not justify interlocutory review. Otherwise, nearly every contract suit would be subject to interlocutory appeal. *See Moran v. Official Committee of Administrative Claimants, 2006 WL 3253128, *4 (N.D.Ohio Nov. 8, 2006)* ("The standard requires that there be a difference of opinion regarding the law, not just a difference of opinion as to how the law is applied."). Third, the Court has already explained in its discussion of Rule 54(b) that an immediate appeal will not materially advance the ultimate termination of the litigation. *See Memphis, 293 F.3d at 351* ("When litigation will be conducted in substantially the same manner regardless of the court's decision, the appeal cannot be said to materially advance the ultimate termination of the litigation."); *Iron Workers, 29 F.Supp.2d at 832* (explaining that the Court should consider the likelihood of a lengthy interlocutory appeal, whether the order is likely to be affirmed, whether continued proceedings might moot the issue, and whether there is a significant burden to continuing).

### CONCLUSION

**\*6** For the foregoing reasons, Liberty's motions are DENIED.

IT IS SO ORDERED.

N.D.Ohio,2007.
Elliott Co. v. Liberty Mut. Ins. Co.
Not Reported in F.Supp.2d, 2007 WL 987318 (N.D.Ohio)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2010 WL 1539968 (M.D.Tenn.)
**(Cite as: 2010 WL 1539968 (M.D.Tenn.))**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Tennessee,
Nashville Division.
John OSHOP, Glenda Oshop, and C.O., by and
through her natural guardians and next friends, John
Oshop, and Glenda Oshop, Plaintiffs,
v.
RUTHERFORD COUNTY BOARD OF EDUCA-
TION, et al., Defendants.

No. 3:09-CV-0063.
April 15, 2010.

West KeySummary**Constitutional Law 92 ☞4192**

92 Constitutional Law
   92XXVII Due Process
      92XXVII(G) Particular Issues and Applica-
tions
      92XXVII(G)8 Education
         92k4192 k. School boards. Most Cited
Cases

**Schools 345 ☞89**

345 Schools
   345II Public Schools
      345II(F) District Liabilities
      345k89 k. Torts in general. Most Cited
Cases

  School board's failure to affirmatively prevent
Department of Child Services (DCS) from violating
parents' constitutional rights to raise their daughter as
they saw fit did not result in school board's violation of
parents' due process rights. Daughter was questioned
in school without parents' knowledge and against their
express wishes, but there was no evidence that agents
of the board violated the parents' rights. U.S.C.A.
Const.Amend. 14; 42 U.S.C.A. § 1983.

Brad W. Hornsby, Bullock, Fly & Hornsby, Mur-
freesboro, TN, for Plaintiffs.

Amy T. McConnell, Tennessee Attorney General's
Office, Catherine C. Dugan, David Randall Mantooth,
Leitner, Williams, Dooley, and Napolitan, PLLC,
Nashville, TN, for Defendants.

*MEMORANDUM*
ALETA A. TRAUGER, District Judge.
  ***1** Pending before the court is a Motion for
Summary Judgment filed by defendants Angel
McCloud and the Rutherford County Board of Edu-
cation (the "Board" and, collectively, the "Rutherford
County" defendants) (Docket No. 64). For the reasons
discussed herein, the Motion will be granted, and these
defendants will be dismissed from this case and a final
judgment will be entered in their favor.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

  The plaintiffs, John and Glenda Oshop, are resi-
dents of Rutherford County, Tennessee, and they are
the married parents of C.O., a young child.[FN1] At all
relevant times, C.O. attended the Homer Pittard
Campus School (HPCS). HPCS is a member school of
the Rutherford County Board of Education.

>    FN1. Unless otherwise noted, the facts are
> drawn from the defendants' Statement of
> Material Facts, which the plaintiffs do not
> dispute for purposes of this Motion, and re-
> lated affidavits and exhibits. (Docket No. 66
> and Docket No. 68 at 1.) Although facts are
> drawn from submissions made by both par-
> ties, on a motion for summary judgment, all
> inferences are drawn in the light most fa-
> vorable to the non-moving party. See Mat-
> sushita Elec. Indus. Co. v. Zenith Radio
> Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89
> L.Ed.2d 538 (1986); McLean v. 988011 On-
> tario, Ltd., 224 F.3d 797, 800 (6th Cir.2000).
> Also, while C.O. was, in previous briefing,
> referred to by her full name, the parties
> have apparently elected to refer to her "C.O." and,
> therefore, the court will do so as well.

  In November 2007, a boy in C.O's kindergarten
class touched her inappropriately with her consent.
That evening, C.O. informed her mother, Glenda
Oshop, of the event. The next day, John and Glenda

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1539968 (M.D.Tenn.)
**(Cite as: 2010 WL 1539968 (M.D.Tenn.))**

Oshop went to HPCS and met with the principal, Stan Baskin, and C.O.'s teacher, Debbie Siegfried. During the meeting, the parties agreed that, though inappropriate, the incident was "normal exploratory behavior." The plaintiffs apparently believed that, at this point, the matter was resolved.

About two months later, in January 2008, a case manager with the Tennessee Department of Children's Services (DCS) contacted Mr. Oshop and asked to interview C.O. at the DCS Child Advocacy Center, presumably to discuss the November 2007 "touching" incident. Mr. Oshop informed the case manager that he did not want his daughter interviewed in connection with the incident because he did not believe that further discussion of the incident would be in her best interest. Again, after Mr. Oshop did not hear from anyone at DCS for a few days, he believed the matter to have been resolved. (Docket No. 67 Ex. 1 at 7.)

Despite Mr. Oshop's declining the request for the interview, DCS case manager Shane Voyles asked DCS Child Protective Services Investigator Carrie Niederhauser (also referred to in the materials filed as Carrie Perdue) to go to HPCS to conduct a further interview with C.O. and with the boy involved in the November 2007 "touching" incident. At Ms. Niederhauser's request, a Murfreesboro Police Detective, Tommy Roberts, who apparently specializes in investigating "child sex abuse" crimes, met her at the school to conduct the interview on January 22, 2008. (Docket No. 67 Ex. 1 at 54, 59-62.)

Upon arrival at the school, Niederhauser and Roberts spoke with Baskin, and they requested an opportunity to interview C.O. at the school. Based upon previous conversations with Mr. Oshop, Baskin knew that the Oshops did not want further interviews with C.O. regarding the "touching" incident to be conducted. When Baskin asked Niederhauser if he could contact the Oshops first, Niederhauser advised Baskin that he was not allowed to contact the Oshops to advise them that the interview was taking place. (Docket No. 67 Ex. 1 at 38.) In light of this, while Niederhauser and Roberts waited, Baskin contacted the Board's legal department for advice on whether he was required to permit DCS to interview a student over the parents' objection.

**\*2** Board employee James Evans took the phone call from Baskin and pulled the Board attorney, de-

fendant Angel McCloud, from a meeting so that she could address Baskin's question. Evans only conveyed to McCloud that DCS was at HPCS and that DCS wanted to interview a child there. (Docket No. 67 Ex. 1 at 28.) Based upon this understanding, Ms. McCloud advised Mr. Evans that Baskin had to allow DCS to conduct the interview at the school. Indeed, at this time, the Board's policy, which was based upon a 1987 (and since re-affirmed) Tennessee Attorney General opinion, required school administrators and employees to cooperate in DCS investigations, including permitting child abuse review teams to conduct interviews while the child was at school. (Docket No. 64 Exs. 1-2.) Evans relayed McCloud's advice to Baskin who indicated that he would not prevent the interview from taking place. Thereafter, Niederhauser conducted the interview of C.O. Despite the allegation in the Complaint, the parties now agree that there is no indication that McCloud threatened Baskin with "obstruction of justice" charges if he did not permit the interview to go forward.

On January 20, 2009, the plaintiffs filed their Complaint in this case. (Docket No. 1.) The plaintiffs sued DCS, two "John Doe" defendants whom the plaintiffs claimed were the individuals at DCS responsible for supervising and conducting the interview (in their individual and official capacities), the Board, McCloud (in her official and individual capacity), and various members of the Board, who were all sued in their official capacities. (*Id.* at 2.) The plaintiffs asserted claims under [Section 1983](#) and for negligent infliction of emotional distress (NIED) against all defendants. (*Id.* at 5-6.)

On June 10, 2009, the court granted in part and denied in part a Motion to Dismiss filed by DCS and the two John Doe defendants. (Docket Nos. 32-33.) The court dismissed all claims against DCS and all claims against the John Doe defendants in their official capacities on the grounds of sovereign immunity. (Docket No. 32 at 8-9.) As to the claims asserted against the John Doe defendants in their individual capacities, the court dismissed the NIED claim without prejudice and allowed the [Section 1983](#) claim, which is premised on the Oshops' constitutional right to raise their daughter as they "see fit," to proceed. (Docket No. 33.) On October 1, 2009, the court granted the Motion to Dismiss filed by the individual members of the Board, finding that, under settled law, an official capacity suit against these individuals was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1539968 (M.D.Tenn.)
**(Cite as: 2010 WL 1539968 (M.D.Tenn.))**

redundant of the plaintiffs' claims against the Board. (Docket Nos. 48 and 49.)

On February 12, 2010, the plaintiffs amended their Complaint such that "all references [in the original Complaint] to John Doe One are [ ] amended to instead refer to Kristen Giere." (Docket No. 54 at 1.) Ms. Giere has since filed a Motion to Dismiss on service of process grounds, and that motion has not been fully briefed. (Docket No. 69.) On March 12, 2010, the remaining "Rutherford County" defendants, that is, the Board and McCloud, moved for summary judgment.

### ANALYSIS

**\*3** The plaintiffs bring this suit under 42 U.S.C. § 1983, alleging that the defendants' actions violated their rights under the Due Process Clause of the Fourteenth Amendment. (Docket No. 1 at 5.) Specifically, the plaintiffs claim that, when the defendants arranged and conducted the interview of C.O. out of their presence and without their knowledge, they violated the plaintiffs' right to raise their daughter as they see fit. (*Id.*) In addition to their constitutional claim, the plaintiffs also assert a claim of negligent infliction of emotional distress ("NIED") under Tennessee state law, a claim that has already been dismissed as to some of the defendants in this case. (*Id.*)

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir.2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan,* 578 F.3d at 374.

" '[T]he judge's function is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.' "

*Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson,* 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan,* 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### A. The Plaintiffs' Claims Against the Board and McCloud

Going into this round of briefing, the plaintiffs maintained (1) a Section 1983 claim against McCloud (in her individual and official capacities) and the Board and (2) an NIED claim against both McCloud and the Board. In response to this Motion for Summary Judgment on all claims, the plaintiffs only specifically addressed the Section 1983 claim asserted against the Board, apparently conceding that the other claims asserted against McCloud and the Board are without merit. (Docket No. 68.) Therefore, the court will briefly discuss the bases for dismissing all other claims against the Board and McCloud before turning to the lone disputed issue.

### i. Official capacity claims-McCloud

**\*4** While the plaintiffs sued McCloud in her individual and official capacities, consistent with the court's analysis in its October 1, 2009 Memorandum and Order, an official capacity claim against McCloud is redundant of the plaintiffs' claims against the Board and is, therefore, not sustainable. (*See* Docket No. 48 at 5 citing *Alkire v. Irving,* 330 F.3d 802, 810 (6th Cir.2003) for the notion that, in an official-capacity suit, the government entity is "the only true defendant[ ].").

### ii NIED claim-McCloud and the Board

Also, as noted above, in the June 10, 2009 Memorandum and Order, the court dismissed the NIED claims at issue, which, by that point in the analysis, only concerned the John Doe defendants in their individual capacities. (Docket No. 32 at 18.) The court dismissed the claims without prejudice, finding that the plaintiffs had failed to state a claim for relief because they failed to plead various elements of the NIED cause of action, and the allegations amounted to nothing more than insufficient "legal conclusions [ ]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1539968 (M.D.Tenn.)
**(Cite as: 2010 WL 1539968 (M.D.Tenn.))**

not supported by any additional factual matter." (*Id.*)

The plaintiffs have done nothing to indicate that they might have a viable NIED claim against the Board or McCloud. Indeed, while the Oshops cite "stress" or "anxiety" related to the unauthorized interview, they concede that neither of them has sought any significant medical assistance in relation to these issues; that is, among other things, they fail to sufficiently show the "serious" or "severe" emotional injury that is required for a recoverable NIED claim. (Docket No. 66 at 9-10; *see also Bain v. Wells,* 936 S.W.2d 618, 624 (Tenn.1997))

Also, April Bowen, a "licensed senior psychological examiner," evaluated C.O. in November 2009 to ascertain whether she should be deposed in this case, and Bowen "saw nothing in her evaluation ... that would support any allegation of severe emotional harm or injury to [C.O.] as a result of the DCS interview." (Docket No. 66 at 9.) Again, the plaintiffs also do not challenge that these defendants are entitled to judgment on the plaintiffs' NIED claims. Therefore, the NIED claims against McCloud and the Board will likewise be dismissed.

### iii. **Section 1983** claim-McCloud individual capacity

Additionally, the plaintiffs do not challenge that the Section 1983 claims asserted against McCloud in her individual capacity should be dismissed. Traditionally, Section 1983 individual capacity claims such as those asserted against McCloud here are evaluated under a two-step analysis, which considers whether the individual violated the plaintiffs' constitutional rights and whether, if such a violation occurred, the defendant would be entitled to "qualified immunity" because the right at issue was not "clearly established." *Pearson v. Callahan,* 555 U.S. 223, ---- - ----, 129 S.Ct. 808, 816-18, 172 L.Ed.2d 565 (2009). Here, there appears to be no evidence that McCloud violated the plaintiffs' constitutional rights, and, therefore, it is not necessary to consider the qualified immunity issue.

**\*5** As discussed in the June 10, 2009 Memorandum and Order, the Fourteenth Amendment's Due Process Clause contains "the fundamental right of parents to make decisions concerning the care, custody, and control of their children," which includes the right of parents to generally control the course of their child's home life and education. *Troxel v. Granville,* 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The Sixth Circuit has indicated that this fundamental right to "familial association" may be violated when the state temporarily or permanently removes children from their parents' home and control, or when parental rights are extinguished, without due process. *Kottmyer v. Maas,* 436 F.3d 684, 691 (6th Cir.2006); *see also Smith v. Williams,* 2006 WL 3716782, \*4 (S.D.Ohio Dec.14, 2006). While the state is permitted to investigate allegations of child abuse without infringing on this "familial association" right, investigations that are conducted in bad faith, with malicious motive, or that employ tactics that "shock the conscience" may constitute a constitutional violation. *Kottmyer,* 436 F.3d at 691, 691 n. 1.

Here, the undisputed facts show that McCloud did not conduct any investigation, permissible or not. Rather, these facts show that McCloud was simply asked by an associate whether Baskin was required to permit DCS to conduct an investigation on school grounds and McCloud, citing Board policy, stated that Baskin was so required. As the defendants cogently state, "Angel McCloud's sole involvement in the matter was to advise Principal Baskin that he was required by law to cooperate with the DCS in a child abuse investigation. Angel McCloud neither initiated, directed, nor conducted the investigation." (Docket No. 65 at 9.)

Therefore, even if the DCS investigation violated the plaintiffs' rights under Section 1983, there is no indication either from the facts or the law that McCloud's failure to somehow stop that investigation would violate the plaintiffs' rights under Section 1983. Absent some additional showing of culpability not made here, "the Due Process Clause [ ] does not impose affirmative duties" on governmental actors, and there is "no affirmative right to governmental aid." *Brooks v. Knapp,* 221 F. App'x 402, 405-06 (6th Cir.2007) (internal citation and quotation omitted). As there are no viable claims remaining against McCloud, she will be dismissed from this case.

### iv. **Section 1983** Claim against the Board

To set forth a "cognizable Section 1983 claim against a municipality, a plaintiff must allege that (1) agents of the municipality, while acting under color of state law, (2) violated the plaintiff's constitutional rights, and (3) that a municipal policy or policy of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1539968 (M.D.Tenn.)
**(Cite as: 2010 WL 1539968 (M.D.Tenn.))**

inaction was the moving force behind the violation." *Memphis, Tennessee Area Local v. City of Memphis, 361 F.3d 898, 902 (6th Cir.2004)*.

The plaintiffs argue that the Board's policy of "always allow[ing] the DCS to conduct interviews of children on school grounds without parental notice or consent ... led to the constitutional violation at question in this case." (Docket No. 68 at 2.) While the plaintiffs concede that the policy is based upon a Tennessee Attorney General opinion, the plaintiffs argue that, sanctioned or not, the "policy of the Board allows school officials to wipe their hands of the consequences of any DCS activity on school property," even where, as here, "the situation did not seem right." (*Id.* at 2-4.) The plaintiffs contend that this impermissible interview only occurred "because of the school board policy requiring administrators to always cooperate with DCS." (*Id.* at 4.) In concluding, the plaintiffs argue that, under a system of compulsory education, a Board policy of "non-discretion in DCS investigations" results in a system in which "parents are unwittingly being forced into absolutely giving up their right to direct and control the upbringing of their children everyday." (*Id.* at 5.)

**\*6** While reasonable minds could certainly find the apparent conduct of the DCS here troubling, the plaintiffs' argument as to the Board is misdirected. Under the well-settled three-part test cited above, in order to establish a Section 1983 violation against an entity such as the Board, the plaintiffs must show, among other things, that *"agents of the municipality,* while acting under color of state law, violated the plaintiff's constitutional rights." That is, "a plaintiff bringing a Section 1983 claim against a governmental entity must allege that the person who committed the violation was an *agent of the entity* and 'that a governmental policy or policy of inaction was the moving force behind the violation.' " *Payne v. Tipton County, Tenn., 2006 WL 1967046, \*2 (W.D.Tenn. July 12, 2006)* (citing and quoting *City of Memphis, 361 F.3d at 902)* (emphasis added).

Here, there is no evidence that *agents of the Board* violated the plaintiffs' constitutional rights. Rather, as discussed above, at most, they did not somehow affirmatively prevent DCS from violating the plaintiffs' constitutional rights, which, in and of itself, is not a violation. In short, the plaintiffs must do more than simply offer policy-based reasons why the Board's policy as to DCS investigations is not wise. The Board's motion for summary judgment will be granted, and the Board will be dismissed from this case.

**v. Rule 54(b)**

Lastly, McCloud and the Board request that, under Federal Rule of Civil Procedure 54(b), "for purposes of finality," the court enter a final judgment in their favor. (Docket No. 65 at 18.) Rule 54(b) states that, "[w]hen an action presents more than one claim for relief ... or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). The Sixth Circuit has concluded that the entry of a final judgment under Rule 54(b) is appropriate only in the "infrequent harsh case" where doing so is necessary "as an instrument for the improved administration of justice." *Corrosioneering, Inc. v. Thyssen Environmental Sys., Inc., 807 F.2d 1279, 1282 (6th Cir.1986)* (internal quotation omitted).

The Sixth Circuit has also articulated a non-exhaustive list of factors for the district court to consider in evaluating a Rule 54(b) motion, such as "the relationship between the adjudicated and unadjudicated claims," "the possibility that the reviewing court might be obliged to consider the same issue a second time," and "miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like." *Lowery v. Fed. Express Corp., 426 F.3d 817, 822 (6th Cir.2005)*.

**\*7** Under the unique facts of this case, entry of a final judgment is appropriate. The only claim remaining is a Section 1983 claim asserted against the "John Doe" defendants in their individual capacities. This claim, as indicated above, is in flux. While the plaintiffs have identified the individuals who they believe represent these "John Does," they only formally named Ms. Giere as a defendant, and she has a Motion to Dismiss pending for failure of service of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1539968 (M.D.Tenn.)
**(Cite as: 2010 WL 1539968 (M.D.Tenn.))**

process. Given the ease with which the claims against the other defendants were dispensed with, the differing set of facts relevant to the claim against these remaining defendants, and the uncertain nature of how long it will take to resolve the remaining claim, there is no "just reason" to delay the entry of a final judgment as to the defendants whose claims have been resolved. Therefore, the court will enter a final judgment dismissing this case as to all defendants except Kristen Giere and the "John Doe" defendants in their individual capacities (including individuals who may be identified as the "John Doe" defendants).

### CONCLUSION

For the reasons discussed above, the defendants' Motion for Summary Judgment will be granted, and a final judgment will be entered.

An appropriate order will enter.

M.D.Tenn.,2010.
Oshop v. Rutherford County Bd. of Educ.
Not Reported in F.Supp.2d, 2010 WL 1539968 (M.D.Tenn.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.