IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY T. WINNETT, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CATERPILLAR INC., )<br>)<br>Defendant/Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>INTERNATIONAL UNION, UAW, et al. )<br>)<br>Third-Party Defendants. )<br>) | Case No. 3:06-0235<br>Judge Trauger |

___

| | |
|---|---|
| JUDITH K. KERNS, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CATERPILLAR INC., )<br>)<br>Defendant/Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>INTERNATIONAL UNION, UAW, et al. )<br>)<br>Third-Party Defendants. )<br>) | Case No. 3:06-1113<br>Judge Trauger |

1

**MEMORANDUM**

These are two related, but not consolidated, cases. As with the previous rulings in these cases, it is in the interest of judicial economy to address the pending motions in these two cases in one opinion. In each case, pending before the court is a Motion for Certification of Final Judgment filed by the defendant Caterpillar, Inc. (*Winnett* Docket No. 519; *Kerns* Docket No. 314). Also, in *Winnett*, Caterpillar has filed a Motion for Restitution (Docket No. 517). These motions have been fully briefed. For the reasons discussed herein, Caterpillar's Motion for Restitution will be denied. As restitution is the lone outstanding matter in *Winnett*, denial of the restitution motion essentially closes the case and renders the Motion for Certification in *Winnett* moot. The court will consider the Motion for Certification in *Kerns*, and that motion will be denied.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The court has recounted the factual and procedural history of these cases numerous times; therefore, some familiarity with the facts will be assumed. (*See Winnett* Docket No. 463.) Again, in these class actions the plaintiffs claimed that Caterpillar – as their (or their spouse's) former employer – breached its promise (embodied in collective bargaining agreements and related documents) to provide "lifetime cost-free retiree health care." (Docket No. 470 at 2.) Through a series of decisions from this court and the Sixth Circuit, the number of plaintiffs and claims have been whittled down, and substantial conclusions regarding Caterpillar's liability have been reached. Indeed, all of the plaintiffs' claims in *Winnett* have been dismissed and damages discovery is ongoing in *Kerns.* (*See Winnett* Docket No. 495.)

## ANALYSIS

I.  **Motion for Restitution**

   A.  **Background**

On July 12, 2007, the court certified *Winnett* as a class action under Fed. R. Civ. P 23(b)(1) and 23(b)(2) and certified three subclasses. (Docket No. 140.) On September 16, 2008, this court granted the Caterpillar Logistics Services, or "CLS," subclass a preliminary injunction, which enjoined Caterpillar from deducting premium charges for the subclass members' retiree healthcare coverage and from charging the subclass members certain "ancillary" charges, such as deductibles and certain co-pays. (See Winnett Docket No. 307.) The court did not require the plaintiffs to post an injunction bond citing, among others things, the plaintiffs' limited financial means. (Docket No. 306 at 58-59.) Caterpillar timely appealed the preliminary injunction. (Docket No. 310.)

In a March 26, 2010 ruling, this court granted summary judgment to the CLS subclass but concluded that the subclass's potential damages consisted only of premium charges. (Docket No. 463 at 47-48.) That is, under the relevant law, Caterpillar could resume charging the subclass "ancillary" charges, but it could not charge premiums and had violated the law in doing so in the past. (*Id.*) In a footnote, the court did not "take a position" on whether Caterpillar could attempt to "recoup funds expended in relation to the . . . ancillary charges that the court enjoined Caterpillar from assessing through the preliminary injunction," leaving this issue for potential settlement discussions between the parties or "for consideration during any damages briefing." (*Id.* at 30.) This statement was made in a context in which the court assumed that the

CLS subclass would be receiving significant damages for unpaid premiums. On June 22, 2010, the Sixth Circuit ruled on Caterpillar's preliminary injunction appeal, finding that the claims of the CLS subclass were time-barred. (Docket No. 470.) In light of this ruling, this court dismissed the claims of the CLS subclass on remand. (Docket No. 495.)

Through its Motion for Restitution, Caterpillar seeks to recoup the premiums and ancillary costs it paid, pursuant to the injunction, on behalf of the CLS subclass from September 16, 2008 to March 26, 2010, as well as the premiums it paid from March 26, 2010 "until the Sixth Circuit reversed the preliminary injunction" in July 2010. (Docket No. 518 at 3.) Supported by affidavits and seemingly appropriate documentation, Caterpillar places the value of the premium payments made pursuant to court order at $1,116,508.44 and estimates the ancillary charges to be between $100,000 to $200,000, with further investigation required to arrive at the precise number. (*Id.*) Based on the spreadsheet provided, it appears most class members would owe Caterpillar between $2,000 and $7,000 for premiums. (Docket No. 518 Ex. A.)

### B. Analysis and Resolution

Caterpillar recognizes that the Supreme Court has stated that "a party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond." (Docket No. 532 at 2, quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 770 (1983)). While no bond was issued here, Caterpillar maintains that this court may employ its "inherent equitable power to correct that which has been wrongfully done by virtue of its process" and award restitution. (Docket No. 518 at 4.)

Caterpillar relies heavily on language from a 92-year-old Supreme Court opinion that

4

concerned the right of shippers to obtain restitution from railway companies who had improperly obtained an injunction. *See Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co.*, 249 U.S. 134, 145 (1919). There, the Court cited the "long established" principle of common law equity that "a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby." *Id.* Caterpillar goes on to cite several cases to show that the court has the authority to award restitution to a party such as Caterpillar, even in the absence of a bond. (Docket No. 518 at 6.) That is, these cases, in Caterpillar's view, are examples of a court recognizing that restitution could be paid in equity by the party who received benefits from its opponent as the result of an injunction improvidently granted, even if no bond had been issued. (*Id.* at 5-6 citing, *e.g.*, *Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust*, 824 F.2d 765, 766-67 (9th Cir. 1987); *Newfield House Inc. v. Mass. Dep't of Pub. Welfare*, 651 F.2d 32, 39 n. 12 (1st Cir. 1981); *Maryland Dep't. of Human Resources v. USDA*, 976 F.2d 1462, 1482-83 (4th Cir. 1992)).

In arguing that restitution not only can – but should – be awarded in this case, Caterpillar relies on the theory of unjust enrichment. (*Id.* at 7 citing *Maryland Dept.*, 976 F.2d at 1482, which stated that "the equitable nature of restitution ordinarily permits a court to award restitution upon the reversal of a judgment to the extent of one party's unjust enrichment.") Tailored to the facts of this case, the elements of an unjust enrichment claim under Tennessee law are: (1) a benefit conferred upon the plaintiffs by Caterpillar; (2) appreciation by the plaintiffs of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for the plaintiffs to retain the benefit without payment of the value thereof.

5

*U.S. v. Goforth*, 465 F.3d 730, 733 (6th Cir. 2006)).

Even assuming that the first two elements are satisfied and Caterpillar's request is procedurally appropriate, it is not equitable for individual plaintiffs to return – in cash – the money that Caterpillar paid to the relevant entities for the class member's health care coverage.[1] First, there is the obvious economic imbalance. The plaintiffs are retirees and elderly widows with limited financial means; Caterpillar is one the largest construction companies in the world. This incredible economic imbalance alone makes Caterpillar's request for "equitable" restitution dubious.

Further, Caterpillar ignores that – without the statute of limitations defense – its responsibility to pay health care costs for the CLS subclass was well established. This court, after repeatedly rejecting the statute of limitations defense, granted the CLS subclass's summary judgment motion, finding that Caterpillar had the obligation to pay premiums to the subclass as a matter of law. (Docket No. 463 at 47-48.) While the Sixth Circuit disagreed with this court on the statute of limitations defense, that court sympathized with the subclass, calling its ruling "particularly difficult." (Docket No. 470 at 14.) Judge Martin, in his concurrence, went further, stating that the CLS subclass "clearly ha[s] the better part on the breach of contract claim," and decried that, because of when the suit was filed, "hardworking folks lost an important benefit."

---

[1] Indeed, Caterpillar's core equity argument is weak, brief and flailing. (Docket No. 518 at 9-10.) It pulls assorted language from the comments to the Restatement (First) of Restitution and cites a single non-controlling (Title VII) case as precedent supporting "the imposition of restitution upon individuals unjustly enriched by a corporate defendant." (*Id*. citing *Caldwell*, 824 F.2d at 766). Caterpillar goes on to note that it is not seeking interest or "administrative costs," and it notes that the plaintiffs were always on notice of the statute of limitations defense. (*Id*.)

(*Id*. at 16.) Given that, aside from when this action was filed, Caterpillar's liability for the premiums in this case is fairly clear, principles of equity and fairness would suggest that Caterpillar's position at this point should be far different from what it is.

Additionally, it is worth noting that the CLS subclass was not a Rule 23(b)(3) subclass, and the plaintiffs, therefore, could not "opt out" of this litigation. Caterpillar is essentially suggesting that financially limited plaintiffs who had no choice regarding participating in this litigation and whose rights under the CBA were clearly violated now, years after the relevant payments were made, pay Caterpillar – an enormous corporation – thousands of dollars in cash as restitution. Granting Caterpillar's motion would not be consistent with any reasonable concept of equity or fundamental fairness. The motion will be denied, and *Winnett* will be closed.

## II.     Motion for Certification in *Kerns*

### A.     Background

As discussed in previous opinions, in 2007, in *Winnett* and *Kerns*, Caterpillar filed identical third-party Complaints against the International UAW and assorted local unions. (*See Kerns* Docket No. 82, *Winnett* Docket No. 150.) The third-party Complaint alleged that, in light of the UAW's conduct during the negotiation of the labor agreements at issue, the UAW was responsible to Caterpillar, under a theory of indemnification and contribution, for any liability that Caterpillar had in these cases. (See *Kerns* Docket No. 82 at 2.) The Complaint also alleged, among other things, that the UAW had breached various agreements between the parties by supporting the *Winnett* and *Kerns* litigation. (*Id.*)

The third-party claims and defendants were slowly whittled down, and, in January 2010, the remaining third-party action against the UAW was severed for trial purposes, with the court concluding that the third-party action would be tried after the dispute between the plaintiffs and Caterpillar was resolved. (See *Kerns* Docket Nos. 129, 239.) Later, in its March 26, 2010 Memorandum, the court granted the UAW's motion for summary judgment and dismissed the third-party Complaint in its entirety in both *Winnett* and *Kerns*. (*Kerns* Docket No. 263.) The parties later settled UAW's counterclaims against Caterpillar. (*Kerns* Docket No. 309.)

Therefore, Caterpillar fairly states, "this court has now resolved all outstanding issues between Caterpillar and the UAW arising out of the third-party complaint. However, the *Kerns* plaintiffs and Caterpillar are currently engaged in damages discovery, and the Court has not yet entered final judgment in this case." (*Kerns* Docket No. 315 at 3.) In light of this, Caterpillar seeks certification of a final judgment, under Fed. R. Civ. P. 54(b), "on the Court's dismissal of its third-party complaint." (*Id.*)

### B. Legal Standard

Rule 54(b) states that, "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R.

8

Civ. P. 54(b).

The Sixth Circuit has concluded that the entry of a final judgment under Rule 54(b) is appropriate only in the "infrequent harsh case," where doing so is necessary "as an instrument for the improved administration of justice." *Corrosioneering, Inc. v. Thyssen Environmental Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986)(internal quotation omitted). Despite the "harsh" language, a Rule 54(b) appeal may be appropriate depending on the circumstances, and the Sixth Circuit has articulated a non-exhaustive list of factors for the district court to consider in evaluating a Rule 54(b) motion:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Lowery v. Fed. Express Corp.*, 426 F.3d 817, 821-22 (6th Cir. 2005)

### C. The Parties' Arguments and Resolution

The parties' briefing here is as one might expect. Caterpillar argues that there is a "limited relationship" between the third party claims, which "focus on interactions between Caterpillar and the UAW in connection with [] settlement[s] . . . as well as the UAW's conduct in supporting the *Kerns* litigation," and the plaintiffs' claims, which "involve whether the Plaintiffs are entitled to retiree benefits." (Docket No. 315 at 6-7.) In light of this, Caterpillar suggests, the third-party claims can be appealed and freely reviewed without affecting the damages discovery in *Kerns*, which will continue for an uncertain duration. (*Id.* at 8-9.)

9

In response, the plaintiffs and the UAW contend that all the claims are "intertwined []" and not easily separated," that is, both sets of claims raise issues of the bargaining history between Caterpillar and UAW "relating to the issue of retiree health." (Docket No. 320 at 7; Docket No. 322 at 7.) Moreover, the plaintiffs argue, if the Sixth Circuit were to consider the claims Caterpillar made against the UAW in *Kerns*, it would inevitably be pulled into the *Kerns* litigation and be forced to make findings and conclusions about the case, all while the *Kerns* plaintiffs – who would not be parties to the appeal between Caterpillar and the UAW – were not represented before the Sixth Circuit. (Docket No. 320 at 7-11.) This is fundamentally unfair, the plaintiffs argue, and strongly counsels against a Rule 54(b) appeal. (*Id.*)

The plaintiffs and the UAW also point out that the third-party Complaint seeks indemnification and contribution and states that the claims were explicitly brought "in the event the Plaintiffs and class members in this lawsuit prevail," and that, in severing the actions for trial purposes, the court anticipated that the plaintiffs' claims would go to trial and then the third-party claims would be heard. (Docket No. 320 at 9-14; Docket No. 322 at 4.) Given the "derivative" and "secondary" nature of the claims, the plaintiffs argue, it "makes no sense to leapfrog the claims between Caterpillar and the UAW ahead of the main case." (Docket No. 320 at 9.) Further, the UAW contends, if the Sixth Circuit found that Caterpillar had no liability to the *Kerns* plaintiffs (reversing this court), it would render the indemnification and contribution claims moot. (Docket No. 322 at 3-4.) Therefore, the argument goes, it only makes sense to afford the Sixth Circuit the opportunity to consider Caterpillar's liability to the *Kerns* plaintiffs

first, before moving on to the derivative claims.[2] (Id.)

All of this briefing, of course, predates the court's ruling on the restitution motion in *Winnett*, which closes that case. The fundamental challenge for the court here is to attempt to predict, in this complicated and unwieldy litigation, what course is most consistent with the "improved administration of justice," in light of the fact that *Winnett* is now final and ready for appeal. One path would be to grant Caterpillar's motion, which would put all third-party claims, in both *Winnett* and *Kerns*, before the Sixth Circuit at roughly the same time. The other option is to allow *Winnett*, in full, to be appealed while *Kerns*, in full, remains at this level, awaiting the conclusion of damages discovery.

On balance, the court favors the latter approach, largely because it allows the *Kerns* plaintiffs to be fairly and easily represented at every stage of the *Kerns* litigation; that is, it avoids a scenario in which the Sixth Circuit considers issues in the *Kerns* case, without the *Kerns* plaintiffs being involved. Further, it appears from the parties' briefing from the *Kerns* damages discovery (let alone subsequent anticipated briefing) will take a significant amount of time and has been proceeding slowly. Therefore, it seems that there is a reasonable possibility that the Sixth Circuit could issue a ruling on the third-party claims in *Winnett* while the *Kerns* case is still pending, or at least at a time when the parties in *Kerns* could use that ruling to assist them in deciding how to proceed with their case and the third-party claims therein on appeal.

---

[2]In its reply, Caterpillar points out that, in addition to indemnification and contribution, it also seeks "attorneys' fees and costs incurred by Caterpillar in defending this action" and that its breach of contract claims also concern the UAW's financial support of the *Kerns* litigation and thus "raise issues and involve facts distinct from Plaintiffs' claims." (Docket No. 325 at 4-6.)

In light of all of this, Caterpillar's motion for a Rule 54(b) judgment will be denied.

## **CONCLUSION**

For the reasons discussed herein, Caterpillar's Motion for Restitution in *Winnett* will be denied, as will Caterpillar's Motion for Certification in *Kerns*.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge