**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: January 07, 2013

Ms. Elizabeth Ann Alexander
Lieff, Cabraser, Heimann & Bernstein
150 Fourth Avenue, N.
Suite 1650 One Nashville Place
Nashville, TN 37219

Ms. Julia Penny Clark
Bredhoff & Kaiser
805 Fifteenth Street, N.W.
Suite 1000
Washington, DC 20005

Mr. Matthew Clash-Drexler
Bredhoff & Kaiser
805 Fifteenth Street, N.W.
Suite 1000
Washington, DC 20005

Ms. Pamina Grace Ewing
Stember Feinstein Doyle Payne & Kravec,
429 Forbes Avenue
Suite 1705
Pittsburgh, PA 15219

Mr. Michael M. Mulder
Meites, Mulder & Glink
321 S. Plymouth Court
Suite 1250
Chicago, IL 60604

Mr. William T. Payne
Stember Feinstein Doyle Payne & Kravec,
429 Forbes Avenue
Suite 1705
Pittsburgh, PA 15219

Mr. Joshua B. Shiffrin
Bredhoff & Kaiser
805 Fifteenth Street, N.W.
Suite 1000
Washington, DC 20005

Mr. Jay E. Sushelsky
AARP Foundation Litigation
601 E Street, N.W.
Fourth Floor
Washington, DC 20049

Mr. Joseph J. Torres
Winston & Strawn
35 W. Wacker Drive
Chicago, IL 60601

    Re:  Case No. 11-5905/11-5906, *Gary Winnett, et al v. Caterpillar Inc.*
           Originating Case No. : 3:06-CV-235

Dear Sir or Madam,

    The Court issued the enclosed Opinion today in this case.

                             Sincerely yours,

                             s/Julie Brock
                             Case Manager
                             Direct Dial No. 513-564-7011

cc:  Mr. Keith Throckmorton

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0028n.06

Nos. 11-5905/11-5906

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

> FILED
> Jan 07, 2013
> DEBORAH S. HUNT, Clerk

| | |
|---|---|
| GARY T. WINNETT, et al., | ) |
| | ) |
|     Plaintiffs - Appellants Cross-Appellees, | ) ) ) |
| | ) |
| v. | ) |
| | ) |
| CATERPILLAR INC. | )   ON APPEAL FROM THE UNITED |
| | )   STATES DISTRICT COURT FOR THE |
|     Defendant/Third Party Plaintiff - Appellee Cross-Appellant | )   MIDDLE DISTRICT OF TENNESSEE ) ) |
| v. | ) ) |
| UAW LOCAL UNION NO. 145, et al., | ) ) |
|     Third Party Defendants - Cross-Appellees (11-5906 ONLY). | ) ) ) |

Before:  MARTIN, ROGERS and SUTTON, Circuit Judges.

PER CURIAM.  In this case, back for a third appeal, the parties each present one issue. The plaintiffs claim that they are entitled to lifetime no-cost medical benefits from Caterpillar. But, as the district court concluded, a fair reading of the relevant case law shows that the claims of this subclass, much like the previously resolved claims of another subclass in this case, are time-barred. The defendant claims it has a right to bring a third-party complaint against the plaintiffs' former union for funding and supporting this litigation. But, as the district court concluded, Caterpillar has no such right on this record.  We affirm.

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

I.

We assume, perhaps unrealistically, that the reader has read our prior decisions in this case, and as a result we will not lay out the facts in detail. *See Winnett I*, 553 F.3d 1000 (6th Cir. 2009); *Winnett II*, 609 F.3d 404 (6th Cir. 2010). Here is a rough sketch. Caterpillar employees worked under a 1988 collective bargaining agreement that expired in 1991. Caterpillar and the employees' union, the UAW, failed to negotiate a new CBA, and the UAW initiated a strike. With no CBA in place, Caterpillar made unilateral changes to its retiree medical benefits in 1992. Those changes included caps on healthcare coverage, a managed care network and other limits. Caterpillar and the UAW agreed to a new CBA in 1998 that included the 1992 changes, and Caterpillar set up a Voluntary Employee Benefit Association (VEBA) fund to pay retiree expenses in excess of the caps. Anticipating that the fund would run out, Caterpillar agreed in the 2004 insurance plan to cover 40 percent of above-cap costs. When the fund ran out, Caterpillar began deducting a healthcare premium from retirees' pensions.

The plaintiffs filed this lawsuit in 2006, seeking "lifetime health insurance at no cost to plaintiffs" under the 1988 CBA. R.61 ¶ 32. The district court certified a class of workers who retired during the 1992–1998 labor dispute (and spouses who survived the deaths of those retirees). The district court also certified three subclasses. The first subclass covered retirees who were eligible to retire, but did not retire, before the labor dispute. The second subclass covered retirees from a subsidiary, Caterpillar Logistics Services (CLS). The third subclass covered surviving spouses.

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

*Winnett I* dealt with the first subclass. The theory of relief proposed by these retirees was that their rights to lifetime no-cost medical benefits vested when they became *eligible* to retire—before the labor dispute and while they continued to work under the 1988 CBA—not when they retired. We held that any promised benefits could not vest until the employees retired. 553 F.3d at 1012.

*Winnett II* dealt with the second subclass. Their theory of relief was that, since they retired during the labor dispute and since Caterpillar continued to apply the 1988 CBA to them during the dispute (because this group did not go on strike), they had vested rights to medical benefits under the terms of the 1988 CBA. The problem with this claim turned not on vesting but on when they filed the lawsuit. The claimants did not file the lawsuit until 2006, which was more than six years (the relevant limitations period) after Caterpillar repudiated any guarantee of lifetime no-cost medical benefits for the subclass in 1998, namely when Caterpillar began applying the changes in the 1992 healthcare plan to the subclass. 609 F.3d at 409.

Today's case, *Winnett III*, deals with the last subclass, the surviving spouses of Caterpillar retirees. The district court held that this group of claimants also filed their complaint after the limitations period had run, relying on *Winnett II*. Also at issue in this case is Caterpillar's third-party complaint against the UAW for allegedly breaching an agreement not to fund or support this litigation against Caterpillar. The district court rejected this claim as well.

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

## II.

The plaintiffs contend that the district court erred in dismissing their claims on statute-of-limitations grounds. We have seen this movie before, and regrettably for the plaintiffs it does not end differently. *Winnett II* involved a similar time-bar problem, and it requires a similar outcome here.

In *Winnett II*, the CLS subclass received healthcare benefits under the 1988 CBA until May 1, 1998, when Caterpillar started applying the changes to the healthcare plan brought about by the 1998 CBA. 609 F.3d at 409. Under the new CBA, retirees in 1998 faced higher prescription drug co-pays, new limits on dependents, a new managed care network and new limits to vision and dental care, among other changes. *Id.* Caterpillar also announced caps on benefits and introduced premium payments (that would be covered for some time by the VEBA fund) and included in a 1999 summary plan description a broad reservation-of-rights clause. *Id.* All of these changes and reductions came about through bargaining that at the same time increased pension benefit rates and early retirement allowances and began providing retirees with lump-sum payments. *Id.* at 414.

The CLS subclass did not file its complaint until 2006, seeking at that point unalterable free lifetime health insurance under the 1988 CBA. R.61 ¶ 58. We held that its claims had accrued at the latest by 1998 when all of these changes took place and when it became clear that the retirees were no longer receiving the free unalterable lifetime healthcare benefits promised by the 1988 CBA.

- 4 -

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

*Winnett II*, 609 F.3d at 409.  We therefore held that the claims were time-barred under the six-year statute of limitations.

The claims of the surviving-spouse subclass face a similar time-bar problem, indeed a greater problem in at least one respect.  The company applied these same changes to surviving spouses starting in 1992, well *before* it applied them to the CLS retirees in 1998.  These were not, to reiterate, minor decreases in healthcare benefits.  Surviving spouses of workers who had retired before 1992 paid little to nothing for healthcare.  But surviving spouses of workers who retired after 1992 saw plenty of new bills.  They paid more out of pocket for prescription drugs.  If they wanted to see an out-of-network doctor, they paid 30 percent of the cost.  They faced other limits on new dependents and on vision and dental care.  Caterpillar confirmed all of those changes in the 1998 CBA.  And in 1999, Caterpillar sent a new summary plan description with a new reservation-of-rights clause to the spouses:  While the 1988 clause was "[s]ubject to applicable collective bargaining agreements," the 1999 clause was not.  *Compare* R.76-5 at 52, *with* R.241-2 at 79.  These same changes, *Winnett II* held, placed the CLS retirees on notice that any promise of unalterable free healthcare benefits in the 1988 CBA no longer was being applied to them and put them on notice that any claim under the 1988 CBA would have to be filed within six years.  609 F.3d at 409–10.  In view of the identical changes made to the healthcare benefits of the surviving spouses, albeit six years *earlier* than the changes made to the CLS employees' plans, it is fair and appropriate to start the limitations clock no later than 1998 for this subclass as well.

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

Not only were the changes identical for each subclass, but the two subclasses brought this action through *the same complaint*. Both subclasses claimed they were "entitled to lifetime retirement benefits under the 1988 Summary Plan Description." R.61 ¶ 32. The CLS subclass asked for "retiree healthcare benefits" that vested "under the 1988 agreement." *Id.* ¶ 58. The surviving-spouse subclass asked for the same benefits, *see id.* ¶ 74, which, it later clarified, it sought under the 1988 and 1992 plans, R.405 at 13. The surviving spouses subclass, like the CLS subclass, complained about the same things that Caterpillar changed in 1992 and 1998—that it had taken away "fully paid retiree health care coverage" and had imposed "on-going increased charges for drug prescription co-pays, deductibles and out-of-pocket costs," R.61 ¶¶ 75, 79. With respect to both subclasses, it is difficult to maintain that changes targeted in a complaint were not material to their claims and would not trigger the accrual of a cause of action. *Winnett II*, 609 F.3d at 413. With nearly identical facts and a complaint featuring identical allegations in some places and nearly identical allegations in others, it should surprise no one that the two subclasses face nearly identical statute-of-limitations problems.

Nor should the healthcare plan changes have surprised the surviving spouses. For one, the changes memorialized in the 1998 CBA came in exchange for increased pension benefits, precisely the kind of quid pro quo that can and often does arise from collective bargaining. As with the CLS employees, why should the spouses immediately get to keep the benefit (increased pension payments) for eight years while waiting to challenge the burden (decreased healthcare benefits)? *Id.* at 406, 414. For another, when the company first began applying these changes in 1992, retirees (and

- 6 -

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

their spouses) experienced them immediately, at least as long as the retiree lived. Why should a surviving spouse think those costs vanish upon the death of the retiree? The spouses after all are third-party beneficiaries of the CBA. Under the spouses' theory, however, they permissibly suffered reduced benefits while their husbands and wives were alive but those reductions no longer were permissible after the worker had died. Indeed, if the plaintiffs are right, they are eligible for relief that they as surviving spouses may receive but that the CLS retirees as a subclass could not. *See Winnett II*. No reasonable not-yet-surviving spouse, it seems to us, would have expected benefits that *exceeded* those of a retiree, and this common-sense notion belies any argument that the spouses were not aware of Caterpillar's alleged breach in 1998 or for that matter from 1992 on. Contrary to their suggestion, Winnett Third Br. at 5–6, it is no answer that a surviving spouse's pension drops by half when the retiree dies. Pension income drops in this setting for the basic reason that the deceased retiree no longer has living expenses. In the end, there is no reason for the spouses to have thought they would get benefits that *exceeded* those of the retirees from whom their benefits derive—and from 1992 forward any spouse would have known that the benefits provided to his or her retiree husband or wife had been cut.

The surviving spouses mention three differences between themselves and the CLS subclass that in their view warrant a different accrual period for their claims. They first point out that the 1992 changes and the 1998 plan, along with documents associated with each of them, contained more specificity about how the new benefits caps would apply to retirees as opposed to surviving spouses. *See, e.g.*, R.407-1 at 47–48 (stating that caps would apply "per covered individual for

- 7 -

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

retiree medical benefits"). But more specificity when it comes to the employees directly covered by a benefits plan, as opposed to the spouses derivatively covered by it, should not startle anyone. *Any* benefits plan is bound to contain more language about the employee retiree than the surviving spouse.

They then point to several documents—the 1992 plan, the 1998 plan and the 1999 summary plan documents—that refer to medical coverage "for the remainder of [a] surviving spouse's life without cost." *E.g.*, R.407-1 at 48. Yet this language, which apparently remained in the 1998 and 1999 documents through inadvertence, *see* Caterpillar Br. at 12 n.1, 30, *confirms* that the limitations clock started between 1992 and 1998. For during those years, the one thing no surviving spouse could deny was that medical coverage no longer was being provided "without cost." The 1992 changes made that clear, and the 1998 changes left no doubt. Once the company no longer provided medical coverage to surviving spouses "without cost," in direct contradiction of this apparent promise and in direct contradiction of promises allegedly made in the 1988 CBA, the limitations clock on their claim began to run.

The spouses try to sidestep this conclusion with a pivot. While they may have known that their health care would not be *cost-free* by 1998, they now acknowledge, their claim for *premium-free* benefits—benefits not subject to any caps—did not accrue until later. Winnett First Br. at 32. But that was not the theory of their complaint, which requested cost-free care. R.61 ¶¶ 31, 79. And it was not the theory they presented to the district court, where they sought summary judgment for "lifetime medical benefits without cost." R.405 at 12. It was indeed not until the reconsideration

- 8 -

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

stage at the district court that the plaintiffs first introduced this new theory. That is too late. *Cf. Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012) (finding no abuse of discretion when district court declined to consider argument first raised in motion for reconsideration). The theory at any rate would not likely change matters, as the 1992 changes and the 1999 reservation-of-rights clause may have been enough to trigger the accrual of *this* action as well. *See Winnett II*, 609 F.3d at 411 (citing *Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 919 (6th Cir. 2000)). Nor, as we also concluded in *Winnett II*, are we "aware of any authority for the concept that a *cause of action* under, say, § 301 of the [Labor Management Relations Act] could have *different accrual dates* for each affected healthcare benefit." 609 F.3d at 411.

Third, Caterpillar sent condolence letters to 16 spouses that among other things referred to "lifetime" coverage "at no cost to you." R.407-6; *see also* R.408-2 at 3. This, too, is a merits point, one that in some settings might provide some support for the theory of relief but that directly undermines the subclass's argument that the cause of action accrued after 2000. The array of new healthcare charges the spouses faced by 1998 confirmed that any promise of "no cost" coverage was not being followed by then.

One other point. The spouses claim they are entitled to equitable tolling. But they forfeited this argument by failing to make it in the district court, *see Jolivette v. Husted*, 694 F.3d 760, 768 n.3 (6th Cir. 2012), and at any rate it is difficult to see how this concept could be applied to this class action, even just to this subclass, *cf. In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 622 F.3d 275, 294 (3d Cir. 2010).

- 9 -

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

### III.

Caterpillar separately appeals the district court's rejection of its third-party complaint against the UAW. The complaint has four counts. Counts One and Two are similar and come to this: According to Caterpillar, the UAW promised during negotiations over the 1998 and 2004 CBAs that the retirees and their spouses would accept lower medical benefits and that the UAW had authority to negotiate the reductions, putting the UAW on the hook for allegedly making these misrepresentations. Counts Three and Four are of a piece as well: By supporting the *Winnett* suit, Caterpillar claims that the UAW breached the 2004 CBA or a settlement agreement reached by the parties in 1998, in which the UAW allegedly promised not to fund or support litigation of this sort against Caterpillar.

The short answer to the first two counts is that the claimants, as just shown, have not won anything in these lawsuits. The factual predicate for Caterpillar's claim thus does not exist: The lawsuits did not lead to the damages Caterpillar feared.

That may be, Caterpillar acknowledges, but it adds that it sought attorney's fees and costs for defending the *Winnett* lawsuit. That is not clear. The main point of Caterpillar's complaint was to seek recovery or contribution for potentially paying increased medical benefits after the 1998 and 2004 CBAs had been negotiated and after these issues (and monetary risks) seemingly had been resolved. The complaint, to be sure, does mention fees and costs in a few places, but in context it seems only to seek them *if* Caterpillar is on the hook for new medical benefits. *See* R.150 ¶ 83.

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

Even if that were not the case, a stand-alone claim for fees and costs faces two other problems. One is that the UAW never made any representation that the changes in the 1998 and 2004 CBAs would bind the plaintiffs or above all that it had the authority to reduce allegedly vested benefits for retirees or their spouses. Nor can Caterpillar fill this gap by pointing to a pattern and practice of bargaining that implicitly contained such a representation. The only prior instance of such bargaining alleged in the third-party complaint occurred in negotiations over the 1998 CBA. The other problem with this theory is that Caterpillar brings this claim under § 301 of the Labor Management Relations Act. And it is far from clear that such claims, whether cognizable under state law or not, can be brought under § 301. *See CNH Am. LLC v. UAW*, 645 F.3d 785, 790–93 (6th Cir. 2011) (finding state law breach of implied warranty claims not preempted by § 301 and stating that "[c]laimants may not create a § 301 claim (and federal jurisdiction) by recasting a tort claim as a contract claim"); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2864 (2010) (declining to recognize new cause of action under § 301).

As to Counts Three and Four, the district court correctly granted the UAW judgment as a matter of law. Caterpillar points to five acts by the UAW that allegedly either subverted the 2004 CBA or violated a promise in the 1998 CBA not to fund or support the *Winnett* litigation: (1) a local UAW chapter asked the UAW to provide it with a lawyer to investigate the claims the *Winnett* plaintiffs eventually brought, and Roger McClow, a lawyer who previously represented the UAW, visited the chapter; (2) the UAW told chapters it was investigating these complaints and had hired McClow for that purpose; (3) McClow and UAW in-house counsel Mike Saggau met with *Winnett*

Nos. 11-5905/11-5906
*Winnett, et al. v. Caterpillar Inc. v. UAW Local Union No. 145, et al.*

class counsel about the potential suit, and the UAW asked McClow to keep them updated; (4) UAW officials filed affidavits opposing Caterpillar's motion to transfer the *Winnett* action to Illinois and encouraged a retiree to join the *Winnett* litigation; and (5) Saggau asked VEBA fund employees to determine whether Caterpillar charged the fund for above-cap surviving-spouses benefits.

The first three points do not get off the ground. Attorneys are free agents. Just because a lawyer from a private law firm does work for the UAW does not mean he cannot meet with or represent individual plaintiffs who happen to be union members, even UAW members. As to the last two, the UAW opposed the motion to transfer and the lone retiree's lawsuit because both would have increased discovery costs imposed on the UAW, and it made inquiries about the fund only after Caterpillar filed its third-party complaint. On this record, no reasonable jury could find that the UAW violated any promise not to fund or support the *Winnett* lawsuit.

IV.

For these reasons, we affirm the district court's judgment in full.